**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Diversified Real Estate Development Ltd (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
|     Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| GMS Global Market Step Up Note Ltd (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
|     Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Preferred Income Collateralized Interest Ltd (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
|     Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Sentinel Investment Fund SPC (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
|     Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| SG Strategic Income Ltd (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
|     Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Sports Aficionados Ltd (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Vanguardia Group Inc. (in | ) | |
| Official Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Vanguardia Holdings Ltd. (in Liquidation), | ) | |
| | ) | Case No. 18-[ ] |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| Spyglass Investment Management Ltd. (in | ) | |
| Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 15 |
| North Pointe Holdings (BVI) Ltd. (in | ) | |
| Liquidation), | ) | Case No. 18-[ ] |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| In re: | ) | |
|---|---|---|
| | ) | Chapter 15 |
| Biscayne Capital Holdings Limited (in Creditor Voluntary Liquidation), | ) | |
| | ) | Case No. 18-[ ] |
| | ) | |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

| In re: | ) | |
|---|---|---|
| | ) | Chapter 15 |
| Biscayne Capital (B.V.I.) Ltd. (in Liquidation), | ) | |
| | ) | Case No. 18-[ ] |
| Debtor in a Foreign Proceeding. | ) | |
| | ) | |

## DECLARATION OF MICHAEL PEARSON IN SUPPORT OF PETITION FOR ORDER RECOGNIZING FOREIGN MAIN PROCEEDING AND GRANTING ADDITIONAL RELIEF

I, Michael Pearson, hereby declare:

1.        I am co-founder of FFP Limited, which is domiciled in the Cayman Islands, and FFP (BVI) Limited, which is domiciled in the British Virgin Islands (together "***FFP***").  Together with my colleagues Hadley Chilton and Stephen Briscoe, I have been appointed as liquidator of each of the above-captioned entities (collectively, the "***Debtors***") under, respectively, the laws of the Cayman Islands, the British Virgin Islands, and Bermuda.  I am licensed or otherwise authorized to act as a liquidator under the laws of the Cayman Islands, British Virgin Islands, and Bermuda.  Mr. Chilton, who acts as my co-liquidator for the Cayman Debtors (defined below), is authorized to act as a liquidator for Cayman Islands companies in liquidation.  Mr. Briscoe, who acts as my co-liquidator for the BVI Debtors and the Bermuda Debtor (each as defined below), is authorized to act as a liquidator for British Virgin Islands and Bermuda companies in liquidation.

2.      The Debtors are incorporated under the laws of the Cayman Islands, British Virgin Islands, and Bermuda.  Among the Debtors, Diversified Real Estate Development Ltd (in Official Liquidation); GMS Global Market Step Up Note Ltd (in Official Liquidation); Preferred Income Collateralized Interest Ltd (in Official Liquidation); Sentinel Investment Fund SPC (in Official Liquidation); SG Strategic Income Ltd (in Official Liquidation); Sports Aficionados Ltd (in Official Liquidation); and Vanguardia Group Inc (in Official Liquidation) are domiciled in the Cayman Islands (collectively, the "***Cayman Islands Debtors***"), Vanguardia Holdings Ltd. (in Liquidation), Spyglass Investment Management Ltd. (in Liquidation), Biscayne Capital (B.V.I.) Ltd., and North Pointe Holdings (BVI) Ltd. (in Liquidation), are domiciled in the British Virgin Islands (the "***British Virgin Islands Debtors***"), and Biscayne Capital Holdings Limited (in Creditor Voluntary Liquidation) is domiciled in Bermuda (the "***Bermuda Debtor***").  I sometimes hereafter refer to Mr. Chilton, Mr. Briscoe and myself collectively as the "***Liquidators***."  True and correct copies of each of the relevant Resolutions and Orders appointing me and my colleagues are set forth in Exhibit A-1 (for the Cayman Islands Debtors), A-2 (for the British Virgin Islands Debtors), and A-3 (for the Bermuda Debtor.  Collectively hereafter these documents are hereafter referred to as the "***Appointment Orders***."  I submit this declaration in support of our (1) official form and verified petitions (together, the "***Petitions***") for orders recognizing each of the above-referenced proceedings for the Debtors (collectively, the "***Proceedings***") as foreign main proceedings under section 1517 of title 11 of the United States Code (the "***Bankruptcy Code***") and (2) Application Under Fed. R. Bankr. P. 2002(m) and (q) and 9007 for an Order Scheduling Hearing and Specifying Form and Manner of Service of Notice (the "***Application***").  I am competent to testify and, except where otherwise indicated, all facts and statements included in this declaration are based upon my personal knowledge, my review of relevant documents,

information provided to me or verified by the Debtors or my opinion based upon my general knowledge of the Debtors.[1]

## I. BACKGROUND

### A.    Background of FFP's Involvement with the Debtors and Related Entities Prior to their Appointment as Liquidators.

3.    Attached hereto as <u>Exhibit B</u> are organizational charts for the Debtors and certain related companies, which were produced to the Liquidators by the former management.  The chart may be incomplete and requires corroboration against company records and filings. The Debtors are all collectively owned either by Vanguardia Trust (BVI), a British Virgin Islands trust, or SBH Trust (BVI), also a British Virgin Islands trust (together, the "***Trusts***").  Both of the Trusts have a common set of beneficiaries: Mr. Ernesto Weisson, Mr. Roberto Cortes, Mr. R. Cortes Rueda, and Mr. J.C. Cortes Pablo (collectively the "***Beneficiaries***" or the "***Principals***").  I have been appointed as Protector for both of the Trusts under British Virgin Islands law.[2]

4.    In addition to each of the Debtors, the Trusts also directly or indirectly, own entities incorporated in the State of Florida, as well as entities organized under the laws of Argentina, Spain, Switzerland, Uruguay, Ecuador, and the Bahamas.  Until its resignation in August 2018, we understand that SGG Management (BVI) Ltd ("***SGG***") acted as Director for most of the companies owned by the Trusts, including all of the Debtors and Amicorp (BVI) Trustees Ltd. acted as Trustee for the Trusts, and in such capacity as sole shareholder of North Pointe Holdings (BVI) Ltd. (in

---

[1] As discussed at length below, since prior to their appointment, the Liquidators have been working to collect the Debtors' books and records, with varied success to date.  One of the primary purposes of these proceedings, is to provide the Liquidators with a forum in which to collect the Debtors' books and records, investigate parties related to the conduct of the Debtors' business, and identify and pursue the Debtors' assets and other claims.  Given the limited nature of the information currently available to the Liquidators, my currently knowledge of the Debtors is qualified as further set forth below.

[2] Under British Virgin Islands law, a Protector may be appointed over a trust to limit the scope of powers of the trustees and/or to require the trustees to obtain the consent of the Protector prior to taking certain actions.

Liquidation) and Vanguardia Holdings Ltd. (in Liquidation).   In relation to certain entities, individuals employed by SGG acted as directors.

5.      My firm, FFP, was initially retained as a consultant by the Debtors in March 2018 to assist SGG in collecting the books and records of the entities owned by the Trusts.   FFP contacted various former service providers, but was only able to obtain limited books and records for certain of the companies owned by the Trusts.   SSG thereafter submitted their resignation on July 3, 2018, which resignation became effective as of August 3, 2018.

6.      At that time, Amicorp determined that it was appropriate to place the companies owned by the Trusts into liquidation proceedings and to appoint me and my colleagues as Liquidators over each of the companies owned by the Trusts.   Amicorp initially appointed Stephen Briscoe and me as Liquidators of Vanguardia Holdings Ltd. and North Pointe Holdings (BVI) Ltd. on August 31, 2018.   Since their initial appointment on August 31, 2018, the Liquidators have been appointed over each of the Debtors as set forth in the documents attached as Exhibit A.

   B.      **Current Understandings Concerning the Debtors' Business.**

7.      My ability to testify to the Debtors' business is limited by (a) the relatively short period of time since my appointment, (b) the fact that, prior to FFP's initial engagement in March 2018, neither I nor FFP had any involvement with or control of any of the Debtors, and (c) since my appointment, many parties who hold books and records of the Debtors have not complied with requests to turn over the books and records.   Nonetheless, based upon information I have obtained, the following information is true and accurate to the best of my knowledge.

8.      From approximately 1999 through 2007, the Principals attempted to develop real estate projects in Florida through an entity known as South Bay Holdings, LLC ("***South Bay***"). South Bay is not a Debtor, but based upon the best information available to the Liquidators, was

wholly owned by two of the Principals. When South Bay was originally founded, it financed its activities primarily through bank loans and "friends and family" money.

9.    I understand from reviewing records that in 2006 and 2007, South Bay sought to significantly expand its business, including by acquiring 29 lots and associated memberships at an exclusive resort in Key Biscayne, Florida.  Starting around this time, the Principals began to form certain special purpose vehicles to sell notes (the "***Notes***") that were intended to support these development activities.  The Notes were issued in multiple series through SG Strategic Income Ltd., GMS Global Market Step Up Note Ltd., and Preferred Income Collateralized Interest Ltd., each of which is a Debtor herein.  Collectively, these three entities appear to have issued not less than $260 million of these Notes; however, the actual number is yet to be verified by transaction records and statements which have not yet been received.

10.    Certain other entities that are also Debtors herein were otherwise involved with the issuance of the Notes.  For instance, Spyglass Investment Management, Inc. acted as an investment advisor related to the issuance of the notes.  Spyglass is a Debtor in these proceedings.  Similarly, the Principals created several other financial services entities, all under the name "Biscayne Capital" that marketed the Notes to third party investors.  These entities include the following, all of which are entities in these proceedings: Biscayne Capital Holdings Limited, a Bermuda entity, and Biscayne Capital (B.V.I.) Ltd., a British Virgin Islands company.   These "Biscayne Capital" entities also include numerous entities that are not Debtors in these proceedings, including (i) Biscayne Capital International, LLC, which, to the best of my knowledge and information was a Florida limited liability company that is no longer in business; (ii) Biscayne Capital Ltd, a Bahamian entity over which Deloitte has been appointed liquidator by the Securities Commission of the Bahamas, (iii) Biscayne Capital SA and BisCap SRL, which are entities that are organized

under the laws of Uruguay; and (iv) Biscayne Capital (Switzerland) AG, a Swiss entity.  Biscayne

Capital Holdings, Limited, the Bermuda entity, is the direct parent of all other "Biscayne Capital"

entities.

11.    Starting no later than 2016, the U.S. Securities and Exchange Commission (the

"*SEC*") commenced an investigation of the Principals, Biscayne Capital International, LLC, and

others concerning the issuance and marketing of the Notes.  This investigation led to the entry of

an *Order Instituting Administrative Cease-and-Desist Proceedings, Pursuant to Sections 203(e),*

*203(f), and 203(k) of the Investment Advisors Act of 1940, and Section 9(b) of the Investment*

*Company Act of 1940, Making Findings, and Imposing Remedial Sanction and a Cease-and-Desist*

*Order* (the "*SEC Order*") against Biscayne Capital International, LLC, Roberto Cortes, Ernesto

Weisson, Juan Carlos Cortes, and Frank R. Chatburn.  A copy of the SEC Order is attached hereto

as Exhibit C.  The SEC Order arose as a result of the failure of Biscayne Capital International,

LLC, formerly a U.S. registered investment advisor, to disclose conflicts of interest and other

material information in connection with the sale of Notes between August 2010 and March 2012.

These acts and omissions included, without limitation, failure to disclose that the Principals held

a beneficial interest in both Biscayne Capital International, LLC, the issuers of the Notes, and

South Bay, which was the beneficiary of the proceeds from the sale of the Notes.  Similarly, the

SEC Order found that there was inadequate disclosure to investors of South Bay's financial

position, which at all relevant times was precarious.

12.    Finally, and related to the above, North Pointe Holdings (BVI) Limited, is a British

Virgin Islands company and a Debtor herein.  North Pointe holds interests in a number of Florida

limited liability companies, all of which share the names "Ocean Reef Group" or "Cinnamon."

These entities hold, collectively, the Debtors' remaining interests in certain properties and club

memberships in Key Biscayne, Florida.  I understand that North Pointe acquired these interests directly from South Bay.  As discussed further below, many of these properties and club memberships are subject to mortgages and other encumbrances and the net liquidation value of these assets that will be available to North Pointe is uncertain at this time.  The Liquidators have also been asked to look into the circumstances and transactions involved in encumbering these assets.

## C.    FFP's Activities Since Appointment as Liquidators

13.    Since being appointed, my fellow Liquidators and I have been taking active steps to secure the Debtors' books and records, understand the Debtors' asset and liability position, manage the Debtors' assets to realize proceeds for the benefit of the Debtors' estates, communicate with creditors and other investors, and otherwise commence an investigation into the circumstances which led to the commencement of the liquidation proceedings.

14.    As an initial matter, the Debtors' current financial and operational condition bears mention.  It is tenuous.  Upon the Liquidators' appointment, there were no material liquid assets and no effective management of the Debtors.  Since our appointment, the Liquidators have identified the assets held directly or indirectly through North Pointe Holdings (the property and club memberships in Key Biscayne, Florida) as the Debtors' only "tangible asset."  This stands in sharp contrast to the funds raised from third party investors, which the Liquidators collectively believe was in the region of $300 million and may have been more.

15.    The Liquidators have also begun the process of attempting to obtain the books and records for each of the Debtors.  They have written informally to many of the former service providers for the Debtors, both directly and through U.S. counsel.  Certain of these service providers have been cooperating voluntarily.  However, many have not and the Liquidators anticipate having to serve subpoenas or other legal process to obtain records related to the Debtors.

As discussed below, the Liquidators anticipate that many of these entities will only respond and provide the Liquidators with documents upon service of a subpoena and, potentially, enforcement of the same by this Court.

16.     The Liquidators have also spent significant amounts of time communicating with investors and other creditors of the Debtors.  Many of the investors invested substantial personal and family sums into the Debtors – in certain cases as much as $50 million.  These investors and creditors have been a valuable source of information to the Liquidators and the Liquidators anticipate that certain of these investors and creditors may be active in these chapter 15 proceedings, in addition to having filed their own litigation.  For instance, Diego Romay, on his own behalf and as guardian for certain minor children, as well as other affiliated investors, has recently commenced a civil action in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "***Romay Action***").  The Romay Action seeks damages for in excess of $40 million and names the Principals, South Bay, Biscayne Group Holdings, LLC, certain Amicorp entities, and other parties.  The Romay Action does not, however, name any of the Debtors in this proceeding (and, as such, would not be stayed by the recognition of the Proceedings under chapter 15).

### D.    The Chapter 15 Proceedings

17.     The Liquidators have determined to commence these chapter 15 proceedings for each of the Debtors because we believe that such proceedings are in the best interests of each of the Debtors and such proceedings are necessary to advance the liquidations, conduct an investigation into the Debtors' pre-liquidation activities, and otherwise maximize the likelihood of recovering material assets for the benefit of investors and creditors of the Debtors.  As set forth below, each of the Proceedings should be recognized as a "foreign main proceeding" within the meaning of 11 U.S.C. § 1502.

18.     The Cayman Islands, the British Virgin Islands, and Bermuda are all British Overseas Territories and are part of the Commonwealth of Great Britain.  The Cayman Islands and Bermuda each have their own court systems; the British Virgin Islands is a member of the Eastern Caribbean Supreme Court system.  In each jurisdiction, orders issued by the respective courts are ultimately appealable to the Judicial Committee of the Privy Council, which is seated in London.

19.     The primary relevant sources of law for each of the Proceedings are as follows:  (i) with respect to the Cayman Islands Debtors, the Companies Law and the Companies Winding Up Rules; (ii) with respect to the British Virgin Islands Debtors, the BVI Business Companies Act, the BVI Business Companies Regulations, and the BVI Insolvency Act; and (iii) with respect to the Bermuda Debtor, the Companies Act and the Companies (Winding Up) Rules, each as enacted in the relevant jurisdiction.  I set forth immediately below a summary of each of the relevant legislation applicable to each of the Proceedings.[3]

### A.  Cayman Islands

20.     The Cayman Debtors are currently subject to official liquidation.  The primary source of law governing such proceedings is Part V of the Companies Law, sections 89 through 155.

21.     A company incorporated under the laws of the Cayman Islands may be placed into voluntary liquidation by way of resolution of its shareholder(s).[4]  That is what has occurred with respect to each of the Cayman Debtors.  In certain circumstances, a voluntary liquidation may, by order of the Grand Court of the Cayman Islands (the "***Cayman Court***"), be brought under the direct

---

[3] Where I describe substantive provisions of Cayman Islands, British Virgin Islands, or Bermuda law, I have, for the convenience of the Court, attached true and correct copies of each of the relevant legal sections described as Exhibits D-1, D-2, and D-3, respectively.

[4] Sometimes liquidation of a Cayman Islands company (whether or not ordered or supervised by the Court) is referred to as "winding up" the company.

supervision of the Cayman Court whereupon it proceeds as an "official liquidation." One circumstance where this may occur is where the directors of the company do not submit declarations of solvency in respect of the company. *See* Companies Law § 124. That is what has occurred with respect to each of the Cayman Debtors that is in official liquidation. When a supervision order is made, it takes effect for all purposes as though it was an order that the company be wound up by the Cayman Court. *See id*. § 133.

22.     On 5 October 2018, Mr. Chilton and I, in our capacity as joint voluntary liquidators of the Cayman Debtors filed petitions applying to bring the liquidation of the Cayman Debtors under the supervision of the Cayman Court. Those petitions were heard on 2 November 2018 and the Honourable Justice McMillan, a Judge of the Cayman Court, entered orders in respect of each Company to the effect that the liquidations be continued under the supervision of the Cayman Court, and that I and Mr. Chilton be appointed as JOLs, which orders were filed on 6 November 2018 and are exhibited hereto at Exhibit A-1.

23.     When making a supervision order, the Cayman Court will appoint official liquidators to the company. Official liquidators are statutorily directed to take control of the company[5] and are responsible for winding up the company's affairs, subject to the supervision of the Cayman Court. Any relevant stakeholder may attend the hearing of the winding up petition (which hearing is held in open court) and may seek to challenge the appointment of the nominated liquidators.

---

[5] In this case, the official liquidators were already voluntary liquidators of the Companies, and so the Companies had already been under their control in that capacity. As Companies Law § 133(a) and (b) confirm, where a supervision order is made, the voluntary liquidation is still taken to have commenced at the time of passing the necessary resolution, and the prior actions of the voluntary liquidators are valid and binding upon the company and its official liquidators.

24.     Official liquidation is a "terminal" process, in the sense that it is designed finally to wind up the company's affairs under the stewardship of the independent official liquidators, and then to bring the existence of the company to an end.  To achieve that result, Section 110 of the Companies Law provides, in relevant part, certain duties and powers on liquidators, including:

- Identifying, safeguarding, collecting, and realising the company's assets (which may also include pursuing litigation for the benefit of the estate, which depending on the nature of the claim sometimes will take the form of a claim by the company and sometimes will be a claim by the JOLs themselves);

- Identifying the company's creditors, and resolving (usually through legal proceedings before the Grand Court) any disputes as to the existence or quantum of creditor claims;

- Distributing the assets to the company's creditors (and to the extent of any surplus, to its members), in accordance with their rights;

- Meeting various reporting requirements, both to the stakeholders, and to the Cayman Court.

- Once the above steps are complete such that the affairs of the company are fully wound up, obtaining an order from the Grand Court that the company be dissolved.  There is no prescribed timeframe in which an official liquidation must be completed.

25.     An official liquidation is judicial in nature, in the sense that (a) it is initiated by an order of the Cayman Court; (b) throughout the liquidation process the official liquidators report to and are supervised by the Cayman Court; and (c) the liquidation is brought to a close and the company dissolved by an order of the Cayman Court.

26.     Once appointed, the official liquidators take full control of the company and its assets (again, subject to the supervision of the Cayman Court).  *See* CWR O.18 r.1(2).  The powers of the directors, who previously controlled the company, are suspended by the appointment of liquidators.

27.     Liquidators are also obligated, when appropriate, to review, assess, and when necessary, object to or compromise claims of creditors against the company in liquidation.  This

is a process whereby putative creditors put forward their claims in a prescribed form, setting out the basis, particulars and evidence in support of their claims. The liquidators are required to adjudicate those proofs of debt in a "quasi-judicial" (that is, even handed and impartial) fashion. *See* CWR O.16 r.1(4). If a liquidator rejects (or admits only in part) a proof of debt, a dissatisfied creditor may appeal that rejection to the Cayman Court, which will conduct a *de novo* of the adjudication of that creditors' proof of debt. *See* CWR O.16 rr.17 – 18. Similarly, if a stakeholder is dissatisfied with the liquidators' decision to admit a proof of debt of another creditor, they may apply to the Grand Court to have that proof of debt expunged. *See* CWR O.16 rr.20 – 21.

28.    Official liquidators are officers of the Cayman Court and are subject to the supervision of the Cayman Court. *See* CWR O.18 r.1(1); Companies Law § 110(3). This supervision permits any stakeholder, if dissatisfied with any action (or inaction) on the part of the liquidator, to seek an order of the Cayman Court directing the liquidator to exercise or refrain from exercising any powers in a particular way. *See* CWR O.11 r.1(2). Liquidators must also prepare reports and accounts with respect to their conduct of the liquidation and the state of the company's affairs, and to deliver those to the Cayman Court. *See* CWR O.10 r.1(1), r.1(2)(e), O.10 r.2, O.10 r.2; Companies Law § 114(1). The Cayman Court must approve the official liquidators' remuneration. Ultimately, though rarely, the Cayman Court may also remove official liquidators, upon the application of a stakeholder. *See* Companies Law § 107.

### B.  British Virgin Islands

29.    The primary sources of law governing the liquidation proceedings of each of the BVI Debtors are the Business Companies Act, 2004 and the Insolvency Act, 2003. In the case of the BVI Debtors, Mr. Briscoe and I were appointed liquidators pursuant to Written Resolution of the Sole Shareholder for each of the BVI Debtors pursuant to Section 88 of the Business

Companies Act. Such written resolutions are valid and permit a member of a company to appoint eligible insolvency practitioners pursuant to Section 159(2) of the Insolvency Act. Both Mr. Briscoe and I are eligible insolvency practitioners in the British Virgin Islands.

30.    Immediately upon the BVI Debtors being placed into liquidation, the liquidators were vested with custody and control of the BVI Debtors' assets. *See* Insolvency Act § 175(1)(a). And, while the directors of the BVI Debtors remain in office, they cease to have any power, function or duties. *Id*. § 175(1)(b). And, unless the High Court of the British Virgin Islands (the "***BVI Court***") orders otherwise, no person may commence or proceed with any action or proceeding against the BVI Debtors or their assets, nor may any person exercise or enforce any right or remedy of their assets. *Id*. § 175(1)(c).[6]

31.    A liquidator, in all circumstances, acts as an officer of the BVI Court and an agent of the company in liquidation. *Id*. § 184. The duties of a liquidator are to take possession of, protect, and realise all assets of the company in liquidation and to distribute those assets in accordance with the priorities set forth in the Insolvency Act. *Id*. § 185. A liquidator is granted all powers necessary to carry out the functions and duties of a liquidator under the Insolvency Act. *Id*. § 186. These powers include, without limitation, the power to bring claims on behalf of and defend claims against the company in liquidation, dispose of the company's property, compromise and settle claims of creditors, and pay creditors from the assets of the company. *See* Insolvency Act, Schedule 2. The liquidator, while an officer of the BVI Court, may also apply to the BVI Court at any time for directions in connection with the conduct of the liquidation. *See* Insolvency

---

[6] A secured creditor, however, may take possession of and realise or otherwise deal with assets of the company in liquidation over which such creditor has a security interest. *Id*. § 175(2).

Act § 186(5).  The BVI Court also retains the power to remove the liquidator for certain enumerated causes.  *Id*. § 187.

32.      As with insolvency proceedings in the Cayman Islands, a liquidator has a duty to investigate the assets and affairs of the company in liquidation and issue report to creditors and contributories (*i.e.*, shareholders) of the company in liquidation and otherwise has an obligation to call meetings of creditors in certain circumstances.  *See, e.g., id*. §§ 226, 228.  And, the creditors may also establish a creditors committee at any time after the appointment of liquidators to represent their interests.  *Id*. § 421(1)(c).

33.      A liquidator may also require creditors to submit claims and the liquidator may with adjudicating those claims.  *Id*. § 209.  The liquidator, as an officer of the BVI Court, acts in a quasi-judicial capacity in this process.  When the liquidator rejects a claim in whole or in part, the liquidator must provide the creditor with the reasons for such rejection.  *Id*. § 209(4).

34.      Once the liquidator has liquidated the assets of the company in liquidation and adjudicated the claims against the company, the liquidator is obligated to distribute all assets of the company to creditors and contributories in accordance with the applicable priorities under the Insolvency Act.  *Id*. § 207.  Upon the completion of the liquidator's duties, the liquidator must issue a final report to creditors and contributories, seek to have the company in liquidation struck from the Register of Companies and otherwise dissolve the company in liquidation.  *Id*. § 234.

### C.  Bermuda

35.      Biscayne Capital Holdings Limited, a Debtor herein, is subject to a "creditors' voluntary liquidation" in Bermuda.  The primary sources of Bermuda law that define the scope of a creditor voluntary liquidation proceeding are Sections 216 to 233 of the Companies Act, to which the Bermuda Debtor is subject.  My appointment and Mr. Briscoe's appointment as liquidators of

the Bermuda Debtor was effectuated pursuant to Section 216 of the Companies Act, which required the directors of the Bermuda Debtor to call a meeting of the creditors of the Bermuda Debtor through advertisement in an "appointed newspaper" on at least two occasions.  At the creditors meeting, a director of the company must cause a full statement of the position of the company's affairs together with a list of creditors and an estimated amount of their claims to be set forth for the creditors.  *See id*. § 216(3)(a). At the creditors meeting, the creditors and the company may each nominate a liquidator.  *Id*. § 217(a).  Mr. Briscoe and I were the nominated liquidators appointed at the creditors meeting of the Bermuda Debtor.  The appointed liquidators are statutorily directed to wind up the affairs of the company in liquidation and distribute those assets in accordance with the statutory priorities of creditors and investors.  *See id*.

36.    In a creditor voluntary liquidation, the creditors may, if they deem it appropriate, appoint a "committee of inspection" of not more than five creditors.  The committee of inspection is granted statutory rights, certain of which are described below, that generally permit creditors an opportunity to ensure that their interests are being properly represented by the liquidators.  *See id.* § 218.

37.    Liquidators are granted specific powers to effectuate these duties.  These powers include the power to bring and defend actions by or against the company, to carry on the business of the company for purposes of winding up the company, pay creditors with the assets of the company, and otherwise compromise and settle the claims of creditors and investors against the company.  *See id*. §§ 226(1)(a), (b); 175(1)(a), (b), (d), (e).[7]  When a company is insolvent, the liquidators are statutorily directed to distribute the company's assets *pari passu* amongst its

---

[7] The power to pay creditors and compromise the claims of creditors may only be exercised with the sanction of the Court or the consent of the committee of inspection.

creditors.  *Id*. § 225.  The liquidators may also propose an arrangement for the compromise of debts that may, subject to rights of appeal, be binding upon the creditors of the company if three quarters of creditors (both by number and value) consent to the arrangement.  *Id*. § 229.

38.    At various points, the liquidators are subject to Court oversight.  As noted above, certain powers may only be exercised by sanction of the Court (or approval of the committee of inspection).  Additionally, the Court exercises broad oversight through the power to remove liquidators for cause.  *Id*. § 227(2).  Furthermore, the liquidators, as well as creditors and contributories (*i.e*., shareholders) are granted the power to petition the Court to determine any issue that may arise in the course of the liquidation.  *Id*. § 231(1).

<div align="center">

D.    *Basis and Determination to Seek Chapter 15*

</div>

39.    My co-Liquidators and I have determined to submit each of the Petitions and related papers to have each of the Proceedings recognized by this Court as a "foreign main proceeding" and to recognize Mr. Chilton and me as "foreign representatives" of the Cayman Debtors and Mr. Briscoe and me as "foreign representatives" of the BVI Debtors and the Bermuda Debtor, in accordance with section 101(24) of the Bankruptcy Code.  As detailed in the Petitions, I believe that there is a compelling case for recognition of each of the Proceedings as a foreign main proceeding.

40.    The need for recognition under chapter 15 of the Bankruptcy Code is clear.  Based upon the investigation to date, it is clear that the Debtors were under common control and controlled for the common benefit of the Principals.  The Debtors collectively raised a significant amount of money from third party creditors, which was intended to be deployed for the purpose of real estate and related investments, both inside and outside the United States.  However, much

<div align="center">

- 18 -

</div>

of the money that was raised has been dissipated and, currently, the creditors of each of the Debtors stand to suffer a near total loss of their invested capital.

41.    The Liquidators have been attempting to obtain the books and records of the Debtors.  While certain parties in possession of those books and records have cooperated, many have not, including many parties located in the United States.  It is likely that, to collect the Debtors' books and records, it will be necessary for the Liquidators to issue subpoenas and other legal process.

42.    Ultimately, it is likely that the Liquidators may conclude through their investigation that the Debtors have viable claims against third parties for recovery of damages.  Recognition of the Proceedings through this chapter 15 proceeding will provide the Liquidators with a venue through which they may ultimately be able to bring such claims.  Equally importantly, given that the Proceedings and the investigations are in their infancy, I understand that recognition of the Proceedings will toll many of the claims the Liquidators may be able to bring that touch and concern the United States for two years under 11 U.S.C. § 108.  This tolling will afford the Liquidators an opportunity to conclude their investigations and properly and timely assert claims against third parties who may have engaged in wrongful conduct.

43.    It is appropriate to recognize each of the Proceedings as a "foreign main proceeding."  Each Debtor's center of main interests ("**COMI**") is located in the jurisdiction in which its liquidation Proceeding is pending.  Each Debtor is organized under the laws of the jurisdiction in which its liquidation Proceeding is pending.  Similarly, the registered office for each of the Debtors is located in the jurisdiction in which its Proceeding is pending.  Specifically, the registered office for each of the Debtors is as follows:

*For the Cayman Islands Debtors*: c/o FFP Limited, Harbour Centre, 42 North Church St, George Town, Grand Cayman KY1-1106, Cayman Islands;

*For the British Virgin Islands Debtors*: c/o FFP (BVI) at 2nd Floor TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands, VG 1110; and

*For Biscayne Capital Holdings Limited*: c/o BCB Charter Corporate Services Limited, Trinity Hall, 43 Cedar Avenue, Hamilton HM12, Bermuda.

After a British Virgin Islands company enters insolvency proceedings, an external registered agent is no longer required and the Liquidators of the British Virgin Islands Debtors will provide the registered offices going forward.

44.     The "organic" law for each of the Debtors – specifically the law that will govern their winding-up, dissolution, resolution of claims, and distribution of assets – is the law governing each of the Proceedings, which in turn is the law of incorporation for each of the Debtors.

45.     Similarly, as set forth in detail above, the liquidations of each of the Debtors is, to varying degrees, overseen by the Cayman Court, the BVI Court, and the Bermuda Court, respectively. Those Courts have the jurisdiction to oversee and determine issues of primary importance in the Proceedings, including, without limitation, the identity and oversight of the Liquidators, the realization and distribution of assets of the Debtors, and any disputed issues that may arise in the course of the Proceedings.

46.     Additionally, specifically with respect to the Cayman and BVI Debtors, the Liquidators are physically situated in the Cayman Islands and the British Virgin Islands and have been since and prior to their appointment. Thus, the operative decision making for the Debtors has emanated from both the Cayman Islands and the British Virgin Islands.[8] And, with respect to

---

[8] While I submit that the physical location of the Liquidators is a factor that the Court may rely upon in determining COMI, it is not the exclusive factor, nor – in the case of the Bermuda Debtor – should it be the dispositive factor. There is, I submit, a very strong interest in having each of the liquidations overseen by a common set of Liquidators, such as me and my fellow Liquidators. At this time, my firm does not have an office in Bermuda. However, with respect to the Bermuda Debtor, Mr. Briscoe and I remain in all respects subject to the laws of that jurisdiction in the conduct of the liquidation of the Bermuda Debtor and, ultimately, subject to the oversight of the Bermuda Court.

all of the Debtors, while the creditors and investors appear to be global in scope, the center of the collection and distribution of the Debtors' assets and resolution of claims against the Debtors will be focused in the jurisdictions in which the Proceedings are pending.

47.     Finally, as stated in the Petition, I believe that recognizing each of the Proceedings as a foreign main proceeding is consistent with the purposes of chapter 15 of the Bankruptcy Code and the public policy of the United States.  Thus, I believe the relief requested in the Petition is in the best interests of the Debtors, its creditors, investors, and other parties in interest.

48.     Contemporaneous with the filing of this declaration, I will also file the Application to (i) set the date and time (Miami Time) for the hearing (the "***Recognition Hearing***") on the relief sought in the Petition, (ii) set the date and time (Miami Time) as the deadline by which any responses or objections to the Petition must be received (the "***Objection Deadline***"), (iii) approve the form of notice of the Recognition Hearing and the Objection Deadline (the "***Recognition Hearing Notice***"), and (iv) approve the manner of service of the Recognition Hearing Notice.

49.     I can attest that the Debtors have many investors and creditors and other parties in interest who need to receive the Recognition Hearing Notice.  The Recognition Hearing Notice provides several efficient ways for any party receiving such notice to obtain copies of pleadings and papers that I may file in this chapter 15 case.  At the same time, I, as the foreign representative, respectfully submit that I should not be over-burdened with the significant costs associated with copying and mailing all the various documents filed in this case to the entire matrix of putative creditors and other parties that already received notice in connection with the Proceedings.  Thus, I believe that the relief requested in the Application is necessary and appropriate and is in the best interests of the Debtors, their creditors and investors, and other parties in interest.

## II.    STATEMENT PURSUANT TO BANKRUPTCY CODE SECTION 1515(C)

50.    I have been advised that section 1515(c) of the Bankruptcy Code provides "[a] petition for recognition shall . . . be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative."  11 U.S.C. § 1515(c).  In accordance with this section, I hereby declare that each of the Proceedings is the only foreign proceeding, as I understand such term is defined in section 101(23) of the Bankruptcy Code, pending with respect to each of the Debtors that is known to the Liquidators.

## III.    INFORMATION REQUIRED BY BANKRUPTCY RULE 1007(A)(4)

51.    I have also been advised that Federal Rule of Bankruptcy Procedure 1007(a)(4) provides:

> [A] foreign representative ... shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is sought.

Accordingly, I respectfully state:

52.    Corporate Ownership Statement.  The following corporations or persons directly or indirectly own 10% or more of each of the Debtors' equity interests:

- North Pointe Holdings (BVI) Ltd. owns 100% of the equity interests of Biscayne Capital Holdings Limited

- Biscayne Capital Holdings Limited holds 100% of the equity interest in Biscayne Capital (B.V.I.) Ltd.

- SBH Trust (BVI) owns 100% of the equity interests of North Pointe Holdings (BVI) Ltd.

- Vanguardia Group Inc. owns 100% of the equity interests of SG Strategic Income Ltd., GMS Global Market Step Up Note Ltd., Preferred Income Collateralized Interest Ltd., Spyglass Investment Management Ltd., Diversified Real Estate Development Ltd, and Sentinel Investment Fund SPC

- Vanguardia Holdings Ltd. owns 100% of the equity interests of Vanguardia Group Inc. and Sports Aficionados Ltd.

- Vanguardia Trust (BVI) owns 100% of the equity interests of Vanguardia Holdings Ltd.

53. <u>Persons/Bodies Authorized to Administer the Proceedings</u>.  Pursuant to the Appointment Orders, Mr. Chilton and I are the Liquidators for the Cayman Debtors and Mr. Briscoe and I are the Liquidators for the BVI Debtors and the Bermuda Debtor.  No other persons or entities are authorized to administer the foreign proceedings of any of the Debtors.  Our mailing address in the Cayman Islands is: 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands.  Our mailing address in the British Virgin Islands is: Box 4441, Road Town, Tortola, VG1110, British Virgin Islands.

54. <u>Pending Litigation/Provisional Relief</u>.  I am aware of the matter *Cinnamon Cay, LLC, Cinnamon Cay II, LLC, Cinnamon Prime, LLC v. Inversora CRV Inc., Fondo De Inversion Inmobiliario Cayo Larogo S.A.*, Case No. 2016-018766-CA-01, pending in the Circuit Court of the 11th Judicial Circuit in and for Mimi-Dade County, Florida in which Fondo de Invesrsion Inmobiliario Cayo Largo, S.A., Fundacion Fondo de Prevision Social Hospital de Clinicas Caracas, Fondo de Prevesion Social Centro Medico Docente, La Trinidad A.C., Fundacion Fondo de Prevision Social Hospital de Clinicas Caracas, Fundacion Fondo de Prevision Social de la Sociedad Medica del Centro Medico Docente la Trinidad, and Fundacion Fondo de Prevision

Social Centro Medico Caracas, c/o Reed Smith LLP, 1001 Brickell Bay Drive, Suite 900, Miami, Florida, 33131, counterclaim plaintiffs, name Debtor Sentinel Investment Fund Ltd. as a counterclaim defendant.  The Liquidators have not sought provisional relief against any entities.

## IV.   **CONFIDENTIALITY**

55.     Under the laws and customary practice of the Cayman Islands, British Virgin Islands, and Bermuda, the identity of creditors, members, and contributories is ordinarily entitled to confidentiality.  In certain instances, creditors, members, and contributories may be entitled to receive a list of other such creditors, members, and contributories in accordance with applicable law; however, it is inconsistent with the laws of each jurisdiction in which a Proceeding is pending for a list of creditors, members, or contributories to be made publicly available.  For these reasons, I request that the Court excuse any obligation to publish a list of creditors, members or contributories for each of the Debtors.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that, based on my knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated: November 26, 2018

Respectfully Submitted,

Michael Pearson, solely in his capacity as
Liquidator for each of the Debtors

# EXHIBIT A-1

# [CAYMAN ISLANDS APPOINTMENT ORDERS]

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO:   FSD 185 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**
**AND IN THE MATTER of Vanguardia Group Inc (in Voluntary Liquidation)**

---

**ORDER**

---

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of Vanguardia Group Inc (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** reading the letter dated 30 October 2018 from Mr Pearson requesting that the CI$5,000 filing fees paid by the Company for the Petition ("**Fee**") be deferred pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4)

**AND UPON** the undertaking of the Joint Voluntary Liquidators that the Fee hereby deferred shall be paid immediately upon sufficient moneys coming under their control (and in any case, shall be paid prior to any remuneration or other liquidation expenses being paid).

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 186, 187, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IT IS ORDERED** as follows:

*Liquidation of Company to continue under supervision of Court*

1      The liquidation of the Company be continued under the supervision of the Court.

2      Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

3      The Joint Official Liquidators shall not be required to give security for their appointment.

4      The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5      The Joint Official Liquidators be authorised to seek recognition of their appointment in such other jurisdictions as they consider appropriate and prudent (including, without limitation, pursuant to Chapter 15 of the United States Bankruptcy Code).

6      The Joint Official Liquidators be authorised to engage staff (whether or not as employees of the Company) to assist the Joint Official Liquidators in the performance of their functions.

7      The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of America or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR O.25 and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the liquidation.

8      The Joint Official Liquidators be authorised to exercise any of the powers specified in part II of the Third Schedule to the Companies Law (2018 Revision).

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

9      The Joint Official Liquidators shall submit a report to the Court on the conduct of the liquidation as soon as reasonably practicable within 6 months of the commencement of the official liquidation and at such periods thereafter as the Court shall direct.

10     The costs of this Petition shall be paid out of the assets of the Company, as an expense of the liquidation, to be taxed if not agreed.

### Deferral and refund of filing fees

11     Pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4) the Fee of CI$5,000 be deferred until such time as sufficient funds become available to the Joint Official Liquidators from the liquidation of the Company's assets to enable to them pay the filing fee, the CI$5,000 filing fee which has already been paid by Mr Pearson and Mr Chilton as joint voluntary liquidators of the Company be refunded to them by the Registrar of the Financial Services Division.

### Evidence in Related Proceedings

12     Subject to any further Order of the Court, evidence filed in this proceeding shall stand as evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand as evidence in this proceeding.

DATED this **2** day of November 2018

FILED this **6** day of November 2018



**Hon Justice McMillan**

Judge of the Grand Court

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

3

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 186 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**
**AND IN THE MATTER of Sports Aficionados Ltd (in Voluntary Liquidation)**

**ORDER**

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of Sports Aficionados Ltd (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31 October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** reading the letter dated 30 October 2018 from Mr Pearson requesting that the CI$5,000 filing fees paid by the Company for the Petition ("**Fee**") be deferred pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4)

**AND UPON** the undertaking of the Joint Voluntary Liquidators that the Fee hereby deferred shall be paid immediately upon sufficient moneys coming under their control (and in any case, shall be paid prior to any remuneration or other liquidation expenses being paid).

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 186, 187, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IT IS ORDERED** as follows:

### *Liquidation of Company to continue under supervision of Court*

1    The liquidation of the Company be continued under the supervision of the Court.

2    Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

3    The Joint Official Liquidators shall not be required to give security for their appointment.

4    The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5    The Joint Official Liquidators be authorised to seek recognition of their appointment in such other jurisdictions as they consider appropriate and prudent (including, without limitation, pursuant to Chapter 15 of the United States Bankruptcy Code).

6    The Joint Official Liquidators be authorised to engage staff (whether or not as employees of the Company) to assist the Joint Official Liquidators in the performance of their functions.

7    The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of America or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR O.25 and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the liquidation.

8    The Joint Official Liquidators be authorised to exercise any of the powers specified in part II of the Third Schedule to the Companies Law (2018 Revision).

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref. LBS/JSE/749822/57076551)

9    The Joint Official Liquidators shall submit a report to the Court on the conduct of the liquidation as soon as reasonably practicable within 6 months of the commencement of the official liquidation and at such periods thereafter as the Court shall direct.

10   The costs of this Petition shall be paid out of the assets of the Company, as an expense of the liquidation, to be taxed if not agreed.

### *Deferral and refund of filing fees*

11   Pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4) the Fee of CI$5,000 be deferred until such time as sufficient funds become available to the Joint Official Liquidators from the liquidation of the Company's assets to enable to them pay the filing fee, the CI$5,000 filing fee which has already been paid by Mr Pearson and Mr Chilton as joint voluntary liquidators of the Company be refunded to them by the Registrar of the Financial Services Division.

### *Evidence in Related Proceedings*

12   Subject to any further Order of the Court, evidence filed in this proceeding shall stand as evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand as evidence in this proceeding.

DATED this 2 day of November 2018

FILED this 6 day of November 2018



**Hon Justice McMillan**

Judge of the Grand Court

---

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO:   FSD 187 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**
**AND IN THE MATTER of SG Strategic Income Ltd (in Voluntary Liquidation)**

**ORDER**

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of SG Strategic Income Ltd (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31 October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 185, 186, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

**IT IS ORDERED** as follows:

*Liquidation of Company to continue under supervision of Court*

1      The liquidation of the Company be continued under the supervision of the Court.

2      Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

1

3       The Joint Official Liquidators shall not be required to give security for their appointment.

4       The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the
        Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and
        the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5       The Joint Official Liquidators be authorised to seek recognition of their appointment in such
        other jurisdictions as they consider appropriate and prudent (including, without limitation,
        pursuant to Chapter 15 of the United States Bankruptcy Code).

6       The Joint Official Liquidators be authorised to engage staff (whether or not as employees of
        the Company) to assist the Joint Official Liquidators in the performance of their functions.

7       The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional
        advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of
        America or elsewhere, as they may consider necessary to advise and assist them in the
        performance of their duties in accordance with CWR O.25 and to remunerate them for their
        reasonable fees and expenses out of the assets of the Company as an expense of the
        liquidation.

8       The Joint Official Liquidators be authorised to exercise any of the powers specified in part II
        of the Third Schedule to the Companies Law (2018 Revision).

9       The Joint Official Liquidators shall submit a report to the Court on the conduct of the
        liquidation as soon as reasonably practicable within 6 months of the commencement of the
        official liquidation and at such periods thereafter as the Court shall direct.

10      The costs of this Petition shall be paid out of the assets of the Company, as an expense of
        the liquidation, to be taxed if not agreed.

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose
address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref:
LBS/JSE/749822/57076551)

**Evidence in Related Proceedings**

11    Subject to any further Order of the Court, evidence filed in this proceeding shall stand as
evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand
as evidence in this proceeding.

DATED this ⟶2 day of November 2018

FILED this **6** day of November 2018

Roti M. Mlee

**Hon Justice McMillan**

Judge of the Grand Court

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose
address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref:
LBS/JSE/749822/57076551)

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 188 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**
**AND IN THE MATTER of GMS Global Market Step Up Note Ltd (in Voluntary Liquidation)**

---

**ORDER**

---

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of GMS Global Market Step Up Note Ltd (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** reading the letter dated 30 October 2018 from Mr Pearson requesting that the CI$5,000 filing fees paid by the Company for the Petition ("**Fee**") be deferred pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4)

**AND UPON** the undertaking of the Joint Voluntary Liquidators that the Fee hereby deferred shall be paid immediately upon sufficient moneys coming under their control (and in any case, shall be paid prior to any remuneration or other liquidation expenses being paid).

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 186, 187, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IT IS ORDERED** as follows:

### *Liquidation of Company to continue under supervision of Court*

1    The liquidation of the Company be continued under the supervision of the Court.

2    Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

3    The Joint Official Liquidators shall not be required to give security for their appointment.

4    The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5    The Joint Official Liquidators be authorised to seek recognition of their appointment in such other jurisdictions as they consider appropriate and prudent (including, without limitation, pursuant to Chapter 15 of the United States Bankruptcy Code).

6    The Joint Official Liquidators be authorised to engage staff (whether or not as employees of the Company) to assist the Joint Official Liquidators in the performance of their functions.

7    The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of America or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR O.25 and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the liquidation.

8    The Joint Official Liquidators be authorised to exercise any of the powers specified in part II of the Third Schedule to the Companies Law (2018 Revision).

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

2

9       The Joint Official Liquidators shall submit a report to the Court on the conduct of the liquidation as soon as reasonably practicable within 6 months of the commencement of the official liquidation and at such periods thereafter as the Court shall direct.

10      The costs of this Petition shall be paid out of the assets of the Company, as an expense of the liquidation, to be taxed if not agreed.

### Deferral and refund of filing fees

11      Pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4) the Fee of CI$5,000 be deferred until such time as sufficient funds become available to the Joint Official Liquidators from the liquidation of the Company's assets to enable to them pay the filing fee, the CI$5,000 filing fee which has already been paid by Mr Pearson and Mr Chilton as joint voluntary liquidators of the Company be refunded to them by the Registrar of the Financial Services Division.

### Evidence in Related Proceedings

12      Subject to any further Order of the Court, evidence filed in this proceeding shall stand as evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand as evidence in this proceeding.

DATED this ⁻²⁻ day of November 2018

FILED this 𝟞 day of November 2018



**Hon Justice McMillan**

Judge of the Grand Court

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 189 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**

**AND IN THE MATTER of Preferred Income Collaterized Interest Ltd (in Voluntary Liquidation)**

**ORDER**

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of Preferred Income Collaterized Interest Ltd (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** reading the letter dated 30 October 2018 from Mr Pearson requesting that the CI\$5,000 filing fees paid by the Company for the Petition ("**Fee**") be deferred pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4)

**AND UPON** the undertaking of the Joint Voluntary Liquidators that the Fee hereby deferred shall be paid immediately upon sufficient moneys coming under their control (and in any case, shall be paid prior to any remuneration or other liquidation expenses being paid).

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 186, 187, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IT IS ORDERED** as follows:

## *Liquidation of Company to continue under supervision of Court*

1    The liquidation of the Company be continued under the supervision of the Court.

2    Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

3    The Joint Official Liquidators shall not be required to give security for their appointment.

4    The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5    The Joint Official Liquidators be authorised to seek recognition of their appointment in such other jurisdictions as they consider appropriate and prudent (including, without limitation, pursuant to Chapter 15 of the United States Bankruptcy Code).

6    The Joint Official Liquidators be authorised to engage staff (whether or not as employees of the Company) to assist the Joint Official Liquidators in the performance of their functions.

7    The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of America or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR O.25 and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the liquidation.

8    The Joint Official Liquidators be authorised to exercise any of the powers specified in part II of the Third Schedule to the Companies Law (2018 Revision).

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

9       The Joint Official Liquidators shall submit a report to the Court on the conduct of the liquidation as soon as reasonably practicable within 6 months of the commencement of the official liquidation and at such periods thereafter as the Court shall direct.

10      The costs of this Petition shall be paid out of the assets of the Company, as an expense of the liquidation, to be taxed if not agreed.

### *Deferral and refund of filing fees*

11      Pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4) the Fee of CI$5,000 be deferred until such time as sufficient funds become available to the Joint Official Liquidators from the liquidation of the Company's assets to enable to them pay the filing fee, the CI$5,000 filing fee which has already been paid by Mr Pearson and Mr Chilton as joint voluntary liquidators of the Company be refunded to them by the Registrar of the Financial Services Division.

### *Evidence in Related Proceedings*

12      Subject to any further Order of the Court, evidence filed in this proceeding shall stand as evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand as evidence in this proceeding.

DATED this ͬ day of November 2018

FILED this **6** day of November 2018

_____

**Hon Justice McMillan**

Judge of the Grand Court

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO:   FSD 190 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**

**AND IN THE MATTER of Diversified Real Estate Development Ltd (in Voluntary Liquidation)**

---

**ORDER**

---

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of Diversified Real Estate Development Ltd (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** reading the letter dated 30 October 2018 from Mr Pearson requesting that the CI\$5,000 filing fees paid by the Company for the Petition ("**Fee**") be deferred pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4)

**AND UPON** the undertaking of the Joint Voluntary Liquidators that the Fee hereby deferred shall be paid immediately upon sufficient moneys coming under their control (and in any case, shall be paid prior to any remuneration or other liquidation expenses being paid).

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 186, 187, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IT IS ORDERED** as follows:

### *Liquidation of Company to continue under supervision of Court*

1    The liquidation of the Company be continued under the supervision of the Court.

2    Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

3    The Joint Official Liquidators shall not be required to give security for their appointment.

4    The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5    The Joint Official Liquidators be authorised to seek recognition of their appointment in such other jurisdictions as they consider appropriate and prudent (including, without limitation, pursuant to Chapter 15 of the United States Bankruptcy Code).

6    The Joint Official Liquidators be authorised to engage staff (whether or not as employees of the Company) to assist the Joint Official Liquidators in the performance of their functions.

7    The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of America or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR O.25 and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the liquidation.

8    The Joint Official Liquidators be authorised to exercise any of the powers specified in part II of the Third Schedule to the Companies Law (2018 Revision).

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

9    The Joint Official Liquidators shall submit a report to the Court on the conduct of the liquidation as soon as reasonably practicable within 6 months of the commencement of the official liquidation and at such periods thereafter as the Court shall direct.

10   The costs of this Petition shall be paid out of the assets of the Company, as an expense of the liquidation, to be taxed if not agreed.

### Deferral and refund of filing fees

11   Pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4) the Fee of CI$5,000 be deferred until such time as sufficient funds become available to the Joint Official Liquidators from the liquidation of the Company's assets to enable to them pay the filing fee, the CI$5,000 filing fee which has already been paid by Mr Pearson and Mr Chilton as joint voluntary liquidators of the Company be refunded to them by the Registrar of the Financial Services Division.

### Evidence in Related Proceedings

12   Subject to any further Order of the Court, evidence filed in this proceeding shall stand as evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand as evidence in this proceeding.

DATED this 2 day of November 2018

FILED this 6 day of November 2018



**Hon Justice McMillan**

Judge of the Grand Court

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

3

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 191 OF 2018 (RMJ)**

**IN THE MATTER of the Companies Law (2018 Revision)**
**AND IN THE MATTER of Sentinel Investment Fund SPC (in Voluntary Liquidation)**

———————————————————————

**ORDER**

———————————————————————

**UPON** reading the petition of Michael Pearson and Hadley Chilton ("**Joint Voluntary Liquidators**") dated 5 October 2018 for an order that the liquidation of Sentinel Investment Fund SPC (in Voluntary Liquidation) ("**Company**") continue under the supervision of the Court ("**Petition**")

**AND UPON** reading the first affidavit of Michael Pearson sworn on 31October 2018 (which verifies the Petition), the first affidavit of Mr Hadley Chilton sworn on 30 October 2018 and the respective exhibits thereto

**AND UPON** being satisfied that the Joint Voluntary Liquidators are qualified insolvency practitioners

**AND UPON** being satisfied that no creditors of the Company have indicated that they object to the Joint Voluntary Liquidators being appointed as official liquidators of the Company

**AND UPON** reading the letter dated 30 October 2018 from Mr Pearson requesting that the CI$5,000 filing fees paid by the Company for the Petition ("**Fee**") be deferred pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4)

**AND UPON** the undertaking of the Joint Voluntary Liquidators that the Fee hereby deferred shall be paid immediately upon sufficient moneys coming under their control (and in any case, shall be paid prior to any remuneration or other liquidation expenses being paid).

**AND UPON** noting that the Petition in this proceeding is being heard concurrently with petitions in certain related proceedings, being cause numbers FSD 186, 187, 188, 189, 190 and 191 of 2018 (RMJ) (each a "**Related Proceeding**" and together the "**Related Proceedings**")

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

**IT IS ORDERED** as follows:

### *Liquidation of Company to continue under supervision of Court*

1    The liquidation of the Company be continued under the supervision of the Court.

2    Michael Pearson of FFP Limited of 2nd Floor Harbour Centre, 42 North Church Street, George Town, Cayman Islands and Hadley Chilton of FFP (BVI) Limited of 2nd Floor, TICO Building, Wickhams Cay II, Tortola VG1110 be appointed as joint official liquidators of the Company with power to act jointly and severally (the "**Joint Official Liquidators**").

3    The Joint Official Liquidators shall not be required to give security for their appointment.

4    The Joint Official Liquidators' remuneration and expenses be paid out of the assets of the Company in accordance with Part III of the Insolvency Practitioners' Regulations 2018 and the Companies Winding Up Rules, 2018 ("**CWR**") O.20.

5    The Joint Official Liquidators be authorised to seek recognition of their appointment in such other jurisdictions as they consider appropriate and prudent (including, without limitation, pursuant to Chapter 15 of the United States Bankruptcy Code).

6    The Joint Official Liquidators be authorised to engage staff (whether or not as employees of the Company) to assist the Joint Official Liquidators in the performance of their functions.

7    The Joint Official Liquidators be at liberty to appoint counsel, attorneys and professional advisors, whether in the Cayman Islands, the British Virgin Islands, the United States of America or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with CWR O.25 and to remunerate them for their reasonable fees and expenses out of the assets of the Company as an expense of the liquidation.

8    The Joint Official Liquidators be authorised to exercise any of the powers specified in part II of the Third Schedule to the Companies Law (2018 Revision).

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

2

9      The Joint Official Liquidators shall submit a report to the Court on the conduct of the liquidation as soon as reasonably practicable within 6 months of the commencement of the official liquidation and at such periods thereafter as the Court shall direct.

10     The costs of this Petition shall be paid out of the assets of the Company, as an expense of the liquidation, to be taxed if not agreed.

### Deferral and refund of filing fees

11     Pursuant to the Court Fees Rules, 2009 (as amended by the Court Fees (Amendment) Rules 2009), r.6(4) the Fee of CI$5,000 be deferred until such time as sufficient funds become available to the Joint Official Liquidators from the liquidation of the Company's assets to enable to them pay the filing fee, the CI$5,000 filing fee which has already been paid by Mr Pearson and Mr Chilton as joint voluntary liquidators of the Company be refunded to them by the Registrar of the Financial Services Division.

### Evidence in Related Proceedings

12     Subject to any further Order of the Court, evidence filed in this proceeding shall stand as evidence in the Related Proceedings and evidence filed in a Related Proceeding shall stand as evidence in this proceeding.

DATED this $\overset{2}{\phantom{.}}$ day of November 2018

FILED this $\,6\,$ day of November 2018



Roc· Mr· M ee

**Hon Justice McMillan**

Judge of the Grand Court

THIS ORDER was filed by Maples and Calder, Attorneys for the Joint Voluntary Liquidators whose address for service is PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands (Ref: LBS/JSE/749822/57076551)

# EXHIBIT A-2

# [BRITISH VIRGIN ISLANDS APPOINTMENT ORDERS]



2nd Floor TICO Building
Wickhams Cay II
Road Town, Tortola
British Virgin Islands
VG 1110
T: +1 284 494 2714
F: +1 284 494 2715

4 September 2018

Financial Services Commission
Haycraft Building, Pasea Estate
Road Town, Tortola VG 1110
British Virgin Islands
Dear Sirs

## North Pointe Holdings Limited - (in Liquidation) (the "Company") – Company No 1904975

I hereby give notice pursuant to s178(1)(d) of the Insolvency Act, 2003 that Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola VG 1110, British Virgin Islands and Michael Pearson of FFP Limited, 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands were appointed as Joint Liquidators of the Company by a qualifying members' resolution dated 31st August 2018. Copies of the resolutions are attached.

Should you have any queries or wish to discuss the foregoing, please do not hesitate to contact me by e-mail at stephen.briscoe@ffp.vg, or on +1 284 494 2714.

Yours faithfully
For and on behalf of
North Pointe Holdings Limited


Stephen Briscoe
Joint Liquidator

*Enclosures:*
Notice of Appointment
Resolutions

IN THE MATTER OF THE INSOLVENCY ACT, 2003

AND

NORTH POINTE HOLDINGS LIMITED (IN LIQUIDATION)

COMPANY NO 1904975

### NOTICE OF APPOINTMENT

**NOTICE** is hereby given that, pursuant to section 159(2) of the Insolvency Act, Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II,  Road Town, Tortola VG 1110, British Virgin Islands and Michael Pearson of FFP Limited, 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands were appointed Joint Liquidators of North Pointe Holdings Limited (the "Company") by a qualifying resolution of the members of the Company dated 31st August 2018.

Dated 31 August 2018

Stephen Briscoe

Joint LIquidator

## North Pointe Holdings Ltd.

(the "Company")

WRITTEN RESOLUTION OF THE SOLE SHAREHOLDER
pursuant to Section 88 of the Business Companies Act, 2004

**Whereas** the sole shareholder of the Company wishes to wind up the Company pursuant to s159(2) of the Insolvency Act, 2003; and

**Whereas** Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP (Cayman) Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands have provided their consent to act as liquidators jointly and severally;

**We**, the undersigned, being the sole shareholder entitled to vote in the Company, **DO HEREBY ADOPT** the following qualifying member's resolution:-

**RESOLVED** that in accordance with section 159(2) of the Insolvency Act, 2003 the Company hereby be placed into liquidation and Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP (Cayman) Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands be appointed Joint Liquidators.

Dated the 31st day of August 2018

Amicorp (BVI) Trustees Ltd.
As Trustee of the SBH Assets Trust

Signed: _____          _____
                                          Name Trevor M. Burke/Careen Byfield Leyshon

_____
Position: Authorised Signatories



2nd Floor TICO Building
Wickhams Cay II
Road Town, Tortola
British Virgin Islands
VG 1110
T: +1 284 494 2714
F: +1 284 494 2715

4 September2018

Financial Services Commission
Haycraft Building, Pasea Estate
Road Town, Tortola VG 1110
British Virgin Islands
Dear Sirs

## Vanguardia Holdings Limited - (in Liquidation) (the "Company") – Company No 1905358

I hereby give notice pursuant to s178(1)(d) of the Insolvency Act, 2003 that Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola VG 1110, British Virgin Islands and Michael Pearson of FFP Limited, 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands were appointed as Joint Liquidators of the Company by a qualifying members' resolution dated 31st August 2018. Copies of the resolutions are attached.

Should you have any queries or wish to discuss the foregoing, please do not hesitate to contact me by e-mail at stephen.briscoe@ffp.vg, or on +1 284 494 2714.

Yours faithfully
For and on behalf of
Vanguardia Holdings Limited

Stephen Briscoe
Joint Liquidator

*Enclosures:*
Appointment document
Resolutions

IN THE MATTER OF THE INSOLVENCY ACT, 2003

AND

VANGUARDIA HOLDINGS LIMITED (IN LIQUIDATION)

COMPANY NO 1905358

NOTICE OF APPOINTMENT

**NOTICE** is hereby given that, pursuant to section 159(2) of the Insolvency Act, Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II,  Road Town, Tortola VG 1110, British Virgin Islands and Michael Pearson of FFP Limited, 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands were appointed Joint Liquidators of Vanguardia Holdings Limited (the "Company") by a qualifying resolution of the members of the Company dated 31st August 2018.

Dated  4/9/18

Stephen Briscoe
Joint Liquidator

**Vanguardia Holdings Ltd.**
(the "Company")

WRITTEN RESOLUTION OF THE SOLE SHAREHOLDER
pursuant to Section 88 of the Business Companies Act, 2004

**Whereas** the sole shareholder of the Company wishes to wind up the Company pursuant to s159(2) of the Insolvency Act, 2003; and

**Whereas** Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP (Cayman) Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands have provided their consent to act as liquidators jointly and severally;

**We**, the undersigned, being the sole shareholder entitled to vote in the Company, **DO HEREBY ADOPT** the following qualifying member's resolution:-

**RESOLVED** that in accordance with section 159(2) of the Insolvency Act, 2003 the Company hereby be placed into liquidation and Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP (Cayman) Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands be appointed Joint Liquidators.

Dated the 31st day of August 2018

Amicorp (BVI) Trustees Ltd.
As Trustee of the Vanguardia Trust

Signed: _____     Name Trevor M. Burke/Careen Byfield Leyshon

_____
Position: Authorised Signatories

# Bicayne Capital (B.V.I.) Ltd.

(the "Company")
Company number 1047060

WRITTEN RESOLUTION OF THE SOLE SHAREHOLDER
pursuant to Section 88 of the Business Companies Act, 2004

**Whereas** the sole shareholder of the Company wishes to wind up the Company pursuant to s159(2) of the Insolvency Act, 2003; and

**Whereas** Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands have provided their consent to act as liquidators, jointly and severally;

**We**, the undersigned, being the sole shareholder entitled to vote in the Company, **DO HEREBY ADOPT** the following qualifying member's resolution:-

**RESOLVED** that in accordance with section 159(2) of the Insolvency Act, 2003 the Company hereby be placed into liquidation; and

**RESOLVED** that Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands be appointed Joint Liquidators.

Dated the 6th day of November 2018

Biscayne Capital Holdings Limited (in liquidation)

Signed:  _____

Name:    Michael Pearson
Position:  Joint Liquidator for and on behalf of
Biscayne Capital Holdings Limited (in liquidation)

**Spyglass Investment Management Ltd.**
(the "Company")

WRITTEN RESOLUTION OF THE SOLE SHAREHOLDER
pursuant to Section 88 of the Business Companies Act, 2004

**Whereas** the sole shareholder of the Company wishes to wind up the Company pursuant to s159(2) of the Insolvency Act, 2003; and

**Whereas** Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands have provided their consent to act as liquidators jointly and severally;

**We**, the undersigned, being the sole shareholder entitled to vote in the Company, **DO HEREBY ADOPT** the following qualifying member's resolution:-

**RESOLVED** that in accordance with section 159(2) of the Insolvency Act, 2003 the Company hereby be placed into liquidation and Stephen Briscoe of FFP (BVI) Limited, TICO Building, Wickhams Cay II, Road Town, Tortola, British Virgin Islands and Michael Pearson of FFP Limited, 2nd Floor Harbour Centre, 42 North Church Street, George Town, Grand Cayman, Cayman Islands be appointed Joint Liquidators.

Dated the 11th day of September 2018

Vanguardia Group Inc. (in liquidation)

_____
Signed: Michael Pearson

_____
Signed: Hadley Chilton

_____
Position: Joint Liquidator

_____
Position: Joint Liquidator

# EXHIBIT A-3

## [BERMUDA APPOINTMENT ORDER]

**IN THE MATTER OF THE COMPANIES ACT 1981 (the "Act")**

**AND**

**BISCAYNE CAPITAL HOLDINGS LIMITED**

**COMPANY NO 46759**

**MINUTES OF THE MEETING OF CONTRIBUTORIES**

A meeting of the Company was held for the purposes provided for in sections 217 of the Act at the offices of FFP (BVI) Limited, 2nd Floor Tico Building, Road Town, Tortola, VG1110, British Virgin Islands at 10:00 AM on 30 October 2018.

The purpose of the meeting was for the sole shareholder, North Pointe Holdings Ltd. (in liquidation), to consider the following resolutions:

**By Special Resolution, it was resolved:**

> "That the Company cannot, by reason of its liabilities, continue its business and that it is advisable to wind-up the same, and accordingly that the Company be wound up voluntarily."

**By way of Ordinary Resolutions, it was resolved:**

> "That Stephen Briscoe of FFP (BVI) Limited, P.O. Box 4441, Road Town, Tortola VG 1110, British Virgin Islands and Michael Pearson of FFP Limited, 10 Market Street #769, Camana Bay, Grand Cayman, KY1-9006, Cayman Islands be appointed Joint Liquidators of Spyglass Investment Management Ltd."

> "That an audit of the joint and several liquidators' receipts and payments accounts under Rule 126 of the Companies (Winding Up Rules) 1982 shall not be required."

There was no further business.

Dated 30 October 2018

Hadley Chilton
Chairman
For and on behalf of North Pointe Holdings Ltd. (in liquidation)

# **EXHIBIT B**

## **[ORGANIZATIONAL CHARTS]**





# **EXHIBIT C**

# **[SEC ORDER]**

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

INVESTMENT ADVISERS ACT OF 1940
Release No. 4399 / May 27, 2016

INVESTMENT COMPANY ACT OF 1940
Release No. 32130 / May 27, 2016

ADMINISTRATIVE PROCEEDING
File No. 3-17263

| | |
|---|---|
| In the Matter of<br><br>    BISCAYNE CAPITAL<br>    INTERNATIONAL, LLC,<br>    ROBERTO G. CORTES,<br>    ERNESTO H. WEISSON,<br>    JUAN CARLOS CORTES, and<br>    FRANK R. CHATBURN<br><br>Respondents. | ORDER INSTITUTING ADMINISTRATIVE AND CEASE-AND-DESIST PROCEEDINGS, PURSUANT TO SECTIONS 203(e), 203(f) AND 203(k) OF THE INVESTMENT ADVISERS ACT OF 1940, AND SECTION 9(b) OF THE INVESTMENT COMPANY ACT OF 1940, MAKING FINDINGS, AND IMPOSING REMEDIAL SANCTIONS AND A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate and in the public interest that public administrative and cease-and-desist proceedings be, and hereby are, instituted pursuant to Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940 ("Advisers Act"), and Section 9(b) of the Investment Company Act of 1940 ("Investment Company Act") against Biscayne Capital International, LLC, Roberto G. Cortes, Ernesto H. Weisson, Juan Carlos Cortes, and Frank R. Chatburn ("Respondents").

**II.**

In anticipation of the institution of these proceedings, each Respondent has submitted an Offer of Settlement (the "Offers") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over them and the subject matter of these proceedings, which are admitted, and except as provided herein in Section V, Respondents consent to the entry of this Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 203(e), 203(f) and 203(k) of the Investment Advisers Act of 1940, and Section 9(b) of the Investment Company Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order ("Order"), as set forth below.

<center>**III.**</center>

On the basis of this Order and Respondents' Offers, the Commission finds[1] that:

<center>**Summary**</center>

1.      These proceedings arise out of the failure of Biscayne Capital International, LLC ("BCI"), formerly a U.S. registered investment adviser, to disclose facts giving rise to multiple conflicts of interest and other material information under the Investment Advisers Act of 1940 (the "Advisers Act") in connection with the recommendation and sale of securities issued by private offshore investment companies under common beneficial ownership with BCI (hereinafter "Proprietary Products") to non-U.S. clients between August 2010 and March 2012 (the "Relevant Period").  Three BCI principals – Roberto G. Cortes ("Roberto Cortes"), Ernesto H. Weisson ("Weisson") and Juan C. Cortes ("Juan Cortes") (collectively "the Primary BCI Principals"[2]) – formed entities that issued the Proprietary Products primarily for the purpose of financing South Bay Holdings, LLC ("South Bay"), a Florida-based residential real estate developer, which itself was beneficially owned by Roberto Cortes and Weisson.  In turn, South Bay was the majority beneficial owner of BCI during the Relevant Period.

2.      BCI failed to disclose, among other things, the Primary BCI Principals' beneficial ownership interest and role in the creation of the Proprietary Products issuers.  Further, BCI failed to disclose additional material information under the Advisers Act concerning South Bay's financial condition, including that, both preceding and during the Relevant Period, South Bay failed to generate enough revenue or operating cash flow to meet maturing debt, or sustain operations absent obtaining the additional financing generated by the sale of Proprietary Products, and was required to renegotiate several past-due financial obligations.  By doing so, BCI willfully violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940.

3.      Roberto Cortes, Weisson, and Juan Cortes created BCI and several affiliated non-U.S. financial services entities, all operating under the Biscayne Capital name, and marketed the Proprietary Products through their financial advisors, five of whom, including Frank Chatburn, they knew were employed by both BCI and the affiliated non-U.S. financial services entities.

4.      Roberto Cortes, Weisson and Juan Cortes each willfully aided and abetted and caused BCI's violations of Section 206(2) of the Advisers Act by failing to prohibit the sales of the Proprietary Products through the U.S.-based BCI or, in the alternative, by failing to train BCI investment adviser representatives to make adequate disclosures under the Advisers Act concerning the conflicts of  interest and South Bay's financial condition, when recommending Proprietary Products to BCI clients.[3]

---

[1] The findings herein are made pursuant to each Respondent's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding.

[2] Other individuals, including Frank Chatburn, had a beneficial ownership interest in and were principals of BCI.

[3] A willful violation of the securities laws means merely "'that the person charged with the duty knows what he is doing.'" *Wonsover v. SEC*, 205 F.3d 408, 414 (D.C. Cir. 2000) (quoting *Hughes v. SEC*, 174 F.2d 969, 977 (D.C. Cir. 1949)).

5.     Frank Chatburn ("Chatburn"), who was both an investment adviser representative for BCI as well as an investment adviser for the non-U.S. financial services entities, willfully aided and abetted and caused BCI's violations of Section 206(1) and 206(2) of the Advisers Act by recommending and selling approximately $3.49 million in Proprietary Products to 29 non-U.S. BCI clients without making adequate disclosures under the Advisers Act.  He failed to conduct a "fundamental analysis" of the Proprietary Products in contravention of representations in BCI's Form ADV; and failed to conduct an investigation or inquiry into, *inter alia*, the ownership or operation of Proprietary Product issuers or into South Bay's financial condition notwithstanding red flags concerning these entities.  Chatburn also failed to disclose that he had a personal conflict of interest when recommending the Proprietary Products to BCI clients based on his beneficial ownership interest in BCI and the non-U.S. Biscayne Capital financial services entities as well as undisclosed compensation he received in connection with his recommendation and sale of the Proprietary Products to BCI clients.

6.     Additionally, BCI willfully failed, and Juan Cortes willfully aided and abetted and caused BCI's failure, to design and implement policies and procedures reasonably designed to prevent violations of the Advisers Act.  BCI also willfully made, and Roberto Cortes and Juan Cortes willfully aided and abetted and caused BCI to make, material misrepresentations in Form ADV.  Additionally, during the Relevant Period, BCI, Roberto Cortes, and Juan Cortes each failed reasonably to supervise Chatburn.

## **Respondents**

7.     **Biscayne Capital International, LLC ("BCI")**, formerly a Florida limited liability company headquartered in Miami, Florida, was an investment adviser registered with the Commission between October 14, 2008 and June 26, 2012.  BCI provided discretionary and non-discretionary advisory services primarily to Latin American individuals and entities.  BCI had approximately $12.8 million in assets under management ("AUM") as of December 31, 2011.

8.     **Roberto G. Cortes ("Roberto Cortes")**, age 49, of Miami, Florida, was a co-founder and beneficial owner of BCI during the Relevant Period as well as its Chief Executive Officer.  He also is a beneficial owner of, and directly or indirectly controls, South Bay Holdings, LLC, the Proprietary Products issuers, and the affiliated non-U.S. financial services entities.

9.     **Ernesto H. Weisson ("Weisson")**, age 47, of Miami, Florida, was a co-founder and beneficial owner of BCI during the Relevant Period.  He also is a beneficial owner of, and directly or indirectly controls, South Bay Holdings, LLC, the Proprietary Products issuers, and the affiliated non-U.S. financial services entities.

10.     **Juan Carlos Cortes ("Juan Cortes")**, age, 37, an Ecuadorian citizen and permanent resident of the United States residing in Miami, Florida, was a co-founder and beneficial owner of BCI during the Relevant Period as well as its Chief Operating Officer.  Juan Cortes also served as BCI's Chief Compliance Officer until late 2011.  Juan Cortes is a beneficial owner of, and directly or indirectly controls, the Proprietary Products issuers, and the affiliated non-U.S. financial services entities.  He also is Roberto Cortes' brother.

11.     **Frank R. Chatburn ("Chatburn")**, age 37, a dual United States and Ecuadorian citizen residing in Miami, Florida, was a beneficial owner of BCI as well as an investment adviser representative of BCI during the Relevant Period.  He also is a beneficial owner and financial adviser for the affiliated non-U.S. financial services entities.  Chatburn is Roberto Cortes' cousin.

### Other Relevant Individuals and Entities

12.     **South Bay Holdings, LLC ("South Bay")**, a Florida limited liability company headquartered in Miami, Florida, is a private real estate development company that concentrates on residential real estate in South Florida.  South Bay is beneficially owned by Roberto Cortes and Weisson.

13.     **Sentinel Investment Fund, Ltd. ("Sentinel")**, a Proprietary Products issuer, is, according to private placement memoranda, "an exempted limited liability company of unlimited duration registered as a Segregated Portfolio Company" in the Cayman Islands.  Sentinel was formed primarily for the purpose of financing the activities of South Bay through the sale of preferred shares to non-U.S. investors.  Roberto Cortes, Weisson, and Juan Cortes are directors and beneficial owners of Sentinel.

14.     **Spyglass Investment Management, Ltd. ("Spyglass")** is, according to the Sentinel private placement memoranda, "a company limited by shares" incorporated in the British Virgin Islands.  Spyglass served as the investment adviser to Sentinel and certain of the other Proprietary Products issuers during the Relevant Period.  Spyglass delegated all of its responsibilities to Roberto Cortes during the Relevant Period.  Roberto Cortes, Weisson and Juan Cortes beneficially own Spyglass.  Spyglass has never been registered with the Commission.

15.     **SG Strategic Income, Ltd. ("SG Strategic")**, a Proprietary Products issuer, is, according to private placement memoranda, a "private closed-ended investment exempt company incorporated in the Cayman Islands" that issued four series of notes to non-U.S. investors during the Relevant Period.  SG Strategic primarily invested in "non[-]registered private mortgage backed notes" issued by South Bay through Sentinel and in membership interests issued by South Bay.  Roberto Cortes, Weisson and Juan Cortes beneficially own SG Strategic.

16.     **GMS Global Step Up Note, Ltd. ("GMS")**, a Proprietary Products issuer, is, according to private placement memoranda, a "private closed-ended investment exempt company incorporated in the Cayman Islands" that issued three series of notes to non-U.S. investors during the Relevant Period.  GMS primarily invested in "non-registered private mortgage backed notes" issued by South Bay.  Roberto Cortes, Weisson and Juan Cortes beneficially own GMS.

### Facts

**A.  The Common Beneficial Ownership and Effective Control of BCI, the Proprietary Products Issuers and South Bay Created a Conflict of Interest for BCI.**

17.     Roberto Cortes and Weisson formed and began operating South Bay, a residential real estate development company, in approximately 1999.  Between 1999 and approximately 2005, South Bay concentrated on residential real estate development in Key Biscayne, Florida.  South

Bay's business activities expanded significantly in 2006 and 2007 when South Bay acquired 29 lots and associated club memberships in an exclusive resort in South Florida (the "Resort"). Until approximately 2007, South Bay's business activities were financed primarily through commercial bank loans and investments from friends and family.

18.     The Primary BCI Principals and a related individual formed Sentinel, the first of the Proprietary Products issuers, in approximately 2006 for the primary purpose of financing South Bay's activities through the issuance of preferred shares to non-U.S. investors. Starting in 2010, they formed additional Proprietary Products issuers, including SG Strategic and GMS, for the purpose of financing South Bay's activities through the issuance of notes to non-U.S. investors. During the Relevant Period, Roberto Cortes and Weisson each beneficially owned 40 percent of the Proprietary Products issuers and Juan Cortes beneficially owned 10 percent. These three principals were also directors of Sentinel during the Relevant Period. An affiliated entity under the effective control of the beneficial owners provided administrative and accounting support to the Proprietary Products issuers. The Primary BCI Principals, as the beneficial equity owners of the Proprietary Products issuers, stood to receive any profits generated by those entities. The basic beneficial ownership structure of the Proprietary Products is as follows:[4]



19.     Generally, the Proprietary Products issuers invested the proceeds of the notes sold to non-U.S. investors in promissory notes issued by South Bay backed by non-registered mortgages,[5] although certain Proprietary Products issuers invested in membership certificates issued by South Bay.

20.     The Primary BCI Principals, and a related individual, also beneficially owned Spyglass, an offshore investment adviser to certain of the Proprietary Products issuers. Spyglass delegated all of its responsibilities to Roberto Cortes during the Relevant Period, including responsibility for valuing the investments that certain of the Proprietary Products issuers made in South Bay.

---

[4] The Proprietary Products issuers were beneficially owned by these individuals through a holding company that is not represented in this chart. None of the Proprietary Products' offerings was registered under the Securities Act of 1933 and, under the terms of the offering memoranda, the securities were prohibited from sale to U.S. persons.

[5] The non-registered mortgages executed by South Bay in favor of the Proprietary Products issuers were not recorded in Florida. Any recorded mortgages on the properties at issue would have priority over non-registered mortgages.

21.    Starting in approximately 2005, Roberto Cortes, Weisson, and Juan Cortes formed several non-U.S. financial services entities operating under the Biscayne Capital name.  Together with Chatburn, they formed BCI in 2008.  Roberto Cortes and Weisson beneficially owned through South Bay approximately 61 percent of BCI and the affiliated non-U.S. financial services entities during the Relevant Period.  Juan Cortes and Chatburn each beneficially owned between 8 and 9 percent of BCI and the affiliated non-U.S. financial services entities during the Relevant Period.  The basic beneficial ownership structure of the Biscayne Capital entities is as follows:[6]



22.    As the majority beneficial owner of the Biscayne Capital entities, South Bay invested millions of dollars in capital contributions for the benefit of those entities during the Relevant Period.

23.    The common beneficial ownership and effective control of BCI, the Proprietary Products Issuers and South Bay created a conflict of interest that, under the Advisers Act, should have been disclosed when BCI recommended and sold the Proprietary Products to BCI clients.

**B.    South Bay's Financial Condition During the Relevant Period Created a Conflict of Interest for BCI.**

24.    By 2009, the combination of the global financial crisis, the accompanying disruption of the South Florida real estate market, and numerous development delays relating to the Resort caused financial difficulties for South Bay.

25.    Between approximately 2007 and late 2009, Weisson and Roberto Cortes, the co-owners of South Bay, spent significant time and resources drafting development plans, seeking permits, and making preparations to develop 17 contiguous lots of the 29 total Resort lots as a single project.  One plan involved developing fractional ownership units.  Another plan involved developing a luxury retirement community.  However, the single project development plans ultimately did not move forward for various reasons.  Consequently, in 2010, South Bay began drafting new development plans to build single family homes on the lots over a six-year period, with rental income starting in late 2012 and home sales starting in 2013 and continuing through

---

[6] The Biscayne Capital entities were beneficially owned by these individuals and entities through a holding company that is not represented in this chart.

2016. The development delays stretched into the heart of the financial crisis, leaving South Bay with little revenue and increasing carrying costs.[7]

26. As later reported in its audited financials, throughout the Relevant Period, South Bay failed to generate enough revenue or operating cash flows to pay off maturing debt, sustain its operations or fund its development plans without obtaining additional financing. Audits completed subsequent to the Relevant Period showed that South Bay had significant net negative cash flows from operations in 2010, 2011 and 2012. During this period, its annual interest costs rose to approximately $12.6 million in 2010, $10.7 million in 2011, and $11.5 million in 2012.[8] South Bay was also required to renegotiate certain past due financial obligations prior to and during the Relevant Period.[9]

27. South Bay's financial condition during this period created a conflict of interest for BCI under the Advisers Act, and, thus, should have been disclosed when it recommended and sold the Proprietary Products to BCI clients.

## C. BCI's Dependence on South Bay for Financial Support During the Relevant Period Created a Conflict of Interest for BCI.

28. BCI did not generate revenues sufficient to sustain operations during the Relevant Period without obtaining additional funding.

29. South Bay, as the majority beneficial owner of BCI, provided capital contributions to BCI necessary to support its operations during the Relevant Period.

30. BCI's dependence on South Bay for capital contributions during the Relevant Period created a conflict of interest for BCI that, under the Advisers Act, should have been disclosed in connection with the recommendation and sale of Proprietary Products to BCI clients.

## D. Roberto Cortes, Weisson and Juan Cortes Developed, Marketed, and Sold Proprietary Products to Finance South Bay's Operations.

31. In 2010 and 2011, while South Bay was struggling to service its existing debt obligations and repay maturing debt to Sentinel, the Primary BCI Principals formed Proprietary Products issuers for the primary purpose of raising additional investor funds to sustain South Bay's operations, meet its existing loan obligations and finance its new real estate development plans.

---

[7] In contrast to the six-year single family home development plan for the Resort lots, South Bay had previously expected all of the homes in the luxury retirement community project to be sold in advance of construction with construction financed by the individuals who purchased the homes and to take 12 to 15 months to complete.

[8] This includes interest incurred and charged to operations as well as interest incurred and capitalized.

[9] The largest past-due obligations concerned loans made by Sentinel to South Bay between 2007 and 2010. The past-due obligations, which exceeded $41 million by September 2010, were renegotiated on several occasions, each time with Roberto Cortes acting on behalf of Spyglass and Sentinel, and Weisson acting on behalf of South Bay.

32.     The Primary BCI Principals formed SG Strategic in the Cayman Islands in March 2010 and issued its first series of notes – Sentinel Investment Fund SPC Linked Series 7.3 Notes ("SG Series 7.3") – to non-U.S. investors starting in July 2010.  SG Strategic invested the proceeds from the first series of notes in preferred shares of Sentinel.  BCI, through Chatburn, recommended and sold SG Series 7.3 Notes to non-U.S. BCI clients without disclosing various conflicts of interest or material information under the Advisers Act related to South Bay's financial condition.

33.     SG Strategic issued three additional series of notes in June 2011: (1) SBH Diversified Preferred Income 2014 (offering commenced in June 2011 and matured in May 2014); (2) SBH Diversified Preferred Income 2016 (offering commenced June 2011 and matures in May 2016); and (3) SBH Diversified Preferred Income 2018 (offering commenced in June 2011 and matures in May 2018) ("SBH 2014," "SBH 2016," and "SBH 2018," respectively).  SG Strategic invested the proceeds from those three series directly in membership certificates issued by South Bay.  South Bay treated the investment as an equity investment for purposes of its financial statements.  BCI, through Chatburn, recommended and sold SBH 2016 and SBH 2018 to its non-U.S. clients without disclosing various conflicts of interest or material information under the Advisers Act related to South Bay's financial condition.

34.     The Primary BCI Principals also formed GMS, which issued three series of notes in December 2011.  The proceeds of these note issuances primarily were invested in Sentinel and in non-registered private mortgage backed notes issued by South Bay.  BCI, through Chatburn, recommended and sold GSM Global Step Up Note, Ltd. Series 3 ("GMS Series 3") to its non-U.S. clients without disclosing various conflicts of interest or material information under the Advisers Act related to South Bay's financial condition.

**E.  BCI Willfully Breached its Fiduciary Duty Under the Advisers Act By Failing to Disclose Conflicts of Interest and Material Information Concerning South Bay's Financial Condition When Recommending to Its Clients the Proprietary Products.**

35.     Chatburn, a BCI investment adviser representative, exercised his discretionary authority to purchase[10] or otherwise recommended the purchase of approximately $3.49 million in Proprietary Products in 29 separate BCI client accounts between August 30, 2010 and March 27, 2012.  Chatburn also recommended that certain BCI client accounts sell approximately $104,000 in Proprietary Products during that period.  Chatburn's recommendations to BCI clients related to four Proprietary Products: (1) SG Series 7.3 Notes; (2) SBH 2016; (3) SBH 2018; and (4) GMS Series 3.

36.     As a U.S. investment adviser, BCI had a fiduciary duty under the Advisers Act to exercise the utmost good faith in dealing with clients – including to fully and fairly disclose all material information which might incline an investment adviser consciously or unconsciously to render advice which is not disinterested and to employ reasonable care to avoid misleading clients.  As a BCI investment adviser representative, Chatburn had the same fiduciary duty to his and BCI's clients.  It is the client, not the investment adviser, who is entitled to determine whether a conflict

---

[10] Chatburn had discretion over most of his clients' accounts.

of interest might cause an investment adviser – consciously or unconsciously – to render advice that is not disinterested.

37.     In recommending to its clients the Proprietary Products described above, BCI failed to disclose the previously articulated conflicts of interest relating to the Proprietary Products as well as material information concerning South Bay's financial condition.  In doing so, BCI breached its fiduciary duty under the Advisers Act to those clients.

38.     All the Proprietary Products' offering memoranda during the Relevant Period were silent as to BCI's conflicts of interest and South Bay's financial condition.  Chatburn failed to disclose to clients various conflicts of interest, such as South Bay's financial condition or the fact that the Proprietary Products issuers were formed and beneficially owned and controlled by the Primary BCI Principals.  Similarly, Chatburn failed to disclose that Roberto Cortes and Weisson were responsible for determining the value of certain of the Proprietary Products issuers' investments in South Bay.  Further, Chatburn failed to disclose that the Primary BCI Principals owned Spyglass or that Spyglass had delegated its responsibilities to Roberto Cortes during most of the Relevant Period.

39.     Chatburn also failed to disclose material information under the Advisers Act relating to South Bay's financial condition to BCI clients who purchased the Proprietary Products.

**F.  Roberto Cortes, Weisson, and Juan Cortes Willfully Aided and Abetted and Caused BCI's Failure to Disclose Conflicts of Interest and Material Information Under the Advisers Act Regarding South Bay's Financial Condition.**

40.     Roberto Cortes, Weisson, and Juan Cortes developed the Proprietary Products to finance South Bay's real estate operations.  An essential component of their effort was to sell the Proprietary Products through their financial advisers, five of whom, including Chatburn, they knew were employed by both BCI and the affiliated non-U.S. Biscayne Capital financial services entities.  Roberto Cortes, Weisson, and Juan Cortes encouraged the sale of Proprietary Products by providing these financial advisers offering memoranda, term sheets and presentations concerning South Bay.  However, Roberto Cortes, Weisson, and Juan Cortes failed to take steps to ensure that the Proprietary Products were not sold through BCI or, in the alternative, to train BCI investment adviser representatives to make adequate disclosures under the Advisers Act in connection with any such BCI sales.  For example, they failed to take steps to inform BCI investment adviser representatives that Proprietary Products sales should be made only through the affiliated non-U.S. financial services entities and no recommendations or sales should be made through BCI.  Nor did they take steps to prevent trade tickets relating to Proprietary Products from being entered for BCI or to monitor BCI for Proprietary Product sales.  They failed to provide training to BCI's investment adviser representatives to highlight regulatory differences between recommending Proprietary Products through their affiliated non-U.S. financial services entities and those required when recommending and selling through BCI, a U.S. registered investment adviser.  Further, they knew that BCI's compliance manual was silent as to the sale of Proprietary Products through BCI.

41.     Roberto Cortes, Weisson and Juan Cortes failed to detect that Chatburn engaged in Proprietary Product sales through BCI client accounts during a period of more than 18 months

even though they knew that, at least as of July 30, 2010, Chatburn's assets under management at BCI amounted to more than half of BCI's total assets under management at that time and even though Roberto Cortes and Juan Cortes were designated as his supervisors at BCI. They also knew that Chatburn had a significant portion of clients' assets invested in Proprietary Products during the Relevant Period. Nonetheless, they did not review or otherwise direct that a review be conducted of Chatburn's BCI accounts to ensure that no Proprietary Products were being sold through BCI.

### G. Chatburn Willfully Aided and Abetted and Caused BCI's Failure to Disclose Conflicts of Interest and Material Information Under the Advisers Act Concerning South Bay by Failing to Conduct a Fundamental Analysis or Reasonable Due Diligence Concerning the Proprietary Products.

42.     Chatburn knew or was reckless in not knowing that BCI failed to disclose conflicts of interest and material information under the Advisers Act concerning South Bay's financial condition when recommending Proprietary Products to BCI's non-U.S. clients.

43.     Chatburn knowingly or recklessly failed to conduct a "fundamental analysis" or reasonable due diligence under the Advisers Act of the Proprietary Products before recommending them to BCI clients, in contravention of BCI's affirmative disclosures in its Form ADV. Part 2A of BCI's Form ADV dated March 2011, which was delivered to clients, stated that BCI's "Financial Advisors conduct fundamental analysis on all securities recommended for client accounts." In the case of stocks and bonds, BCI's Form ADV represented that the analysis generally included a review of the issuer's management, the amount and volatility of past profits or losses, the issuer's assets and liabilities, as well as any material changes from historical norms, prospects for the issuer's industry, as well as the issuer's competitive position within the industry, and any other factors considered relevant. Chatburn took no steps to review similar information relating to the Proprietary Products issuers.

44.     Aside from having knowledge of the coupon rate, the maturity term, and the fact that the Proprietary Products invested in some form in South Bay, Chatburn failed to conduct a "fundamental analysis" of essential features of those products, before recommending them to BCI clients. For example, even though the Proprietary Products notes issued to investors were unsecured debt obligations of the Proprietary Products issuers, Chatburn had an insufficient understanding that BCI's clients had credit risk with respect to the Proprietary Products issuers. Additionally, Chatburn had no understanding as to who owned and managed the Proprietary Products issuers, or the role of Spyglass, the investment adviser to several of the Proprietary Products issuers. Similarly, Chatburn had an insufficient understanding as to the nature of the investments that the Proprietary Products issuers made in South Bay, and did not understand or inquire about the meaning of basic terms in the offering memoranda describing such investments, such as "non-registered private mortgage-backed notes," which was the primary investment made by the Proprietary Products issuers in South Bay. Chatburn also had no understanding as to what rights or recourse, if any, the Proprietary Products issuers had against the underlying assets of South Bay in the event of default (*i.e.*, whether the Proprietary Products issuers had obtained collateral or whether other persons or entities had priority rights to the collateral over the Proprietary Products issuers). Instead, Chatburn relied on his personal relationship with Roberto

Cortes and Weisson, his personal belief that they would be successful in South Bay, and the fact that he visited and observed the South Bay construction sites.

45.     Further, Chatburn knowingly or recklessly ignored information available to him that should have caused him – in exercising his fiduciary duty of care under the Advisers Act as an investment adviser representative – to conduct heightened due diligence on the Proprietary Products that he recommended to BCI clients.  That information included, but is not limited to the following: (1) the Proprietary Products issuers were newly formed small private issuers with no operating history; (2) Spyglass, the investment adviser to several of the Proprietary Products issuers, also was a newly formed company at the time that Sentinel commenced, with no operating history; (3) the investment funds raised by these newly formed Proprietary Products issuers were to be invested in South Bay, a privately owned real estate business that Chatburn knew to be under common beneficial ownership and control with BCI; (4) several of the offering memoranda prior to June 2012 failed to mention South Bay, even though Chatburn knew that to be the primary, if not exclusive, investment being made by the Proprietary Products issuers; and (5) the Proprietary Product offering memoranda indicated that the issuers would not be audited.  Chatburn also had no understanding as to South Bay's underlying financial condition, its profitability, or its creditworthiness, and conducted no investigation or inquiry of South Bay's finances despite the severe real estate crisis in South Florida during the Relevant Period.  Notwithstanding those red flags, Chatburn failed to conduct any investigation relating to the Proprietary Products issuers before recommending Proprietary Products to BCI clients.

46.     In making his recommendations to BCI clients concerning the Proprietary Products, neither Chatburn nor BCI disclosed Chatburn's personal conflicts of interest arising from his beneficial ownership interest in BCI.  Chatburn knew that he had some beneficial ownership interest in BCI.  He also knew that South Bay invested in BCI and that the Proprietary Products that he recommended to non-U.S. BCI clients financed South Bay.  Further, Chatburn failed to disclose that he received additional compensation from one of the affiliated non-U.S. Biscayne Capital financial services entities beyond his share of the disclosed BCI investment management fees charged to BCI clients in connection with the recommendation of Proprietary Products to BCI clients.  Chatburn breached his fiduciary duty under the Advisers Act to those clients in failing to disclose information regarding his personal conflicts of interest.

**H.  Failure to Supervise Frank Chatburn.**

47.     As a result of the conduct described above, BCI, Roberto Cortes, and Juan Cortes failed reasonably to supervise, with a view to preventing violations of the Advisers Act, the activities of Frank Chatburn during the Relevant Period.  Both Roberto Cortes, in his capacity as CEO, and Juan Cortes, in his capacity as CCO, were designated by BCI as supervisors of Frank Chatburn.

48.     Between August 2010 and March 2012, Chatburn recommended and sold approximately $3.49 million in Proprietary Products to approximately 29 non-U.S. BCI client accounts.  As previously discussed, BCI established no procedures relating to the sale of Proprietary Products through BCI and had no system for applying such procedures that would reasonably be expected to prevent and detect, insofar as practicable, violations relating to the sale

of Proprietary Products.  With respect to Form ADV representations concerning the monitoring and review of BCI accounts, neither Roberto Cortes nor Juan Cortes took adequate steps to conduct such monitoring and reviews with a view to preventing violations of the securities laws.

**I.  BCI Failed to Adopt and Implement Written Policies and Procedures Reasonably Designed to Prevent Violations of the Investment Advisers Act.**

49.    BCI failed to adopt and implement written policies and procedures reasonably designed to prevent violations of the Investment Advisers Act.

50.    Juan Cortes was responsible for developing a compliance program for BCI and operated as its Chief Compliance Officer until late 2011.  However, he had no specific training as a compliance officer.  BCI's compliance manual provided that the Chief Compliance Officer was responsible for the successful implementation of the policies and procedures contained in the manual as well as for training employees on compliances issues, ensuring that employees with specific compliance responsibilities competently performed their jobs, and ensuring the timely review of compliance issues.  The Compliance Manual further provided that the Chief Compliance Officer was responsible for ensuring that BCI's compliance program remained "robust, comprehensive, and current, and reasonably designed to identify conflicts of interest and other areas that may expose [BCI] to increased regulatory and compliance risk."  Nonetheless, Juan Cortes failed to adopt and implement written policies and procedures reasonably designed to prevent violations of the Advisers Act and the rules thereunder, especially surrounding the sale of products in which BCI or its principals had a financial interest.

51.    Further, BCI's compliance manual – purchased off-the-shelf from a third party – was not reasonably tailored to BCI's business practices until 2012 and BCI did not have any written policies and procedures regarding the recommendation of Proprietary Products through BCI.

**J.  BCI Made Material Misstatements in Form ADV.**

52.    BCI made material misstatements in Form ADV during the Relevant Period. Roberto Cortes signed BCI's Form ADV filings.  Juan Cortes was primarily responsible for preparing BCI's Form ADV filings and provided factual information as requested to a third party consultant for the purpose of completing BCI's Form ADV filings.

53.    For example, BCI misrepresented in Item 8 of Part 1A of Form ADV as filed with the Commission on July 21, 2011 that neither BCI nor any "any *related person* … recommends securities (or other investment products) in which [BCI] or any *related person* has some proprietary (ownership) interest …."[11]  Chatburn had recommended securities issued by the Proprietary Products issuers, which were beneficially owned by the other BCI principals, to BCI clients prior to July 21, 2011 and continued to recommend them after that date.

---

[11] The instructions to Form ADV define related person as any advisory affiliate and any person that is under common control with the firm.  Advisory affiliates are defined as (1) all of the adviser's officers, partners, or directors or any persons performing similar functions; (2) all persons directly or indirectly controlling or controlled by the adviser; and (3) all of the adviser's current employees.

54.     BCI misrepresented that it had $150 million in AUM in its March 2011 Form ADV Part 2A based on sub-advisory agreements with certain of the affiliated non-U.S. Biscayne Capital financial services entities and in its July 21, 2011 Form ADV even though BCI never actually provided such services.

55.     BCI also misrepresented the assets managed by Frank Chatburn in prior jobs in Part 2B of Form ADV.  Form ADV represented that Chatburn managed "a $200 million book of business" at Wachovia.  In reality, Chatburn only managed approximately $50-60 million at Wachovia and never reviewed his biographical information in Form ADV.

56.     BCI misrepresented in Part 2A of Form ADV that BCI's investment adviser representatives "conduct fundamental analysis on all securities recommended for client accounts." Chatburn did not conduct a fundamental analysis of the Proprietary Products or the Proprietary Products issuers.  Rather, he visited South Bay's development sites and trusted that South Bay would be successful based on his relationship with Roberto Cortes and Weisson.

57.     BCI misrepresented that "[a]ccounts under Biscayne Capital's management are monitored on an ongoing basis by the Management members and the Compliance Department" when in reality BCI did not have a functioning compliance department and did not adequately monitor BCI's accounts on an ongoing basis.

58.     BCI misrepresented that Roberto Cortes was the Chief Compliance Officer in the Form ADV from 2008 until July 2011, when in fact Juan Cortes was the Chief Compliance Officer.

## **Violations**

59.     As a result of the conduct described above, BCI willfully violated Sections 206(1) and 206(2) of the Advisers Act, which make it unlawful for any investment adviser, directly or indirectly, to (1) "employ any device, scheme, or artifice to defraud any client or prospective client" or (2) "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client."  Also as a result of the conduct described above, Frank R. Chatburn willfully aided and abetted and caused BCI's violations of Sections 206(1) and 206(2) of the Advisers Act.  Roberto G. Cortes, Ernesto H. Weisson, and Juan Carlos Cortes willfully aided and abetted and caused BCI's violations of Section 206(2) of the Advisers Act.

60.     As a result of the conduct described above, BCI willfully violated, and Roberto G. Cortes and Juan Carlos Cortes willfully aided and abetted and caused BCI's violations of, Section 207 of the Advisers Act, which makes it "unlawful for any person willfully to make any untrue statement of a material fact in any registration application or report filed with the Commission … or willfully to omit to state in any such application or report any material fact which is required to be stated therein."

61.     As a result of the conduct described above, BCI willfully violated, and Juan Carlos Cortes willfully aided and abetted and caused BCI's violations of, Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder, which require investment advisers to, among other things, adopt

and implement written policies and procedures reasonably designed to prevent violation of the Advisers Act and its rules.

62.     As a result of the conduct described above, BCI, Roberto G. Cortes, and Juan Carlos Cortes failed reasonably to supervise Chatburn, with a view to preventing violations of the federal securities laws, while Chatburn was subject to their supervision, within the meaning of Section 203(e)(6) of the Advisers Act.

**IV.**

In view of the foregoing, the Commission deems it appropriate and in the public interest to impose the sanctions agreed to in Respondents' Offers.

Accordingly, pursuant to Sections 203(e), 203(f) and 203(k) of the Advisers Act, and Section 9(b) of the Investment Company Act, it is hereby ORDERED that:

A.     Respondent BCI cease and desist from committing or causing any violations and any future violations of Sections 206(1), 206(2), 206(4) and 207 of the Advisers Act and Rule 206(4)-7 promulgated thereunder.

B.     Respondent BCI is censured.

C.     Respondent Frank R. Chatburn cease and desist from committing or causing any violations and any future violations of Sections 206(1) and 206(2) of the Advisers Act.

D.     Respondent Frank R. Chatburn be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and

> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter,

with the right to apply for reentry after four (4) years to the appropriate self-regulatory organization, or if there is none, to the Commission.

E.     Respondent Roberto G. Cortes cease and desist from committing or causing any violations and any future violations of Sections 206(2), and 207 of the Advisers Act.

F.     Respondent Roberto G. Cortes be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and
>
> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter,

with the right to apply for reentry after three (3) years to the appropriate self-regulatory organization, or if there is none, to the Commission.

G.    Respondent Juan Carlos Cortes cease and desist from committing or causing any violations and any future violations of Sections 206(2), 206(4) and 207 of the Advisers Act and Rule 206(4)-7 promulgated thereunder.

H.    Respondent Juan Carlos Cortes be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and
>
> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter,

with the right to apply for reentry after three (3) years to the appropriate self-regulatory organization, or if there is none, to the Commission

I.    Respondent Ernesto H. Weisson cease and desist from committing or causing any violations and any future violations of Section 206(2) of the Advisers Act.

J.    Respondent Ernesto H. Weisson be, and hereby is:

> barred from association with any broker, dealer, investment adviser, municipal securities dealer, municipal advisor, transfer agent, or nationally recognized statistical rating organization; and
>
> prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter,

with the right to apply for reentry after three (3) years to the appropriate self-regulatory organization, or if there is none, to the Commission.

K.      Any reapplication for association by Respondents Frank R. Chatburn, Roberto G. Cortes, Juan Carlos Cortes, and Ernesto H. Weisson will be subject to the applicable laws and regulations governing the reentry process, and reentry may be conditioned upon a number of factors, including, but not limited to, the satisfaction of any or all of the following:  (a) any disgorgement ordered against the Respondent, whether or not the Commission has fully or partially waived payment of such disgorgement; (b) any arbitration award related to the conduct that served as the basis for the Commission order; (c) any self-regulatory organization arbitration award to a customer, whether or not related to the conduct that served as the basis for the Commission order; and (d) any restitution order by a self-regulatory organization, whether or not related to the conduct that served as the basis for the Commission order.

L.      Respondent BCI shall, within ten (10) days of the entry of this Order, pay disgorgement of $30,024 and prejudgment interest of $3,063 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

M.      Respondent Frank R. Chatburn shall, within ten (10) days of the entry of this Order, pay disgorgement of $78,924 and prejudgment interest of $8,052 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  If timely payment is not made, additional interest shall accrue pursuant to SEC Rule of Practice 600.

N.      Respondent BCI shall, within ten (10) days of the entry of this Order, pay a civil money penalty in the amount of $125,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

O.      Respondent Frank R. Chatburn shall, within ten (10) days of the entry of this Order, pay a civil money penalty in the amount of $100,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

P.      Respondents Roberto G. Cortes, Juan Carlos Cortes, and Ernesto H. Weisson shall each, within ten (10) days of the entry of this Order, pay a civil money penalty in the amount of $50,000 to the Securities and Exchange Commission for transfer to the general fund of the United States Treasury, subject to Exchange Act Section 21F(g)(3).  If timely payment is not made, additional interest shall accrue pursuant to 31 U.S.C. § 3717.

Q.      Payment must be made in one of the following ways:

(1)      Respondents may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request;

(2)    Respondents may make direct payment from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm; or

(3)    Respondents may pay by certified check, bank cashier's check, or United States postal money order, made payable to the Securities and Exchange Commission and hand-delivered or mailed to:

Enterprise Services Center
Accounts Receivable Branch
HQ Bldg., Room 181, AMZ-341
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

Payments by check or money order must be accompanied by a cover letter identifying BCI, Roberto G. Cortes, Juan Carlos Cortes, Ernesto H. Weisson, or Frank R. Chatburn as a Respondent in these proceedings, and the file number of these proceedings; a copy of the cover letter and check or money order must be sent to Michael J. Osnato, Chief, Complex Financial Instrument Unit, Division of Enforcement, Securities and Exchange Commission, 200 Vesey Street, Suite 4000, New York, New York 10281.

R.    Amounts ordered to be paid as civil money penalties pursuant to this Order shall be treated as penalties paid to the government for all purposes, including all tax purposes.  To preserve the deterrent effect of the civil penalty, Respondents BCI, Frank R. Chatburn, Roberto G. Cortes, Juan C. Cortes and Ernesto H. Weisson agree that in any Related Investor Action, they shall not argue that they are entitled to, nor shall they benefit by, offset or reduction of any award of compensatory damages by the amount of any part of their payment of a civil penalty in this action ("Penalty Offset").  If the court in any Related Investor Action grants such a Penalty Offset, Respondents BCI, Frank R. Chatburn, Roberto G. Cortes, Juan C. Cortes and Ernesto H. Weisson agree that they shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the Securities and Exchange Commission.  Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this proceeding.  For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Respondents by or on behalf of one or more investors based on substantially the same facts as alleged in the Order instituted by the Commission in this proceeding.

V.

It is further Ordered that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, the findings in this Order are true and admitted by Respondent, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Respondent under this Order or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Respondent of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. §523(a)(19).

By the Commission.

Brent J. Fields
Secretary

# EXHIBIT D-1

# [SELECT CAYMAN ISLANDS STATUTES]

# CAYMAN ISLANDS



Supplement No.6 published with Extraordinary Gazette No.22 of 16th March, 2018.

## COMPANIES LAW

### (2018 Revision)

Cap. 22 (Law 3 of 1961) of the 1963 Revised Edition of the Laws consolidated with Laws 12 of 1962, 9 of 1966, 1 of 1971, 7 of 1973, 24 of 1974, 25 of 1975, 19 of 1977, 16 of 1978, 6 of 1980, 21 of 1981, 34 of 1983, 2 of 1984, 22 of 1984, 15 of 1985, 38 of 1985, 24 of 1987, 14 of 1988, 14 of 1989, 10 of 1990, 3 of 1991, 23 of 1991 (part), 11 of 1992, 3 of 1993, 23 of 1993, 33 of 1993, 2 of 1994, 8 of 1994, 14 of 1996, 26 of 1997, 4 of 1998, 6 of 1998, 20 of 1998 (part), 5 of 1999, 7 of 2000 (part), 5 of 2001, 10 of 2001, 29 of 2001, 46 of 2001, 22 of 2002, 26 of 2002, 28 of 2003, 13 of 2006, 15 of 2007, 12 of 2009, 33 of 2009, 37 of 2010, 16 of 2011, 29 of 2011, 6 of 2012, 14 of 2012, 29 of 2012, 1 of 2013, 6 of 2013, 14 of 2015, 3 of 2016, 2 of 2017, 42 of 2017 and the Companies (Amendment of Schedule) Order, 2011.

*Companies Law (2018 Revision)*

consideration so received shall be held by that company on trust for the several persons entitled to the shares in respect of which the said sum or other consideration were respectively received.

(4)    In this section-

"dissenting shareholder" includes a shareholder who has not assented to the scheme or contract and any shareholder who has failed or refused to transfer his shares to the transferee company, in accordance with the scheme or contract.

## PART V - Winding up of Companies and Associations

### Preliminary

89.    In this Part-                                                              Definitions

"company" includes a foreign company in respect of which the Court has made a winding up order;

"contributory" means -

    (a)    every person liable by virtue of section 49 to contribute to the assets of a company in the event that it is wound up under this Law; and

    (b)    every holder of fully paid up shares of a company;

"controller" means a person appointed by the Authority pursuant to the regulatory laws to take control of a company;

"document" includes any device by means of which information is recorded or stored;

"foreign company" means any body corporate incorporated outside the Islands;

"foreign practitioner" means a person who is qualified under the law of a foreign country to perform functions equivalent to those performed by official liquidators under this Law or by trustees in bankruptcy under the Bankruptcy Law (1997 Revision);                                    *1997 Revision*

"limited partnership" means an ordinary limited partnership registered in accordance with section 49 of the Partnership Law (2013 Revision) or an    *2013 Revision* exempted limited partnership registered in accordance with section 9 of the    *2018 Revision* Exempted Limited Partnership Law (2018 Revision);

"official liquidator" means the liquidator of a company which is being wound up by order of the Court or under the supervision of the Court and includes a provisional liquidator;

"prescribed" means prescribed by the Insolvency Rules Committee;

63

"professional service provider" means a person who contracts to provide general managerial or administrative services to a company on an annual or continuing basis;

"qualified insolvency practitioner" means a person holding the qualifications specified in the regulations made by the Insolvency Rules Committee under section 155 or such other qualifications as the Court considers appropriate for the conduct of the winding up of a company;

"Rules" mean rules prescribed by the Insolvency Rules Committee;

"shadow director" means, in relation to a company, any person in accordance with whose directions or instructions the directors of the company are accustomed to act, but the person is not deemed to be a shadow director by reason only that the directors act on advice given by him in a professional capacity; and

"winding up order" includes an order that a voluntary winding up continue under the supervision of the Court and references to a company being wound up by the Court includes a company which is being wound up under the supervision of the Court.

Alternative modes of winding up

90. A company may be wound up-

   (a)   compulsorily by order of the Court;

   (b)   voluntarily-

       (i)   by virtue of a special resolution;

       (ii)   because the period, if any, fixed for the duration of the company by its articles of association has expired; or

       (iii)   because the event, if any, has occurred, on the occurrence of which its articles of association provide that the company shall be wound up; or

   (c)   under the supervision of the Court.

Jurisdiction of the Court

91. The Court has jurisdiction to make winding up orders in respect of-

   (a)   an existing company;

   (b)   a company incorporated and registered under this Law;

   (c)   a body incorporated under any other law; and

   (d)   a foreign company which-

       (i)   has property located in the Islands;

       (ii)   is carrying on business in the Islands;

       (iii)   is the general partner of a limited partnership; or

       (iv)   is registered under Part IX.

*Companies Law (2018 Revision)*

### Winding up by the Court

92.   A company may be wound up by the Court if-

<div style="float:right">

Circumstances in which a company may be wound up by the Court

</div>

(a)   the company has passed a special resolution requiring the company to be wound up by the Court;

(b)   the company does not commence its business within a year from its incorporation, or suspends its business for a whole year;

(c)   the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up;

(d)   the company is unable to pay its debts; or

(e)   the Court is of opinion that it is just and equitable that the company should be wound up.

93.   A company shall be deemed to be unable to pay its debts if-

<div style="float:right">

Definition of inability to pay debts

</div>

(a)   a creditor by assignment or otherwise to whom the company is indebted at law or in equity in a sum exceeding one hundred dollars then due, has served on the company by leaving at its registered office a demand under his hand requiring the company to pay the sum so due, and the company has for the space of three weeks succeeding the service of such demand, neglected to pay such sum, or to secure or compound for the same to the satisfaction of the creditor;

(b)   execution of other process issued on a judgment, decree or order obtained in the Court in favour of any creditor at law or in equity in any proceedings instituted by such creditor against the company, is returned unsatisfied in whole or in part; or

(c)   it is proved to the satisfaction of the Court that the company is unable to pay its debts.

94.   (1)   An application to the Court for the winding up of a company shall be by petition presented either by-

<div style="float:right">

Application for winding up

</div>

(a)   the company;

(b)   any creditor or creditors (including any contingent or prospective creditor or creditors);

(c)   any contributory or contributories; or

(d)   subject to subsection (4), the Authority pursuant to the regulatory laws.

(2)   Where expressly provided for in the articles of association of a company the directors of a company incorporated after the commencement of this Law have the authority to present a winding up petition on its behalf without the sanction of a resolution passed at a general meeting.

*Companies Law (2018 Revision)*

(3)   A contributory is not entitled to present a winding up petition unless either-

    (a)   the shares in respect of which he is a contributory, or some of them, are partly paid; or

    (b)   the shares in respect of which he is a contributory, or some of them, either were-

      (i)   originally allotted to him, or have been held by him, and registered in his name for a period of at least six months immediately preceding the presentation of the winding up petition; or

     (ii)   have devolved on him through the death of a former holder.

(4)   A winding up petition may be presented by the Authority in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law.

*Powers of the Court*   95.   (1)   Upon hearing the winding up petition the Court may-

    (a)   dismiss the petition;

    (b)   adjourn the hearing conditionally or unconditionally;

    (c)   make a provisional order; or

    (d)   any other order that it thinks fit,

but the Court shall not refuse to make a winding up order on the ground only that the company's assets have been mortgaged or charged to an amount equal to or in excess of those assets or that the company has no assets.

(2)   The Court shall dismiss a winding up petition or adjourn the hearing of a winding up petition on the ground that the petitioner is contractually bound not to present a petition against the company.

(3)   If the petition is presented by members of the company as contributories on the ground that it is just and equitable that the company should be wound up, the Court shall have jurisdiction to make the following orders, as an alternative to a winding-up order, namely-

    (a)   an order regulating the conduct of the company's affairs in the future;

    (b)   an order requiring the company to refrain from doing or continuing an act complained of by the petitioner or to do an act which the petitioner has complained it has omitted to do;

    (c)   an order authorising civil proceedings to be brought in the name and on behalf of the company by the petitioner on such terms as the Court may direct; or

    (d)   an order providing for the purchase of the shares of any members of the company by other members or by the company itself and,

*Companies Law (2018 Revision)*

in the case of a purchase by the company itself, a reduction of the company's capital accordingly.

(4)   Where an alternative order under subsection (3) requires the company not to make any, or any specified, alteration in the memorandum or articles of association, the company does not have power, without the leave of the Court, to make any such alteration in breach of that requirement.

(5)   Any alteration in a company's memorandum or articles of association made by virtue of an alternative order under subsection (3) is of the same effect as if duly made by resolution of the company, and the provisions of this Law shall apply to the memorandum or articles of association as so altered accordingly.

(6)   A copy of an alternative order made under subsection (3) altering, or giving leave to alter, a company's memorandum or articles of association shall be filed by the company with the Registrar within fourteen days of the making of the order.

96.   At any time after the presentation of a winding up petition and before a winding up order has been made, the company or any creditor or contributory may-

*Power to stay or restrain proceedings*

(a)   where any action or proceeding against the company, including a criminal proceeding, is pending in a summary court, the Court, the Court of Appeal or the Privy Council, apply to the court in which the action or proceeding is pending for a stay of proceedings therein; and

(b)   where any action or proceeding is pending against the company in a foreign court, apply to the Court for an injunction to restrain further proceedings therein,

and the court to which application is made may, as the case may be, stay or restrain the proceedings accordingly on such terms as it thinks fit.

97.   (1)   When a winding up order is made or a provisional liquidator is appointed, no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with the leave of the Court and subject to such terms as the Court may impose.

*Avoidance of attachments and stay of proceedings*

(2)   When a winding up order has been made, any attachment, distress or execution put in force against the estate or effects of the company after the commencement of the winding up is void.

98.   When a winding up order is made, the liquidator shall-

*Notice of winding up order*

(a)   file a copy of the winding up order with the Registrar; and

(b)   publish notice of the winding up in the Gazette and any newspaper in which the winding up petition was advertised.

*Companies Law (2018 Revision)*

Avoidance of property dispositions, etc.

99.   When a winding up order has been made, any disposition of the company's property and any transfer of shares or alteration in the status of the company's members made after the commencement of the winding up is, unless the Court otherwise orders, void.

Commencement of winding up by the Court

100. (1)   If, before the presentation of a petition for the winding up of a company by the Court-

    (a)   a resolution has been passed by the company for voluntary winding up;

    (b)   the period, if any, fixed for the duration of the company by the articles of association has expired; or

    (c)   the event upon the occurrence of which it is provided by the articles of association that the company is to be wound up has occurred,

the winding up of the company is deemed to have commenced at the time of passing of the resolution or the expiry of the relevant period or the occurrence of the relevant event.

    (2)   In any other circumstance not specified in subsection (1), the winding up of a company by the Court is deemed to commence at the time of the presentation of the petition for winding up.

Company's statement of affairs

101. (1)   Where the Court has made a winding up order or appointed a provisional liquidator, the liquidator may require some or all of the persons mentioned in subsection (3) to prepare and submit to him a statement in the prescribed form as to the affairs of the company.

    (2)   The statement shall be verified by an affidavit sworn by the persons required to submit it and shall show-

    (a)   particulars of the company's assets and liabilities, including contingent and prospective liabilities;

    (b)   the names and addresses of any persons having possession of the company's assets;

    (c)   the assets of the company held by those persons;

    (d)   the names and addresses of the company's creditors;

    (e)   the securities held by those creditors;

    (f)   the dates when the securities were respectively given; and

    (g)   such further or other information that the liquidator may require.

    (3)   The persons referred to in subsection (1) are-

    (a)   persons who are or have been directors or officers of the company;

    (b)   persons who are or have been professional service providers to the company; and

    (c)   persons who are or have been employees of the company, during the period of one year immediately preceding the relevant date.

(4)   Where any persons are required under this section to submit a statement of affairs to the liquidator, they shall do so, subject to subsection (5), before the end of the period of twenty-one days beginning with the day after that on which the prescribed notice of the requirement is given to them by the liquidator.

(5)   The liquidator may release a person from an obligation imposed on him under subsection (1) or, when giving the notice mentioned in subsection (4) or subsequently, the liquidator may extend the time for compliance; and if the liquidator refuses to extend the time for compliance, the Court may do so.

(6)   In this section-

"relevant date" means-

    (a)   in a case where a provisional liquidator is appointed, the date of his appointment; and

    (b)   in any other case, the commencement of the winding up.

(7)   A person who, without reasonable excuse, fails to comply with any obligation imposed under this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

102. (1)   Where a winding up order is made by the Court, the liquidator shall be empowered to investigate-

    (a)   if the company has failed, the causes of the failure; and

    (b)   generally, the promotion, business, dealings and affairs of the company,

and to make such report, if any, to the Court as he thinks fit.

*Investigation by liquidator*

(2)   Subject to obtaining the directions of the Court, the liquidator shall have power to -

    (a)   assist the Authority and the Royal Cayman Islands Police Service to investigate the conduct of persons referred to in section 101(3); and

    (b)   institute and conduct a criminal prosecution of persons referred to in section 101(3).

(3)   Subject to obtaining the prior approval of the company's creditors, if it is insolvent, or its contributories, if it is solvent, the directions given under subsection (2) may include a direction that the whole or part of the costs of investigation and prosecution be paid out of the assets of the company.

103. (1)   This section applies to any person who, whether resident in the Islands or elsewhere-

*Duty to co-operate and the private examination of relevant persons*

69

*Companies Law (2018 Revision)*

(a) has made or concurred with the statement of affairs;

(b) is or has been a director or officer of the company;

(c) is or was a professional service provider to the company;

(d) has acted as a controller, advisor or liquidator of the company or receiver or manager of its property;

(e) not being a person falling within paragraphs (a) to (c), is or has been concerned or has taken part in the promotion, or management of the company,

and such person is referred to in this section as the "relevant person".

(2) It is the duty of every relevant person to co-operate with the official liquidator.

(3) While a company is being wound up, the official liquidator may at any time before its dissolution apply to the Court for an order-

(a) for the examination of any relevant person; or

(b) that a relevant person transfer or deliver up to the liquidator any property or documents belonging to the company.

(4) Unless the Court otherwise orders, the official liquidator shall make an application under subsection (3) if he is requested in accordance with the rules to do so by one-half, in value, of the company's creditors or contributories.

(5) On an application made under subsection (3) (a), the Court may order that a relevant person-

(a) swear an affidavit in answer to written interrogatories;

(b) attend for oral examination by the official liquidator at a specified time and place, or

(c) do both things specified in paragraphs (a) and (b).

(6) The Court may direct that any creditor or contributory of the company be permitted by the official liquidator to participate in an oral examination.

(7) The Court shall have jurisdiction-

(a) to make an order under this section against a relevant person resident outside the Islands; and

(b) to issue a letter of request for the purpose of seeking the assistance of a foreign court in obtaining the evidence of a relevant person resident outside the jurisdiction.

### Official Liquidators

Appointment and powers of provisional liquidator

104. (1) Subject to this section and any rules made under section 155, the Court may, at any time after the presentation of a winding up petition but before the making of a winding up order, appoint a liquidator provisionally.

70

(2)   An application for the appointment of a provisional liquidator may be made under subsection (1) by a creditor or contributory of the company or, subject to subsection (6), the Authority, on the grounds that-

    (a)   there is a *prima-facie* case for making a winding up order; and

    (b)   the appointment of a provisional liquidator is necessary in order to-

      (i)   prevent the dissipation or misuse of the company's assets;

      (ii)   prevent the oppression of minority shareholders; or

      (iii)   prevent mismanagement or misconduct on the part of the company's directors.

(3)   An application for the appointment of a provisional liquidator may be made under subsection (1) by the company *ex-parte* on the grounds that-

    (a)   the company is or is likely to become unable to pay its debts within the meaning of section 93; and

    (b)   the company intends to present a compromise or arrangement to its creditors.

(4)   A provisional liquidator shall carry out only such functions as the Court may confer on him and his powers may be limited by the order appointing him.

(5)   The remuneration of the provisional liquidator shall be fixed by the Court from time to time on his application and the Court shall in fixing such remuneration act in accordance with rules made under section 155.

(6)   An application for the appointment of a provisional liquidator may be presented by the Authority on the grounds under subsection (2), in respect of any company which is carrying on a regulated business in the Islands upon the grounds that it is not duly licensed or registered to do so under the regulatory laws or for any other reason as provided under the regulatory laws or any other law regardless of whether or not the Authority presented the winding up petition.

105. (1)   For the purpose of conducting the proceedings in winding up a company and assisting the Court therein, there may be appointed one or more than one person to be called an official liquidator or official liquidators; and the Court may appoint to such office such person as it thinks fit, and if more persons than one are appointed to such office, the Court shall declare whether any act hereby required or authorised to be done by the official liquidator is to be done by all or any or more of such persons.

*Appointment of official liquidator*

(2)   The Court may also determine whether any and what security is to be given by an official liquidator on his appointment; and if no official liquidator is appointed, or during any vacancy in such office, all the property of the company shall be in the custody of the Court.

(3)  The liquidator shall, within twenty-eight days of the date upon which the winding up order is made, summon-

(a)  a meeting of the company's creditors if the order was made on the grounds that the company is insolvent; or

(b)  a meeting of the company's contributories if the order was made on grounds other than insolvency,

for the purposes of resolving any other matters which the liquidator puts before the meeting.

(4)  The Court may make an order dispensing with the need to summon a meeting under this section or extending the time within which it shall be summoned.

Appointment of joint liquidators

106. When two or more persons are appointed to the office of liquidator, either provisionally or as official liquidators, they shall be authorised to act jointly and severally, unless their powers are expressly limited by order of the Court.

Removal of official liquidators

107. An official liquidator may be removed from office by order of the Court made on the application of a creditor or contributory of the company.

Qualifications of official liquidators

108. (1)  A foreign practitioner may be appointed to act jointly with a qualified insolvency practitioner.

(2)  Official liquidators are officers of the Court.

Remuneration of official liquidators

109. (1)  The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

(2)  There shall be paid to the official liquidator such remuneration, by way of percentage or otherwise, that the Court may direct acting in accordance with rules made under section 155; and if more liquidators than one are appointed such remuneration shall be distributed amongst them in such proportions as the Court directs.

Function and powers of official liquidators

110. (1)  It is the function of an official liquidator-

(a)  to collect, realise and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it; and

(b)  to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up.

(2)  The official liquidator may-

Schedule 3

(a)  with the sanction of the Court, exercise any of the powers specified in Part I of Schedule 3; and

Schedule 3

(b)  with or without that sanction, exercise any of the general powers specified in Part II of Schedule 3.

(3)   The exercise by the liquidator of the powers conferred by this section is subject to the control of the Court, and subject to subsection (5), any creditor or contributory may apply to the Court with respect to the exercise or proposed exercise of such powers (hereinafter referred to as a "sanction application").

(4)   In the case of -

   (a)   a solvent company, a sanction application may only be made by a contributory and the creditors shall have no right to be heard;

   (b)   an insolvent company, a sanction application may only be made by a creditor and the contributories shall have no right to be heard; and

   (c)   a company whose solvency is doubtful, a sanction application may be made by both contributories and creditors and both contributories and creditors shall have a right to be heard.

(5)   For the purposes of this section, a person shall be treated as a related to a company if -

   (a)   he has acted for the company as a professional service provider;

   (b)   he is or was a shareholder or director of the company or of any other company in the same group as the company;

   (c)   he has a direct or indirect beneficial interest in the shares of the company; or

   (d)   he is a creditor or debtor of the company.

### General Powers of the Court

111. (1)   The Court may at any time after an order for winding up, on the application either of the liquidator or any creditor or contributory, and on proof to the satisfaction of the Court that all proceedings in the winding up ought to be stayed, make an order staying the proceedings either all together or for a limited time, on such terms and conditions as the Court thinks fit.

*Power to stay winding up*

(2)   The Court may at any time after the liquidation has commenced under section 116 (c), but before the final meeting has been held as provided for in section 127, on the application of the liquidator accompanied by-

   (a)   a special resolution stating that the company will not be wound up and setting out the reasons for such decision;

   (b)   proof of a recall notice published in the Gazette; and

   (c)   such other documents as the Court may consider necessary,

make an order to recall the liquidation, place the company into active status and place the company back into good standing as it was prior to the commencement of liquidation under section 116(c), on such terms and conditions as the Court thinks fit.

(3)   A company shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in the records relating to the company.

**Settlement of list of contributories**

112. (1)   The liquidator shall settle a list of contributories, if any, for which purpose he shall have power to adjust the rights of contributories amongst themselves.

(2)   In the case of a solvent liquidation of a company which has issued redeemable shares at prices based upon its net asset value from time to time, the liquidator shall have power to settle and, if necessary rectify the company's register of members, thereby adjusting the rights of members amongst themselves.

(3)   A contributory who is dissatisfied with the liquidator's determination may appeal to the Court against such determination.

**Power to make calls**

113. (1)   The Court may, at any time after making a winding up order, and either before or after it has ascertained the sufficiency of the company's assets, make calls on all or any of the contributories for the time being settled on the list of the contributories-

(a)   to the extent of their liability, for the payment of any money which the Court considers necessary to satisfy the company's debts and liabilities and the expenses of winding up; and

(b)   to the adjustment of the rights of the contributories among themselves,

and make an order for payment of any call so made.

(2)   In making a call the Court may take into consideration the probability that some of the contributories may partly or wholly fail to pay it.

**Inspection of documents by creditors, etc.**

114. (1)   At any time after making a winding up order the Court may make such orders as it thinks fit for-

(a)   the inspection of the company's documents by creditors and contributories; and

(b)   the preparation of reports by the official liquidator and the provision of such reports to the company's creditors and contributories.

(2)   A contributory shall be entitled to make an application under this section notwithstanding that the company is or may be insolvent and the Court shall not refuse to make an order upon the application of a contributory merely by reason of the fact that the company is or may be insolvent.

**Meetings to ascertain wishes of creditors or contributories**

115. (1)   The Court shall, as to all matters relating to the winding up, have regard to wishes of the creditors or contributories and for that purpose it may

74

direct reports to be prepared by the official liquidator and meetings of creditors or contributories to be summoned.

(2)   If it considers it necessary to do so, the Court may direct that separate meetings be held of different classes of creditors or contributories.

(3)   Subject to Rules made under section 155, meetings may be requisitioned by creditors, if the company is insolvent, or by contributories if the company is solvent.

(4)   The votes of creditors and contributories shall be counted by reference to -

    (a)   the value of their debts, in the case of creditors;

    (b)   the number of votes, in the case of contributories whose shares carry voting rights under the articles of association of the company; and

    (c)   the par value of all the shares held, in the case of contributories whose shares do not carry votes under the articles of association of the company and, where there are no par value shares, the net asset value of the company shown.

## Voluntary Winding up

116. A company incorporated and registered under this Law or an existing company may be wound up voluntarily-

    (a)   when the period, if any, fixed for the duration of the company by its memorandum or articles of association expires;

    (b)   if the event, if any, occurs, on the occurrence of which the memorandum or articles of association provide that the company is to be wound up;

    (c)   if the company resolves by special resolution that it be wound up voluntarily; or

    (d)   if the company in general meeting resolves by ordinary resolution that it be wound up voluntarily because it is unable to pay its debts as they fall due.

*Circumstances in which a company may be wound up voluntarily*

117. (1)   A voluntary winding up is deemed to commence-

    (a)   at the time of the passing of the resolution for winding up; or

    (b)   on the expiry of the period or the occurrence of the event specified in the company's memorandum or articles of association,

*Commencement of winding up*

notwithstanding that a supervision order is subsequently made by the Court.

(2)   Subject to any contrary provision in its memorandum or articles of association, the voluntary winding up of an exempted limited duration company is taken to have commenced upon the expiry of a period of ninety days starting on-

    (a)   the death, insanity, bankruptcy, dissolution, withdrawal, retirement or resignation of a member of the company;

    (b)   the redemption, repurchase or cancellation of all the shares of a member of the company; or

    (c)   the occurrence of any event which, under the memorandum or articles of association of the company, terminates the membership of a member of the company,

unless there remain at least two members of the company and the company is continued in existence by the unanimous resolution of the remaining members pursuant to amended memorandum and articles of association adopted during that period of ninety days.

**Effect on business and status of the company**

118. (1)   In the case of a voluntary winding up, the company shall from the commencement of its winding up cease to carry on its business except so far as it may be beneficial for its winding up.

(2)   Notwithstanding anything to the contrary contained in the company's articles of association, its corporate state and powers shall continue until the company is dissolved.

**Appointment of voluntary liquidator**

119. (1)   One or more liquidators shall be appointed for the purpose of winding up the company's affairs and distributing its assets.

(2)   When the winding up has commenced in accordance with the company's memorandum or articles of association upon the termination of a fixed period or the occurrence of an event-

    (a)   the persons designated as liquidators in the memorandum or articles of association shall become such liquidators automatically from the commencement of the winding up; or

    (b)   if no such person is designated in the memorandum or articles of association or the person designated is unable or unwilling to act, the directors shall convene a general meeting of the company for the purpose of appointing a liquidator.

(3)   Except in the case of a person designated as liquidator in the company's memorandum or articles of association, the appointment of a voluntary liquidator shall take effect upon the filing of his consent to act with the Registrar.

(4)   If a vacancy occurs by death, resignation or otherwise in the office of voluntary liquidator appointed by the company-

    (a)   the company in a general meeting may fill the vacancy; or

(b)   the Court may fill the vacancy on the application of any contributory or creditor.

(5)   On the appointment of a voluntary liquidator all the powers of the directors cease, except so far as the company in a general meeting or the liquidator sanctions their continuance.

(6)   When two or more persons are appointed as voluntary liquidators jointly, they shall be authorised to act jointly and severally unless their powers are expressly limited by the resolution or articles of association under which they are appointed.

120. Any person, including a director or officer of the company, may be appointed as its voluntary liquidator.

*Qualifications of voluntary liquidators*

121. (1)   A voluntary liquidator may be removed from office by a resolution of the company in a general meeting convened especially for that purpose.

*Removal of voluntary liquidators*

(2)   A general meeting of the company for the purpose of considering a resolution to remove its voluntary liquidator may be convened by any shareholder or shareholders holding not less than one fifth of the company's issued share capital.

(3)   Whether or not a general meeting has been convened in accordance with subsection (2), any contributory may apply to the Court for an order that a voluntary liquidator be removed from office on the grounds that he is not a fit and proper person to hold office.

122. (1)   Where two or more persons are appointed as joint voluntary liquidators, they may resign by filing a notice of resignation with the Registrar, so long as at least one of them continues in office.

*Resignation of voluntary liquidator*

(2)   Except as provided in subsection (1), a voluntary liquidator wishing to resign shall-

(a)   prepare a report and accounts; and
(b)   convene a general meeting of the company for the purpose of accepting his resignation and releasing him from the performance of any further duties, and shall cease to hold office with effect from the date upon which the resolution is passed.

(3)   In the event that the company fails to pass a resolution accepting his resignation, the voluntary liquidator may apply to the Court for an order that he be released from the performance of any further duties.

123. (1)   Within twenty-eight days of the commencement of a voluntary winding up, the liquidator or, in the absence of any liquidator, the directors shall-

*Notice of voluntary winding up*

(a)   file notice of the winding up with the Registrar;
(b)   file the liquidator's consent to act with the Registrar;

77

*Companies Law (2018 Revision)*

    (c)    file the director's declaration of solvency with the Registrar (if the supervision of the court is not sought);

    (d)    in the case of a company carrying on a regulated business, serve notice of the winding up upon the Monetary Authority; and

    (e)    publish notice of the winding up in the Gazette.

    (2)   A director or liquidator who fails to comply with this section commits an offence and is liable to a fine of ten thousand dollars.

Application for supervision order

124. (1)   Where a company is being wound up voluntarily its liquidator shall apply to the Court for an order that the liquidation continue under the supervision of the Court unless, within twenty-eight days of the commencement of the liquidation, the directors have signed a declaration of solvency in the prescribed form in accordance with subsection (2).

    (2)   A declaration of solvency means a declaration or affidavit in the prescribed form to the effect that a full enquiry into the company's affairs has been made and that to the best of the directors' knowledge and belief the company will be able to pay its debts in full together with interest at the prescribed rate, within such period, not exceeding twelve months from the commencement of the winding up, as may be specified in the declaration.

    (3)   A person who knowingly makes a declaration under this section without having reasonable grounds for the opinion that the company will be able to pay its debts in full, together with interest at the prescribed rate, within the period specified commits an offence and is liable on summary conviction to a fine of ten thousand dollars and to imprisonment for two years.

Avoidance of share transfers

125. Any transfer of shares, not being a transfer with the sanction of the liquidator, and any alteration in the status of the company's members made after the commencement of a voluntary winding up is void.

General meeting at year's end

126. (1)   In the event of a voluntary winding up continuing for more than one year, the liquidators shall summon a general meeting of the company at the end of the first year from the commencement of the winding up and at the end of each succeeding year and such meetings shall be held within three months of each anniversary of the commencement of the liquidation.

    (2)   At each meeting the liquidator shall lay before the meeting a report and account of his acts and dealings and the conduct of the winding up during the preceding year.

    (3)   A liquidator who fails to comply with this section commits an offence and is liable on conviction to a fine of ten thousand dollars.

Final meeting prior to dissolution

127. (1)   As soon as the company's affairs are fully wound up, the liquidator shall make a report and an account of the winding up showing how it has been conducted and how the company's property has been disposed of and thereupon

*Companies Law (2018 Revision)*

shall call a general meeting of the company for the purpose of laying before it the account and giving an explanation for it.

(2)    At least twenty-one days before the meeting the liquidator shall send a notice specifying the time, place and object of the meeting to each contributory in any manner authorised by the company's articles of association and published in the Gazette.

(3)    The liquidator shall, no later than seven days after the meeting, make a return to the Registrar in the prescribed form specifying-

    (a)    the date upon which the meeting was held; and

    (b)    if a quorum was present, particulars of the resolutions, if any, passed at the meeting.

(4)    A liquidator who fails to call a general meeting of the company as required by subsection (1) or fails to make a return as required by subsection (3) commits an offence and is liable on conviction to a fine of ten thousand dollars.

128. Where a company limited by guarantee and having a capital divided into shares is being wound up voluntarily, any share capital that may not have been called upon shall be deemed to be an asset of the company, and to be a speciality debt due from each member to the company to the extent of any sums that may be unpaid on any shares held by him, and payable at such time as may be appointed by the liquidator.

*Effect of winding up on share capital of company limited by guarantee*

129. (1)    The voluntary liquidator or any contributory may apply to the Court to determine any question arising in the voluntary winding up of a company or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the Court might exercise if the company were being wound up under the supervision of the Court.

*Reference of questions to Court*

(2)    The Court, if satisfied that the determination of the question or the required exercise of power will be just and beneficial, may accede wholly or partly to the application on such terms and conditions as it thinks fit, or make such other order on the application as it thinks just.

(3)    The voluntary liquidator shall, within seven days of the making of an order under this section, forward a copy of the order to the Registrar who shall enter it in his records relating to the company.

130. (1)    The expenses properly incurred in the winding up, including the remuneration of the liquidator, are payable out of the company's assets in priority to all other claims.

*Expenses of voluntary winding up*

(2)    The rate and amount of the liquidator's remuneration shall be fixed and payment authorised by resolution of the company.

(3)    Each report and account laid before the company in general meetings by its liquidator shall contain all such information, including the rate at which the

liquidator's remuneration is calculated and particulars of the work done, as may be necessary to enable the members to determine what expenses have been properly incurred and what remuneration is properly payable to the liquidator.

(4)  If the company fails to approve the liquidator's remuneration and expenses or the liquidator is dissatisfied with the decision of the company, he may apply to the Court which shall fix the rate and amount of his remuneration and expenses.

## Winding up subject to the supervision of the Court

Application for supervision order

131.  When a resolution has been passed by a company to wind up voluntarily, the liquidator or any contributory or creditor may apply to the Court for an order for the continuation of the winding up under the supervision of the Court, notwithstanding that the declaration of solvency has been made in accordance with section 124, on the grounds that-

(a)  the company is or is likely to become insolvent; or
(b)  the supervision of the Court will facilitate a more effective, economic or expeditious liquidation of the company in the interests of the contributories and creditors.

Appointment of official liquidator

132. (1)  When making a supervision order the Court-

(a)  shall appoint one or more qualified insolvency practitioners; and
(b)  may, in addition, appoint one or more foreign practitioners,

as liquidator or liquidators of the company and section 105 shall apply as if the Court had made a winding up order.

(2)  Unless a voluntary liquidator is appointed as an official liquidator, he shall prepare a final report and accounts within twenty-eight days from the date of the supervision order.

Effect of supervision order

133.  A supervision order shall take effect for all purposes as if it was an order that the company be wound up by the Court except that-

(a)  the liquidation commenced in accordance with section 117; and
(b)  the prior actions of the voluntary liquidator shall be valid and binding upon the company and its official liquidator.

## Offences of fraud, etc.

Fraud, etc. in anticipation of winding up

134. (1)  Where a company is ordered to be wound up by the Court, or passes a resolution for voluntary winding up, any person, who is or was an officer, professional service provider, voluntary liquidator or controller of the company and who, within the twelve months immediately preceding the commencement of the winding up, has-

*Companies Law (2018 Revision)*

(a) concealed any part of the company's property to the value of ten thousand dollars or more or concealed any debt due to or from the company;

(b) removed any part of the company's property to the value of ten thousand dollars or more;

(c) concealed, destroyed, mutilated or falsified any documents affecting or relating to the company's property or affairs;

(d) made any false entry in any documents affecting or relating to the company's property or affairs;

(e) parted with, altered or made any omission in any document affecting or relating to the company's property or affairs; or

(f) pawned, pledged or disposed of any property of the company which has been obtained on credit and has not been paid for (unless the pawning, pledging or disposal was in the ordinary way of the company's business),

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

(2) In this section-

"officer" includes a shadow director.

135. Where a company is ordered to be wound up by the Court or passes a resolution for voluntary winding up, any officer or professional service provider of the company who-

*Transactions in fraud of creditors*

(a) has made or caused to be made any gift or transfer of, or charge on, or has caused or connived at the levying of any execution against, the company's property; or

(b) has concealed or removed any part of the company's property,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine and to imprisonment for five years.

136. (1) Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, officer or professional service provider of the company and who-

*Misconduct in course of winding up*

(a) does not to the best of his knowledge and belief fully and truly discover to the liquidator-

(i) all the company's property (except such part as has been disposed of in the ordinary way of the company's business);

(ii) the date on which and manner in which the company's property or any part thereof property was disposed of, if it was disposed of;

(iii) the persons to whom any property was transferred, if it was disposed of; or

81

    (iv)   the consideration paid for any property which was disposed of;

(b)   does not deliver up to the liquidator or does not deliver up in accordance with the directions of the liquidator any of company's property which is in his custody or under his control, and which he is required by law to deliver up;

(c)   does not deliver up to the liquidator or does not deliver up, in accordance with the directions of the liquidator, all documents in his custody or under his control which belong to the company and which he is required by law to deliver up;

(d)   knows or believes that a false debt has been proved by any person in the winding up and fails to inform the liquidator of such knowledge or belief as soon as practicable;

(e)   prevents the production of any document affecting or relating to the company's property or affairs; or

(f)   destroys, mutilates, alters or falsifies any books, papers or securities, or makes or is privy to the making of any false or fraudulent entry in any register, book of account or document belonging to the company,

with intent to defraud the company's creditors or contributories commits an offence and is liable on conviction to a fine of twenty five thousand dollars or to imprisonment for a term of five years, or to both.

(2)   In this section-

"officer" includes a shadow director.

*Material omissions from statement relating to company's affairs*

137. (1)   Where a company is being wound up, whether by the Court or voluntarily, a person who is or was a director, an officer a manager or a professional service provider of the company, commits an offence if he makes any material omission in any statement relating to the company's affairs, with intent to defraud the company's creditors or contributories.

(2)   A person who commits an offence under subsection (1) is liable on conviction to a fine of twenty-five thousand dollars or to imprisonment for a term of five years, or to both.

(3)   In this section-

"officer" includes a shadow director.

## General provisions

*Getting in the company's property*

138. (1)   Where any person has in his possession any property or documents to which the company appears to be entitled, the Court may require that person to pay, transfer or deliver such property or documents to the official liquidator.

*Companies Law (2018 Revision)*

(2)   Where the official liquidator seizes or disposes of any property which he reasonably believed belonged to the company, he shall not be personally liable for any loss or damage caused to its true owner except in so far as such losses or damage is caused by his own negligence.

139. (1)   All debts payable on a contingency and all claims against the company whether present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company and the official liquidator shall make a just estimate so far as is possible of the value of all such debts or claims as may be subject to any contingency or sound only in damages or which for some other reason do not bear a certain value. *Provable debts*

(2)   Foreign taxes, fines and penalties shall be admissible to proof against the company only if and to the extent that a judgment in respect of the same would be enforceable against the company pursuant to the Foreign Judgments Reciprocal Enforcement Law (1996 Revision) or any laws permitting the enforcement of foreign taxes, fines and penalties. *1996 Revision*

140. (1)   Subject to subsection (2), the property of the company shall be applied in satisfaction of its liabilities *pari passu* and subject thereto shall be distributed amongst the members according to their rights and interests in the company. *Distribution of the company's property*

(2)   The collection in and application of the property of the company referred to in subsection (1) is without prejudice to and after taking into account and giving effect to the rights of preferred and secured creditors and to any agreement between the company and any creditors that the claims of such creditors shall be subordinated or otherwise deferred to the claims of any other creditors and to any contractual rights of set-off or netting of claims between the company and any person or persons (including without limitation any bilateral or any multi-lateral set-off or netting arrangements between the company and any person or persons) and subject to any agreement between the company and any person or persons to waive or limit the same.

(3)   In the absence of any contractual right of set-off or non set-off, an account shall be taken of what is due from each party to the other in respect of their mutual dealings, and the sums due from one party shall be set-off against the sums due from the other.

(4)   Sums due from the company to another party shall not be included in the account taken under subsection (3) if that other party had notice at the time they became due that a petition for the winding up of the company was pending.

(5)   Only the balance, if any, of the account taken under subsection (3) shall be provable in the liquidation or, as the case may be, payable to the liquidator as part of the assets.

141. (1)   In the case of an insolvent company, the debts described in Schedule 2 shall be paid in priority to all other debts. *Preferential debts Schedule 2*

83

*Companies Law (2018 Revision)*

(2)  The preferential debts shall-

(a)  rank equally amongst themselves and be paid in full unless the assets available, after having exercised any rights of set-off or netting of claims, are insufficient to meet them in which case they shall abate in equal proportions; and

(b)  so far as the assets of the company available for payment of general creditors are insufficient to meet them, have priority over the claims of holders of debentures secured by, or holders of any floating charge created by the company, and be paid accordingly out of any property comprised in or subject to that charge.

Secured creditors

142. (1)  Notwithstanding that a winding up order has been made, a creditor who has security over the whole or part of the assets of a company is entitled to enforce his security without the leave of the Court and without reference to the liquidator.

(2)  Where the liquidator sells assets on behalf of a secured creditor, he is entitled to deduct from the proceeds of sale a sum by way of remuneration equivalent to that which is or would be payable under section 109.

Preferential charge on goods distrained

143.  In the event of a landlord or other person entitled to receive rent distraining or having distrained on any goods or effects of the company within three months preceding the date of the winding up order, the debts to which priority is given by section 141 shall be a first charge on the goods or effects so distrained on or the proceeds of sale thereof.

Effect of execution or attachment

144. (1)  Where a creditor has issued execution against the goods or land of a company or has attached any debt due to it, and the company is subsequently wound up, he is not entitled to retain the benefit of the execution or attachment against the liquidator unless he has completed the execution or attachment before the commencement of the winding up.

(2)  Notwithstanding subsection (1)-

(a)  where a creditor has had notice of a meeting having been called at which a resolution for voluntary winding up is to be proposed, the date on which he had notice is substituted for the purpose of subsection (1) for the date of commencement of the winding up;

(b)  a person who purchases in good faith under a sale by the bailiff any goods of a company on which execution has been levied in all cases acquires a good title to them against the liquidator; and

(c)  the rights conferred by subsection (1) on the liquidator may be set aside by the Court in favour of the creditor to such extent and subject to such terms as the Court thinks fit.

(3)  For the purposes of this Law-

(a)  an execution against goods is completed by seizure and sale;

84

*Companies Law (2018 Revision)*

    (b)   an execution against securities is completed upon making a charging order absolute;

    (c)   an attachment of a debt is completed by receipt of the debt; and

    (d)   an execution against land is completed by the registration of a charging order.

145. (1)   Every conveyance or transfer of property, or charge thereon, and every payment obligation and judicial proceeding, made, incurred, taken or suffered by any company in favour of any creditor at a time when the company is unable to pay its debts within the meaning of section 93 with a view to giving such creditor a preference over the other creditors shall be invalid if made, incurred, taken or suffered within six months immediately preceding the commencement of a liquidation.

    (2)   A payment made as aforesaid to a related party of the company shall be deemed to have been made with a view to giving such creditor a preference.

    (3)   For the purposes of this section a creditor shall be treated as a "related party" if it has the ability to control the company or exercise significant influence over the company in making financial and operating decisions.

*Voidable preference*

146. (1)   In this section and section 147 -

    (a)   "disposition" has the meaning ascribed in Part VI of the Trusts Law (2018 Revision);

    (b)   "intent to defraud" means an intention to wilfully defeat an obligation owed to a creditor;

    (c)   "obligation" means an obligation or liability (which includes a contingent liability) which existed on or prior to the date of the relevant disposition;

    (d)   "transferee" means the person to whom a relevant disposition is made and shall include any successor in title; and

    (e)   "undervalue" in relation to a disposition of a company's property means-

      (i)   the provision of no consideration for the disposition; or

     (ii)   a consideration for the disposition the value of which in money or monies worth is significantly less than the value of the property which is the subject of the disposition.

*Avoidance of dispositions made at an undervalue*

*2018 Revision*

    (2)   Every disposition of property made at an undervalue by or on behalf of a company with intent to defraud its creditors shall be voidable at the instance of its official liquidator.

    (3)   The burden of establishing an intent to defraud for the purposes of this section shall be upon the official liquidator.

    (4)   No action or proceedings shall be commenced by an official liquidator under this section more than six years after the date of the relevant disposition.

(5)  In the event that any disposition is set aside under this section, then if the Court is satisfied that the transferee has not acted in bad faith-

    (a)  the transferee shall have a first and paramount charge over the property, the subject of the disposition, of an amount equal to the entire costs properly incurred by the transferee in the defence of the action or proceedings; and

    (b)  the relevant disposition shall be set aside subject to the proper fees, costs, pre-existing rights, claims and interests of the transferee (and of any predecessor transferee who has not acted in bad faith).

**Fraudulent trading**

147. (1)  If in the course of the winding up of a company it appears that any business of the company has been carried on with intent to defraud creditors of the company or creditors of any other person or for any fraudulent purpose the liquidator may apply to the Court for a declaration under this section.

(2)  The Court may declare that any persons who were knowingly parties to the carrying on of the business in the manner mentioned in subsection (1) are liable to make such contributions, if any, to the company's assets as the Court thinks proper.

**Supply of utilities**

148. (1)  If a request is made by or with the concurrence of the liquidator (including a provisional liquidator) for the giving, after the effective date, of any of the supplies mentioned in the subsection (2), the supplier-

    (a)  may make it a condition of the giving of the supply that the liquidator personally guarantees the payment of any charges in respect of the supply; but

    (b)  shall not make it a condition of the giving of the supply, or do anything which has the effect of making it a condition of the giving of the supply, that any outstanding charges in respect of a supply given to the company before the effective date are paid.

(2)  The supplies referred to in subsection (1) are-

    (a)  a supply of electricity;

    (b)  a supply of water; and

    (c)  a supply of telecommunication services.

(3)  In this section-

"effective date" means-

    (a)  the date on which the provisional liquidator was appointed; or

    (b)  the date on which the winding up order was made.

**Interest on debts**

149. (1)  Subject to subsection (5), in a winding up interest is payable in accordance with this section on any debt proved in the winding up, including so much of any such debt as represents interest on the remainder of the debt.

*Companies Law (2018 Revision)*

(2)  Any surplus remaining after the payment of the debts proved in a winding up shall, before being applied for any other purpose, be applied in paying interest on those debts in respect of the period during which they have been outstanding since the company went into liquidation.

(3)  All interest under this section ranks equally, whether or not the debts on which it is payable ranked equally.

(4)  The rate of interest payable under this section in respect of any debt is the greater of -

  (a)  the rate applicable to the currency of the liquidation prescribed from time to time by the Judgment Debts (Rates of Interest) Rules, 2012 made under section 34 of the Judicature Law (2017 Revision); and *2017 Revision*

  (b)  the rate applicable to that debt apart from the winding up.

(5)  No interest shall be payable if the liquidation is concluded in less than six months or the accrued amount is less than five hundred dollars.

150. (1)  In the case of a solvent liquidation, a company's creditors are entitled to receive payment of their debts in the currency of the obligation. *Currency of the liquidation*

(2)  In the case of an insolvent liquidation, a company's liabilities shall be translated into the functional currency of the company at the exchange rates ruling-

  (a)  on the date of the commencement of the voluntary liquidation; or

  (b)  on the day upon which the winding up order is made.

(3)  For the purposes of this section the functional currency of a company is the currency of the primary economic environment in which it operated as at the commencement of the liquidation.

### Dissolution of a Company

151. (1)  The Registrar shall, within three days of receiving a liquidator's return under section 127(3), register such return. *Dissolution following voluntary winding up*

(2)  Upon the expiration of three months from the registration of the return the company is deemed to be dissolved.

(3)  Notwithstanding subsection (2), the Court may, on the application of the liquidator or any other person who appears to the Court to be interested, make an order deferring the date at which the dissolution of the company is to take effect to such date as the Court thinks fit.

(4)  An application under this section shall not be made after the company is deemed to have been dissolved.

(5)   An order of the Court made under this section shall be registered with the Registrar within seven days of the date upon which it was made.

**Dissolution following winding up by the Court**

152. (1)   When the affairs of the company have been completely wound up, the Court shall make an order that the company be dissolved from the date of that order or such other date as the Court thinks fit, and the company shall be dissolved accordingly.

(2)   The effect of an order for dissolution in respect of a segregated portfolio is that its creditors' claims against the company shall be extinguished, notwithstanding that the company has not been liquidated and dissolved.

(3)   The official liquidator shall file the order for dissolution with the Registrar.

(4)   An official liquidator who fails to file the order for dissolution with the Registrar within fourteen days from the date upon which it was perfected, commits an offence and is liable on summary conviction to a penalty of ten dollars for every day during which he is so in default.

**Unclaimed dividends and undistributed assets**

153. (1)   Any unclaimed dividends or undistributed assets in the possession or control of the liquidator or former liquidator of a company shall be held by him as trustee upon trust for the benefit of the contributories or creditors to whom such funds are owed.

(2)   At the end of one year after the dissolution of the company, the former liquidator shall transfer any funds or other assets held on trust by him to the Minister charged with responsibility for Finance who shall manage them in accordance with Part VIII of the Public Management and Finance Law (2018 Revision).

**2018 Revision**

### Insolvency rules and regulations

**Insolvency Rules Committee**

154. (1)   There shall be established an Insolvency Rules Committee comprising-

(a)   the Chief Justice or other judge nominated by the Chief Justice in his place who shall be chairman;

(b)   the Attorney General or his nominee;

(c)   the legal practitioner members of the Grand Court Rules Committee;

(d)   a qualified insolvency practitioner appointed by the Chief Justice upon the recommendation of the Cayman Islands Society of Professional Accountants; and

(e)   a person appointed by the Chief Justice who, in his opinion, demonstrates a wide knowledge of law, finance, financial regulation or insolvency practice.

*Companies Law (2018 Revision)*

(2)   The quorum of the Insolvency Rules Committee shall be the chairman and three other members of the Committee; and the chairman shall have a casting vote.

155. (1)   The Insolvency Rules Committee shall have power-

<div style="text-align:right">Powers of the Insolvency Rules Committee</div>

   (a)   to make rules and prescribe forms for the purpose of giving effect to Parts IV, V and XVI;

   (b)   to prescribe court fees to be paid in connection with -
      (i)   applications under Part IV;
      (ii)   winding up proceedings under Part V; and
      (iii)   applications under Part XVI; and

   (c)   to make rules for the purpose of specifying -
      (i)   the qualifications which must be held by a person appointed to the office of official liquidator;
      (ii)   persons who are disqualified from holding office as official liquidator either generally or in relation to a particular company which is not in liquidation before the court;
      (iii)   the nature and scope of professional indemnity insurance, if any, required to be held by persons appointed to the office of official liquidators; and
      (iv)   the nature and scope of security bonds, if any, required to be posted by persons appointed to the office of official liquidator.

(2)   The Insolvency Rules Committee, after consultation with the Authority and with any organisation representing insolvency practitioners in the Islands, shall make rules prescribing the rates of fees which may be charged by an official liquidator.

## PART VI - Removal of Defunct Companies

156. (1)   Where the Registrar has reasonable cause to believe that a company is not carrying on business or is not in operation, he may strike the company off the register and the company shall thereupon be dissolved.

<div style="text-align:right">Company not operating may be struck off register</div>

(2)   A request on behalf of the company to strike the company off the register shall be accompanied by a fee of seventy-five dollars.

157.   Where a company is being wound up, and the Registrar has reasonable cause to believe either that no liquidator is acting, or that the affairs of the company are fully wound up, he may strike the company off the register and the company shall thereupon be dissolved.

<div style="text-align:right">Company being wound up may be struck off register for want of liquidator, etc.</div>

158.   The Registrar shall immediately publish a Government Notice to the effect that the company in question has been struck off the register, the date on which it has been struck off and the reason therefor. Such notice shall be gazetted.

<div style="text-align:right">Registrar to publish fact of company being struck off register</div>

CAYMAN ISLANDS



Supplement No. 1 published with Extraordinary
Gazette No. 103 dated 6 December, 2017.

**THE COMPANIES LAW (2016 REVISION) (AS AMENDED)
COMPANIES WINDING UP RULES, 2018**

**FOREIGN BANKRUPTCY PROCEEDINGS
(INTERNATIONAL COOPERATION) RULES, 2018**

**INSOLVENCY PRACTITIONERS' REGULATIONS, 2018**

**THE COMPANIES LAW (2016 REVISION) (AS AMENDED)**

**COMPANIES WINDING UP RULES, 2018**

**FOREIGN BANKRUPTCY PROCEEDINGS
(INTERNATIONAL COOPERATION) RULES, 2018**

**INSOLVENCY PRACTITIONERS' REGULATIONS, 2018**

**These Rules and Regulations are made by the Insolvency Rules Committee pursuant to Section 155 of the Companies Law (2016 Revision)(as amended)**

**1.     Citation and Commencement of the Companies Winding Up Rules, 2018**

(1)     These Rules shall be cited as the Companies Winding Up Rules, 2018.

(2)     These Rules shall come in operation on the 1st day of February 2018.

**2.     Revocation of Companies Winding Up Rules 2008 and Amendments**

The Companies Winding Up Rules 2008, the Companies Winding Up (Amendment) Rules, 2010, the Companies Winding Up (Amendment) Rules, 2013 and the Companies Winding Up (Amendment) Rules 2016 are hereby revoked and replaced by the Companies Winding Up Rules, 2016 attached as a Schedule hereto.

**3.     Citation and Commencement of the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2018**

(1)     These Rules shall be cited as the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2018.

(2)     These Rules shall come in operation on the 1st day of February 2018.

**4.     Revocation of the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2008**

The Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2008 are hereby revoked and replaced by the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2016 attached as a Schedule hereto.

**ORDER 10**

**OFFICIAL LIQUIDATOR'S REPORTS AND ACCOUNTS**

**Official Liquidator's Reporting Obligations (O. 10, r. 1)**

1.     (1)    The official liquidator shall prepare reports and accounts with respect to his conduct of the liquidation and the state of the company's affairs.

    (2)    It is the duty of an official liquidator to report to –

        (a)    the liquidation committee in compliance with the requirements of Order 9, rule 3;

        (b)    the contributories, in the event that the official liquidator has determined (pursuant to Order 8, rule 1) that the company should be regarded as solvent; or

        (c)    the creditors, in the event that the official liquidator has determined (pursuant to Order 8, rule 1) that the company should be regarded as insolvent; or

        (d)    the contributories and creditors, if and for so long as the official liquidator has determined that the company should be regarded as being of doubtful solvency; and

        (e)    the Court.

    (2)    Whenever the official liquidator convenes a meeting pursuant to Order 8, rule 2, the official liquidator shall send a report and accounts to every person entitled to receive notice of the meeting.

    (3)    Whenever the official liquidator convenes a meeting in response to a requisition made pursuant to Order 8, rule 3, he may send a report and/or accounts to every person entitled to receive notice of the meeting.

    (4)    The official liquidator of an insolvent company has no continuing duty to report to the contributories, but he shall provide copies of his reports and accounts to any contributory upon request.

**Form and Content of Liquidators' Reports and Accounts (O. 10, r. 2)**

2.     (1)    Every official liquidator's report shall provide a description and analysis of -

        (a)    the steps taken and, in the case of an interim report, the further steps intended to be taken in the liquidation generally; or

(b)    a discrete matter which, in the opinion of the official liquidator is or ought to be of particular concern to the company's creditors and/or contributories;

(c)    a discrete matter upon which the official liquidator seeks a direction of the Court;

(d)    a discrete matter which, by its nature, ought to be kept confidential.

(2)    The official liquidator shall report upon –

(a)    the steps taken in the liquidation since the date of the winding up order or the date of his previous report;

(b)    the matters which are relevant to any resolutions intended to be put to the next meeting of contributories or creditors ;

(c)    any matters upon which he is asked to report by the liquidation committee;

(d)    any matters upon which he is directed to report by the Court;

(e)    any matters upon which he seeks a direction of the Court; and

(f)    any other matters which, in the opinion of the official liquidator, are or ought to be of concern to the contributories or creditors of the company.

(3)    Except in the case of a report expressed to relate to a discrete matter, every official liquidator's report and accounts shall provide the company's creditors and/or contributories with the information necessary (when read with previous reports) to enable them to make an informed decision about the company's financial condition and their prospects of recovery, to the extent that it is reasonably possible to do so.

(4)    The official liquidator's accounts shall be presented in the currency of the liquidation and shall include details of –

(a)    the nature and estimated realisable value of the company's assets;

(b)    any security over the company's assets;

(c)    the nature and amount of the company's liabilities, including future and contingent liabilities;

(d)    the nature and amount of the company's income;

(e)    the expenses of the liquidation;

(f)    the amount of liquidator's remuneration approved by the Court;

(g)    the work done by or on behalf the official liquidator and the amount of remuneration claimed by him;

(h)    the distributions made to creditors and contributories; and

(i)    such other information which is required in order to provide the contributories or creditors with a proper understanding of the company's affairs and financial position.

**Publication of Reports and Accounts (O. 10, r. 3)**

**3.**    (1)    Every official liquidator's report and accounts shall be filed in Court.

(2)    Except as provided in sub-rule (3), every official liquidator's report and accounts shall be sent to the company's creditors by pre-paid post or transmitted to them by facsimile or e-mail and shall be sent to contributories in whatever manner may be required or authorised by the company's articles of association.

(3)    In the case of a report expressed to relate to a discrete matter, the Court may direct that it should be kept confidential for a specific period or until the occurrence of a specified event.

(4)    In the case of a company which carried on a regulated business or was put into liquidation upon the petition of the Authority, the official liquidator shall send a copy of every report and accounts to the Authority.

(5)    In addition, the official liquidator may post his reports and accounts (or a summarised version) on a website established for this purpose.

**ORDER 11**

**SANCTION APPLICATIONS**

**Introduction (O. 11, r. 1)**

**1.**     (1)     Any application to Court made by –

        (a)     the official liquidator for a order sanctioning his exercise or proposed exercise of any power conferred upon him by Part I of the Third Schedule of the Law or otherwise; or

        (b)     a creditor or contributory for an order directing the official liquidator to exercise or refrain from exercising any of his powers in a particular way,

    is referred to in these Rules as a "sanction application".

    (2)     Sanction applications shall be made by summons in CWR Form No 16.

**Service of Sanction Applications (O. 11, r. 2)**

**2.**     (1)     Every sanction application made by the official liquidator shall be served on –

        (a)     each member of the liquidation committee ; or

        (b)     counsel to the liquidation committee, if an attorney has been appointed by the liquidation committee with authority to act generally; and

        (c)     such other creditors or contributories as the Court may direct.

    (2)     Every sanction application made by the liquidation committee shall be served on –

        (a)     the official liquidator; and

        (b)     such creditors or contributories as the Court may direct.

    (3)     Every sanction application made by a creditor or contributory (other than the liquidation committee) shall be served on –

        (a)     the official liquidator; and

        (b)     each member of the liquidation committee; or

        (c)     counsel to the liquidation committee, if an attorney has been appointed by the liquidation committee with authority to act generally; and

        (d)     such other creditors or contributories as the Court may direct.

## ORDER 16

**PROOF OF DEBTS IN OFFICIAL LIQUIDATION**

**PART I: PROCEDURE FOR PROVING**

### Introduction (O. 16, r. 1)

**1.**　(1)　Where a solvent company is being wound up by the Court, the official liquidator shall pay the debts owing to its creditors in the ordinary course and in the currency of the obligation as if the company were still carrying on business.

　　(2)　Where a company which is insolvent or of doubtful solvency is being wound up by the Court, a person claiming to be a creditor of the company and wishing to recover his debt must (subject to Rule 7) submit his claim in writing to the official liquidator and is referred to as "proving" for his debt and the document by which he seeks to establish his claim is referred to as his "proof" or "proof of debt".

　　(3)　The official liquidator of a solvent company which is being wound up by the Court may require a creditor to submit a proof of debt if there is a doubt or dispute about the existence of the debt or the amount owing to the creditor.

　　(4)　It is the duty of the official liquidator to adjudicate the creditors' claims, for which purpose he acts in a quasi-judicial capacity.

### Form and Content of Proof (O. 16, r. 2)

**2.**　(1)　A proof of debt shall be in CWR Form No 24 or such other form or forms as the official liquidator may prescribe having regard to the nature of the claims against the company.

　　(2)　The official liquidator may prescribe different forms of proof of debt for use by different classes of creditor.

　　(3)　The following matters shall be stated in a creditor's proof of debt –

　　　　(a)　the creditor's name and address;

　　　　(b)　the total amount of his claim as at the date on which the company went into liquidation;

　　　　(c)　whether or not the claim includes interest and, if so, the basis upon which the creditor claims to be entitled to interest;

　　　　(d)　particulars of how and when the debt was incurred by the company; and

(2)     The official liquidator may revise any estimate previously made, if he thinks fit by reference to any change of circumstances or to information becoming available to him.

(3)     Where the official liquidator has put an estimate upon a contingent claim or a debt the amount of which is subject to a contingency, he shall notify the creditor of this fact in CWR Form No 29, stating –

(a)     the basis upon which this estimate has been made;

(b)     the fact that the creditor may submit a varied proof of debt, having regard to changed circumstances;

(c)     the fact that the official liquidator may vary his estimate, having regard to changed circumstances; and

(d)     the official liquidator's agreement to extend generally the creditor's time for applying to the Court pursuant to Rule 18.


## PART III: APPEAL AGAINST REJECTION OF PROOF


**Introduction (O. 16, r. 17)**

**17.**   If a creditor is dissatisfied with the official liquidator's decision with respect to his proof (including any decision on the question of priority), he may appeal to the Court for the decision to be reversed or varied.


**Application to Court (O. 16, r. 18)**

**18.**     (1)     An appeal to the Court under Rule 17 shall be made within 21 days of the date upon which he received the official liquidator's notification under Rule 6.

(2)     Every appeal under this Rule shall be made by summons in CWR Form No 30 and shall be served on the official liquidator.

(3)     Every appeal under this Rule shall be supported by an affidavit and Order 11, rule 4(2) shall apply.

(4)     Order 11, rule 3 shall apply to the hearing of every appeal under this Rule.

(5)     An appeal under this Rule shall be treated as a *de novo* adjudication of the creditor's proof and the creditor may rely upon additional evidence in support of his claim, notwithstanding that he failed to make such evidence available to the official liquidator.

**19.**    [No order]

## PART IV: EXPUNGING ADMITTED CLAIMS

### Introduction (O. 16, r. 20)

**20.**    (1)    The Court may expunge a proof which has been admitted or reduce the amount in respect of which it has been admitted.

        (2)    The official liquidator may apply to expunge a proof on the ground that it appears, on the basis of information not available to the official liquidator at the time of his adjudication of the proof, that it ought not to have been admitted or ought to have been admitted for a lesser amount.

        (3)    A contributory or creditor who is dissatisfied with the official liquidator's decision to admit the whole or part of a creditor's proof for an amount exceeding $100,000 (or its equivalent in the currency of the liquidation) or 5% of the company's total liabilities (whichever is the less) may apply to expunge the proof on the ground that it should not have been admitted.

### Application to Court (O. 16, r. 21)

**21.**    (1)    An application to expunge a proof of debt shall be made by summons in CWR Form No 31 and shall be served on the creditor and, if made under Rule 20(3) of this Order, shall also be served on the official liquidator.

        (2)    An application under this Rule must be made promptly and, in any event, not later than the date upon which a dividend has been paid in respect of it.

        (3)    Every application under this Rule shall be supported by an affidavit and Order 11, rule 4(2) shall apply.

## ORDER 18

## COLLECTION AND DISTRIBUTION OF COMPANY'S ASSETS BY ITS OFFICIAL LIQUIDATOR

**Powers of Official Liquidator (O. 18, r. 1)**

**1.**    (1)    The official liquidator is an officer of the Court.

    (2)    The official liquidator is empowered, as agent of the company, to collect, take possession, retain, manage and realise the company's property.

**Manner of Distributing the Assets (O. 18, r. 2)**

**2.**    (1)    When the official liquidator has sufficient funds in hand for the purpose he shall, subject to the retention of such sums as may be necessary for the expenses of the winding up, declare and distribute dividends among the creditors in respect of the debts which they have respectively proved.

    (2)    The official liquidator shall give notice of his intention to declare and distribute a dividend.

    (3)    Where the official liquidator has declared a dividend, he shall give 21 days' notice of it to the creditors, stating how the dividend is proposed to be distributed. The notice shall contain such particulars with respect to the company, and its assets and affairs, as will enable the creditors to comprehend the calculation of the amount of the dividend and the manner of its distribution.

**Debts of Insolvent Company to Rank Equally (O. 18, r. 3)**

**3.**    (1)    Debts other than preferential debts rank equally between themselves in the winding up and, after the preferential debts, shall be paid in full unless the assets are insufficient for meeting them, in which case they shall abate in equal proportions between themselves.

**Calculation of Dividend (O. 18, r. 4)**

**4.**    (1)    In the calculation and distribution of a dividend the official liquidator shall make provision for –

        (a)    any debts which appear to him to be due to persons who, for whatever reason, may not have had sufficient time in which to tender and establish their proofs;

        (b)    any debts which are the subject of claims which have not yet been determined;

# EXHIBIT D-2

# [SELECT BRITISH VIRGIN ISLANDS STATUTES]

**VIRGIN ISLANDS**

**THE BVI BUSINESS COMPANIES ACT, 2004**

**No. 16 of 2004**

**Amended by**
**26/2005**
**12/2006**
**S.I. 2006/84**

**Subsidiary Legislation**

**Segregated Portfolio Companies Regulations, 2005 (S.I. 2005 No. 96)**

**BVI Business Companies (Company Names) Regulations, 2007**

**Revised under the Statute Revision Act, 2005 (No. 25 of 2005)**
**as of 1st January, 2008**

(a)    it is impracticable to call or conduct a meeting of the members of a company in the manner specified in this Act or in the memorandum and articles of the company; or

(b)    it is in the interests of the members of the company that a meeting of members is held.

(2)    An application for an order under subsection (1) may be made by a member or director of the company.

(3)    The Court may make an order under subsection (1) on such terms, including as to costs of conducting the meeting and as to the provision of security for those costs, as it considers appropriate.

**87.**    The Regulations may specify provisions for proceedings of members' meetings which shall apply in respect of a company, except to the extent that the memorandum or articles of the company provide otherwise. <sup>Proceedings at meetings of members.</sup>

**88.**    (1)    Subject to the memorandum or articles of a company, an action that may be taken by members of the company at a meeting of members may also be taken by a resolution of members consented to in writing or by telex, telegram, cable or other written electronic communication, without the need for any notice. <sup>Written resolutions.</sup>

(2)    A resolution under subsection (1) may consist of several documents, including written electronic communications, in like form each signed or assented to by one or more members.

**89.**    (1)    Any notice, information or written statement required under this Act to be given by a company to members shall be served <sup>Service of notice on members.</sup>

(a)    in the case of members holding registered shares,

(i)    in the manner specified in the memorandum or articles, as the case may be; or

(ii)    in the absence of a provision in the memorandum or articles, by personal service or by mail addressed to each member at the address shown in the register of members; and

(b)    in the case of members holding bearer shares, by personal service on, or by mail addressed to, each custodian of bearer shares in the company at the address shown in the register of members.. <sup>26/2005</sup>

(2)    *(Repealed)* <sup>26/2005</sup>

**VIRGIN ISLANDS**

**INSOLVENCY ACT, 2003**
**No. 5 of 2003**

**VIRGIN  ISLANDS**

**INSOLVENCY  ACT, 2003**

**ARRANGEMENT  OF  SECTIONS**

Section
## PART I

### PRELIMINARY PROVISIONS

1. Short title and commencement.
2. Interpretation.
3. Meaning of "company".
4. Meaning of "subsidiary" and "holding company".
5. Meaning of "connected person" and "related company".
6. Meaning of "director".
7. Meaning of "unlicensed financial services business".
8. Meaning of "insolvent".
9. Meaning of "creditor", "secured creditor" etc.
10. Meaning of "liability".
11. Admissible claims.
12. Non-admissible claims.
13. Meaning of "public document".

## PART II

### CREDITORS' ARRANGEMENTS

### Division 1 - Interpretation

14. Interpretation for and scope of this Part.
15. Arrangements.
16. Remuneration of supervisor and interim supervisor.

# PART VI

## LIQUIDATION

### PRELIMINARY

Application of this Part to Official Receiver.

158.  Where the Official Receiver is appointed as the liquidator or provisional liquidator of a company, the provisions of this Act that apply to a liquidator apply to the Official Receiver, as liquidator, unless otherwise provided.

Appointment of liquidator.

159.  (1)   The Court may appoint the Official Receiver or an eligible insolvency practitioner as liquidator

>        (a)  of a company, on an application under section 162; or

>        (b)  of a foreign company, on an application under section 163.

(2)   Subject to section 161, the members of a company may, by a qualifying resolution, appoint an eligible insolvency practitioner as liquidator of the company.

(3)   For the purposes of subsection (2), a resolution is a "qualifying resolution" if it is passed at a properly constituted meeting of the company by a majority of 75 per cent, or if a higher majority is required by the memorandum or articles, by that higher majority, of the votes of those members who are present at the meeting and entitled to vote on the resolution.

(4)   The members of a foreign company may not appoint a liquidator under this Part and any resolution of the members of a foreign company that purports to appoint a liquidator under this Part is void and of no effect.

Duration of liquidation.

160.  The liquidation of a company commences at the time at which a liquidator is appointed as provided in section 159 and continues until it is terminated in accordance with section 232 and, throughout this period, the company is referred to in this Act as "in liquidation".

Appointment of liquidator by members.

161.  (1)   The members of a company may not appoint a liquidator of the company if

>        (a)  an application to the Court to appoint a liquidator has been filed but not yet determined;

>        (b)  a liquidator has been appointed by the Court; or

EFFECT OF LIQUIDATION

Effect of
liquidation.

175. (1)   Subject to subsection (2), with effect from the commencement of the liquidation of a company

    (a)   the liquidator has custody and control of the assets of the company;

    (b)   the directors and other officers of the company remain in office, but they cease to have any powers, functions or duties other than those required or permitted under this Part;

    (c)   unless the Court otherwise orders, no person may

        (i)   commence or proceed with any action or proceeding against the company or in relation to its assets, or

        (ii)   exercise or enforce, or continue to exercise or enforce any right or remedy over or against assets of the company;

    (d)   unless the Court otherwise orders, no share in the company may be transferred;

    (e)   no alteration may be made in the status of or to the rights or liabilities of a member, whether by an amendment of the memorandum or articles or otherwise;

    (f)   no member may exercise any power under the memorandum or articles, or otherwise, except for the purposes of this Act; and

    (g)   no amendment may be made to the memorandum or articles of the company.

    (2)   Subsection (1) does not affect the right of a secured creditor to take possession of and realise or otherwise deal with assets of the company over which that creditor has a security interest.

    (3)   Any thing or matter done or purported to be done in contravention of subsection (1) is void and of no effect.

Restriction on
execution or
attachment.

176. (1)   Subject to subsections (2) and (3), a creditor is not entitled to retain the benefit of any execution process, distress or attachment over or against the assets of a company in liquidation unless the execution, process or attachment is completed before the first occurring of the commencement of the liquidation and,

(b)  he gives notice to the creditors stating

(i)  that he does not consider it necessary for a meeting to be held,

(ii)  the reasons for his view, and

(iii)  that a meeting will not be called unless 10 per cent in value of the  creditors give written notice to the liquidator within ten days of receiving the notice, that they require a meeting to be called; and

(c)  no notice requiring a meeting to be held is received by him.

## LIQUIDATORS

184.  (1)   In performing his functions and undertaking his duties under this Act, a liquidator, whether appointed by resolution of the members or by the Court, acts as an officer of the Court.

Status of liquidator.

(2)   A liquidator is the agent of the company in liquidation.

185.  (1)   The principal duties of a liquidator of a company are

General duties of liquidator.

(a)  to take possession of, protect and realise the assets of the company;

(b)  to distribute the assets or the proceeds of realisation of the assets in accordance with this Act; and

(c)  if there are surplus assets remaining, to distribute them, or the proceeds of realisation of the surplus assets, in accordance with this Act;

(2)   The liquidator shall, subject to this Act and the Rules, use his own discretion in undertaking his duties.

(3)   A liquidator also has the other duties imposed by this Act and the Rules and such duties as may be imposed by the Court.

186.  (1)   A liquidator of a company has the powers necessary to carry out the functions and duties of a liquidator under this Act and the powers conferred on him by this Act.

General powers of liquidator.

(2)   Without limiting subsection (1), a liquidator has the powers specified in

Schedule **2**.

(3)   The Court may provide that certain powers may only be exercised with the sanction of the Court

    (a)   where the liquidator is appointed by the Court, on his appointment or subsequently; or

    (b)   where the liquidator is appointed by the members, at any time.

(4)   Where a liquidator disposes of any assets of the company to a person connected with the company, he shall notify the creditors' committee, if any, of such disposition.

(5)   The liquidator of a company, whether or not appointed by the Court, may at any time apply to the Court for directions in relation to a particular matter arising in the liquidation.

**Removal of liquidator.**

187. (1)   The Court may, on application by a person specified in subsection (2) or on its own motion, remove the liquidator of a company from office if

    (a)   the liquidator

        (i)   is not eligible to act as an insolvency practitioner in relation to the company,

        (ii)   breaches any duty or obligation imposed on him by or owed by him under this Act, the Rules or any other enactment or law in the Virgin Islands, or

        (iii)   fails to comply with any direction or order of the Court made in relation to the liquidation of the company; or

    (b)   the Court is satisfied that

        (i)   the liquidator's conduct of the liquidation is below the standard that may be expected of a reasonably competent liquidator,

        (ii)   the liquidator has an interest that conflicts with his role as liquidator, or

        (iii)   that for some other reason he should be removed as liquidator.

(2)   An application to the Court to remove the liquidator of a company may be made by

    (a)  the creditors' committee;

    (b)  a creditor or member of the company; or

    (c)  the Official Receiver.

(3)   Where the Court removes a liquidator from office under this section

    (a)  if, following his removal, there is at least one liquidator remaining in office, the Court may appoint another liquidator in his place; or

    (b)  if the liquidator removed was the sole liquidator of the company, the Court shall appoint another liquidator in his place.

(4)   On the hearing of an application under this section, the Court may make any interim or other order it considers fit.

188.  (1)   A liquidator of a company

    (a)  shall resign if he is no longer eligible to act as an insolvency practitioner in relation to the company; but

    (b)  otherwise may only resign in accordance with this section.

*Resignation of liquidator.*

(2)   Where a liquidator resigns under subsection (1)(a), he shall send a notice of his resignation to the creditors of the company and to the Official Receiver and, if he was appointed by the Court, to the Court.

(3)   A liquidator may resign in accordance with subsection (5)

    (a)  if he intends to cease to be in practice as an insolvency practitioner;

    (b)  if there is some conflict of interest or change of personal circumstances that precludes or makes impracticable the further discharge by him of his duties; or

    (c)  on the grounds of ill health.

(4)   Notwithstanding subsection (3), where joint liquidators are appointed in respect of a company, one or more of the joint liquidators may resign in accordance with subsection (5) if

(2)    On an application under subsection (1), the Court may order a member or past member to pay to the company any money due from him, or due from the estate of the person who he represents in accordance with section 204(1).

(3)    In the case of any company, whether limited or unlimited, when all the creditors are paid in full, together with interest at the official rate, any money due on any account whatever to a member from the company may be allowed to him by way of set-off against any subsequent call.

206.  An order made against a member under section 205 is, subject to any right of appeal, conclusive evidence that the money, if any, ordered to be paid is due.

*Order under section 205 to be conclusive evidence.*

## CLAIMS

207.  (1)    Unless and to the extent that this Act or any other enactment provides otherwise, the assets of a company in liquidation shall be applied

*Distribution of assets of company.*

    (a)    in paying, in priority to all other claims, the costs and expenses properly incurred in the liquidation in accordance with the prescribed priority;

    (b)    after payment of the costs and expenses of the liquidation, in paying the preferential claims admitted by the liquidator in accordance with the provisions for the payment of preferential claims prescribed;

    (c)    after payment of the preferential claims, in paying all other claims admitted by the liquidator; and

    (d)    after paying all admitted claims, in paying any interest payable under section 215.

(2)    Subject to section 151, the claims referred to in subsection (1)(c) rank equally between themselves if the assets of the company are insufficient to meet the claims in full, they shall be paid rateably.

(3)    Any surplus assets remaining after payment of the costs, expenses and claims referred to in subsection (1) shall be distributed to the members in accordance with their rights and interests in the company.

(4)    For the purposes of this Act, assets held by a company in liquidation on trust for another person are not assets of the company.

208.  (1)    So far as the assets of a company in liquidation available for payment of the claims of unsecured creditors are insufficient to pay

*Claims having priority over floating charges.*

(a)  the costs and expenses of the liquidation in accordance with the prescribed priority; and

(b)  the preferential creditors;

those costs, expenses and claims have priority over the claims of chargees in respect of assets that are subject to a floating charge created by the company and shall be paid accordingly out of those assets.

Claims by unsecured creditors.

209. (1)   An unsecured creditor may make a claim against a company in liquidation by submitting to the liquidator a written claim, signed by him or on his behalf.

(2)   The liquidator may require an unsecured creditor who intends to submit, or who has submitted, a claim under subsection (1)

(a)  to verify his claim by affidavit;

(b)  to provide further particulars of his claim; or

(c)  to provide him with documentary or other evidence to substantiate the claim.

(3)   As soon as reasonably practicable after receiving a claim under subsection (1) from a creditor who has complied with any requirements that the liquidator may have imposed under subsection (2), the liquidator shall either admit or reject the claim in whole or in part.

(4)   If the liquidator rejects the claim, whether in whole or in part, he shall as soon as practicable provide the creditor with a notice of rejection in which the reasons for the rejection of the claim shall be specified.

(5)   Unless the Court otherwise orders, a creditor shall bear the costs of making a claim under this section, including the costs of complying with any requirements imposed by the liquidator under subsection (2).

(6)   The liquidator shall not admit a claim against the company unless it has been made in accordance with this section.

(7)   A person who makes or authorizes the making of a claim under this section knowing that

(a)  the claim is false or misleading in a material matter; or

(b)  a material fact or matter has been omitted from the claim;

commits an offence.

210. (1) A claim made under section 209 may

    (a) be amended or withdrawn by the creditor at any time before the liquidator has admitted it; and

    (b) be amended or withdrawn by agreement between the creditor and the liquidator at any time after the liquidator has admitted it

    (2) The Court, on the application of the liquidator or, where the liquidator declines to make application under this subsection, a creditor, may expunge or amend an admitted claim if it is satisfied that the claim should not have been admitted or should be reduced.

*Variation, withdrawal and expunging of claims.*

211. (1) A secured creditor may

    (a) value the assets subject to the security interest and claim in the liquidation of a company as an unsecured creditor for the balance of his debt; or

    (b) surrender his security interest to the liquidator for the general benefit of creditors and claim in the liquidation as an unsecured creditor for the whole of his debt;

but he is not obliged to do either.

*Claims by secured creditors.*

    (2) A secured creditor may, at any time apply to the liquidator to amend the value that he placed on the security interest in his claim.

    (3) If, on receiving an application under subsection (2), the liquidator is satisfied that

    (a) the value placed on the security interest was an estimate made in good faith on a mistaken basis; or

    (b) the value of the security interest has subsequently changed;

he may permit the secured creditor to amend the value that he places on the security interest.

    (4) If the liquidator of a company is dissatisfied with the value placed on a security interest by a secured creditor, whether under subsection (1)(a) or on an

(3)    Subject to section 280, the liquidator or provisional liquidator shall file with the Court each statement of affairs and each affidavit of concurrence that he receives.

Preliminary report.

226. (1)    The liquidator of a company shall, within sixty days of the commencement of the liquidation, prepare a preliminary report covering, to the best of his knowledge and belief, the following matters:

    (a)  in the case of a company with share capital, the amount of capital issued, subscribed and paid up;

    (b)  the assets and liabilities of the company;

    (c)  if the company has failed, the causes of the failure; and

    (d)  whether, in his opinion, further enquiries are desirable with respect to

        (i)    any matter relating to the promotion, formation or insolvency of the company or the conduct of the business or affairs of the company; and

        (ii)   possible claims under Part **IX**.

(2)    The liquidator shall send a copy of the report prepared under subsection (1)

    (a)  to each creditor of the company; and

    (b)  if in his report he states that further enquiries are desirable with respect to a matter referred to in subsection (1)(d), to the Official Receiver.

(3)    Subsection (2)(b) does not apply to the Official Receiver when he is acting as the liquidator of a company.

(4)    The Court may, on the application of the liquidator, extend the period specified in subsection (1) on such terms and conditions as it considers fit.

Duty of Official Receiver concerning report under section 226.

227.    Where the Official Receiver receives a report under section 226, he shall carry out such investigation, if any, as he considers appropriate.

## MISCELLANEOUS PROVISIONS

228. (1)   The liquidator shall call a meeting of the creditors of a company in liquidation if

    (a)   a meeting is requisitioned by the creditors of the company in accordance with subsection (2); or

    (b)   he is directed to do so by the Court.

    (2)   A creditors' meeting may be requisitioned in accordance with the Rules by 10 per cent in value of the creditors of the company.

*Liquidator to call meetings of creditors.*

229. (1)   On the application of a person who is, as against the liquidator of a company, entitled to the benefit or subject to the burden of a contract made with the company, the Court may make an order rescinding the contract on such terms as to payment by or to either party of damages for the non-performance of the contract, or otherwise as the Court considers just.

    (2)   Any damages payable to a person under an order made under subsection (1) may be claimed by him as a debt in the liquidation of the company.

*Recession of contracts by the Court.*

230. (1)   At any time after the appointment of a liquidator of a company, the Court may, on such terms as it considers appropriate, make an order for the inspection of specified books, records and documents of the company that are in its possession.

    (2)   Application for an order under subsection (1) may be made by a creditor or member of the company.

*Inspection of books by creditors.*

231. (1)   In this section "specified person" means

    (a)   the Official Receiver;

    (b)   a creditor of a company in liquidation; or

    (c)   a member of a company in liquidation.

    (2)   If a liquidator fails to file any notice, return, account or other document, a specified person may serve a notice on the liquidator requiring him to remedy the default.

    (3)   If a liquidator fails to remedy the default specified in a notice served under subsection (1) within 14 days of service of the notice on him, any specified person may apply to the Court for an order that the liquidator remedy the default within such time as the Court may specify.

*Enforcement of liquidator's duties.*

(6)    Where the Court makes an order under subsection (1), the person who applied for the order shall, within ten days of the date of the order, file a sealed copy of the order with the Registrar.

(7)    A person who contravenes subsection (6) commits an offence.

234. (1)    In this section "Register" means, as appropriate

Completion of liquidation.

    (a)    the register of international business companies maintained by the Registrar under the International Business Companies Act; or

Cap. 291

    (b)    the register of companies maintained by the Registrar under the Companies Act.

Cap. 285

(2)    As soon as practicable after completing his duties in relation to the liquidation of a company, the liquidator shall

    (a)    prepare and send to every creditor of the company whose claim has been admitted and to every member of the company

        (i)    his final report, complying with subsection (3), and a statement of realisation and distribution in respect of the liquidation, and

        (ii)    a summary of the grounds upon which a creditor or member may object to the striking of the company from the Register; and

    (b)    file with the Registrar a copy the final report and the statement realisations and distributions sent to the creditors and members of the company.

(3)    The final report of a liquidator shall contain a statement

    (a)    that all known assets of the company have been disclaimed, realised or distributed without realisation;

    (b)    that all proceeds of realisation have been distributed; and

    (c)    that there is no reason why, in his opinion, the company should not be struck from the Register, and dissolved.

(4)    On the application of the liquidator, the Court may on such terms and conditions as it considers just,

(a)  exempt the liquidator from compliance with subsection (2)(a); or

(b)  modify the application of the provisions of subsection (2) to the liquidator.

Release of liquidator.

235.  (1)    A person who ceases to be the liquidator, or provisional liquidator, of a company may apply to the Court for his release and the Court my grant the release unconditionally or upon such conditions as it considers fit, or it may withhold it.

(2)    If the Court withholds the release, it may make a compensation order against the former liquidator under section 254.

(3)    Subject to subsection (5), where a former liquidator is released under this section, he is discharged from all liability in respect of any act or default of his in relation to the administration of the company.

(4)    An order for the release of a former liquidator may be revoked by the Court if the release was obtained by fraud or the suppression or concealment of any material fact.

(5)    Subsection (3) does not prevent the Court from making an order under section 254 against a liquidator who has been released under this section.

(6)    Where the Official Receiver ceases to be liquidator and another liquidator is appointed in his place, the Official Receiver obtains his release

(a)  from the appointment of the new liquidator; or

(b)  such later date as the Court may determine.

(7)    A liquidator who obtains his release under this section shall file a notice in the prescribed form with the Registrar.

Dissolution.

236.  The Rules shall provide for the dissolution of a company on the termination and completion of the liquidation of the company.

(c)  no new bankruptcy restrictions undertaking by the bankrupt may be accepted.

(2)  Where a bankruptcy order is annulled under section 382(1)(b)

(a)  the annulment shall not affect any bankruptcy restrictions order, interim order or undertaking which is in force in respect of the bankrupt;

(b)  the Court may make a bankruptcy restrictions order or an interim order in respect of the bankrupt on an application instituted before the annulment;

(c)  the Official Receiver may accept a bankruptcy restrictions undertaking offered by the bankrupt before the annulment; and

(d)  an application for a bankruptcy restrictions order may not be instituted after the annulment.


# PART XVI

## GENERAL PROVISIONS WITH REGARD TO INSOLVENCY PROCEEDINGS UNDER THIS ACT


### Division 1 - The Creditors' Committee

420.  (1)  In this Division, "office holder" means,

Interpretation for and scope of this Division.

(a)  in respect of a company, its administrator, its liquidator or its administrative receiver, and

(b)  in respect of an individual, his bankruptcy trustee;

and a reference to an officer holder is to the office holder appointed in the insolvency proceeding in respect of which the creditors' committee is appointed.

(2)  This Division applies to the establishment and operation of a creditors' committee under this Act where

(a)  a company is in administration or in liquidation;

(b) an administrative receiver has been appointed in respect of a company; or

(c) a bankruptcy order has been made against an individual.

Establishment of creditors' committee.

421. (1) The creditors of a company in liquidation, administration or administrative receivership or of a bankrupt may, by resolution passed at a meeting, establish a creditors' committee,

(a) in the case of a company in administration, at any time after the approval of the administrator's proposals;

(b) in the case of a company in administrative receivership, at any time after the appointment of the administrative receiver;

(c) in the case of a company in liquidation, at any time after the appointment of the liquidator; and

(d) in the case of an individual, at any time after the bankruptcy order.

(2) A resolution to establish a creditors' committee shall also appoint the first members of the committee, each of whom shall be eligible to serve on the committee in accordance with section 423.

(3) A resolution to establish a creditors' committee in the administration, administrative receivership or liquidation of a company may only be passed

(a) at a meeting called under section 100, 147 or 179; or

(b) at a meeting requisitioned for the purpose by at least 10 per cent in value of the creditors of the company.

(4) A resolution to establish a creditors' committee in the bankruptcy of an individual may be passed at a meeting of the creditors called under section 333.

(5) Where an office holder is satisfied that a creditors' committee has been validly established he shall, within five business days of the passing of the resolution, file a notice to that effect

(a) in the case of an administrator, a liquidator appointed by the Court or a bankruptcy trustee, with the Court; or

(b) in the case of an administrative receiver or a liquidator not appointed by the Court, with the Registrar.

(6)    The notice required to be filed under subsection (5) shall specify the names and addresses of the persons appointed to the creditors' committee.

(7)    The creditors' committee cannot act until the relevant notice is filed by the office holder under subsection (5).

(8)    The appointment of a member of a creditors' committee may be in the form of the appointment of a designated representative of the member.

422.  (1)    The functions of a creditors' committee are

Functions and powers of creditors' committee.

    (a)    to consult with the office holder about matters relating to the insolvency proceeding;

    (b)    to receive and consider reports of the insolvency holder;

    (c)    to assist the officer holder in discharging his functions; and

    (d)    to discharge any other functions assigned to it under this Act or the Rules.

(2)    A creditors' committee may

    (a)    call a meeting of creditors;

    (b)    on giving the office holder reasonable notice, require him to provide the committee with such reports and information concerning the insolvency proceeding as the Committee reasonably requires; and

    (c)    on giving the office holder not less than five business days notice, require him to attend before the committee at any reasonable time to provide it with such information and explanations concerning the insolvency proceeding as it reasonably requires.

(3)    Where the creditors' committee requires the attendance of the office holder at a meeting under subsection (2)(c),

    (a)    the notice shall be signed in writing by a majority of the members of the committee; and

    (b)    the meeting shall be fixed for a business day and shall be held at such time and place as the committee may agree with the office holder.

## SCHEDULE 2

## POWERS OF LIQUIDATOR

### (Section 186)

1.    Power to pay any class of creditors in full.

2.    Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.

3.    Power to compromise, on such terms as may be agreed

      (a)    calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person;  and

      (b)    questions in any way relating to or affecting the assets or the liquidation of the company;

and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.

4.    Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the company.

5.    Power to carry on the business of the company so far as may be necessary for its beneficial liquidation.

6.    Power to sell or otherwise dispose of property of the company.

7.    Power to do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document.

8.    Power to use the company's seal.

9.    Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankrupt or insolvent, and rateably with the other separate creditors.

10.    Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

11.    Power to borrow money, whether on the security of the assets of the company or otherwise.

12.    Power to take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the company.

        For the purpose of enabling the liquidator to take out letters of administration or do any other act under this paragraph, to be due to the liquidator himself.

13.    Power to call meetings of creditors or members for

        (a)  the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;

        (b)  the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or

        (c)  such other purpose connected with the liquidation as the liquidator considers fit.

14.    Power to appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.

15.    Power to appoint an agent to do any business that the liquidator is unable to do himself, or which can be more conveniently done by an agent.

# EXHIBIT D-3

# [SELECT BERMUDA STATUTES]



**BERMUDA**

**COMPANIES ACT 1981**

**1981 : 59**

TABLE OF CONTENTS

PART I
INTERPRETATION AND APPLICATION

1       Short title and commencement
2       Interpretation
2A      Delivery of electronic records generally
3       Appointment of Registrar
4       Application
4A      Restricted business activities
4AA     Restricted business activity relating to corporate land holding
4B      Prohibited business activities

PART II
INCORPORATION OF COMPANIES

5       Mode of forming a company
6       Registration of companies
7       Requirements of memorandum
8       Prohibition of registration of companies with undesirable names
9       Power to dispense with "limited" in name of charitable and other companies
10      Change of name of a company
10A     Secondary name
11      Objects and powers of a company
12      Procedure for alteration of memorandum
13      Bye-laws
14      Registration of companies
14A     Re-registration of limited liability company as unlimited liability company
14B     Re-registration of unlimited liability company as company limited by shares or by
        guarantee

**COMPANIES ACT 1981**

Provided that the liquidator shall not be required to summon a meeting of creditors under section 222 at the end of the first year from the commencement of the winding up, unless the meeting held under section 211, is held more than three months before the end of the year.

**Creditors' winding up**

215    Section 216 to 223 shall apply in relation to a creditor's voluntary winding up.

**Meeting of creditors**

216    (1) The company shall cause a meeting of the creditors of the company to be summoned for the day, or the next day following the day, on which there is to be held the meeting at which the resolution for voluntary winding up is to be proposed, and shall cause the notices of the meeting of creditors to be sent to the creditors simultaneously with the sending of the notices of the meeting of the company.

(2) The company shall cause notice of the meeting of creditors to be advertised in an appointed newspaper on at least two occasions.

(3) The directors of the company shall—

    (a)  cause a full statement of the position of the company's affairs together with a list of the creditors of the company and the estimated amount of their claims to be laid before the meeting of the creditors to be held as aforesaid; and

    (b)  appoint one of their number to preside at such meeting.

(4) It shall be the duty of the director appointed to preside at the meeting of creditors to attend the meeting and preside thereat.

(5) If the meeting of the company at which the resolution for voluntary winding up is to be proposed is adjourned and the resolution is passed at an adjourned meeting, any resolution passed at the meeting of the creditors held in pursuance of subsection (1) shall have effect as if it has been passed immediately after the passing of the resolution for winding up the company.

(6) If default is made—

    (a)  by the company in complying with subsections (1) and (2);

    (b)  by the directors of the company in complying with subsection (3);

    (c)  by any director of the company in complying with subsection (4),

the company, directors or director, as the case may be, shall be liable to a fine of five hundred dollars, and in the case of default by the company, every officer of the company who is in default shall be liable to like penalty.

*[Section 216 subsection (1) amended by 2006:40 s.39 effective 29 December 2006]*

**199**

**COMPANIES ACT 1981**

**Appointment of liquidator**

217    The creditors and the company at their respective meetings mentioned in section 216 may nominate a person to be liquidator for the purpose of winding up the affairs and distributing the assets of the company, and if the creditors and the company nominate different persons, the person nominated by the creditors shall be liquidator, and if no person is nominated  by the creditors the person, if any, nominated by the company shall be liquidator:

Provided that in the case of different persons being nominated, any director, member or creditor of the company may within seven days after the date on which the nomination was made by the creditors, apply to the Court for an order either directing that the person nominated as liquidator by the company shall be liquidator instead of or jointly with the person nominated by the creditors or appointing some other person to be liquidator instead of the person appointed by the creditors.

**Appointment of committee of inspection**

218    (1)  The creditors at the meeting to be held in pursuance of section 216 or at any subsequent meeting may, if they think fit, appoint a committee of inspection consisting of not more than five persons, and if such a committee is appointed the company may, either at the meeting at which the resolution for voluntary winding up is passed or at any time subsequently in general meeting, appoint such number of persons as they think fit to act as members of the committee not exceeding five in number:

Provided that the creditors may, if they think fit, resolve that all or any of the persons so appointed by the company ought not to be members of the committee of inspection, and, if the creditors so resolve, the persons mentioned in the resolution shall not, unless the court otherwise directs, be qualified to act as members of the committee, and on any application to the Court under this provision the Court may, if it thinks fit, appoint other persons to act as such members in place of the persons mentioned in the resolution.

(2)  Subject to this section and to general rules, section 182 except subsection (1), shall apply with respect to a committee of inspection appointed under this section as it applies with respect to a committee of inspection appointed in a winding up by the Court.

**Fixing of liquidator's remuneration and cessor of officers' powers**

219    (1)  The committee of inspection, or if there is no such committee, the creditors, may fix the remuneration to be paid to the liquidator or liquidators.

(2)  On the appointment of a liquidator, all the powers of the officers shall cease, except so far as the committee of inspection, or if there is no such committee, the creditors, sanction the continuance thereof.

**Power to fill vacancy in office of liquidator**

220    If a vacancy occurs, by death, resignation or otherwise, in the office of a liquidator, other than a liquidator appointed by, or by the direction of, the Court, the creditors may fill the vacancy.

**COMPANIES ACT 1981**

**Application of s.210 to a creditors' voluntary winding up**

221      Section 210 shall apply in the case of a creditors' voluntary winding up as in the case of a members' voluntary winding up, with the modification that the powers of the liquidator under the said section shall not be exercised except with the sanction either of the Court or of the committee of inspection.

**Duty of liquidator to call meetings of company and creditors at end of each year**

222      (1)  In the event of the winding up continuing for more than one year, the liquidator shall summon a general meeting of the company and a meeting of the creditors at the end of the first year from the commencement of the winding up, and of each succeeding year, or at the first convenient date within three months from the end of the year or such longer period as the Registrar may allow, and shall lay before the meetings an account of his acts and dealings and of the conduct of the winding up during the preceding year.

(2)  If the liquidator fails to comply with this section, he shall be liable to a fine not exceeding fifty dollars.

**Final meeting and dissolution**

223      (1)  As soon as the affairs of the company are fully wound up, the liquidator shall make an account of the winding up showing how the winding up has been conducted and the property of the company has been disposed of, and thereupon shall call a general meeting of the company and a meeting of the creditors for the purpose of laying the account before the meetings and giving any explanation thereof.

(2)  Each such meeting shall be called by advertisement in an appointed newspaper specifying the time, place and object thereof, and published one month at least before the meeting.

(3)  Within one week after the date of the meetings, or, if the meetings are not held on the same date, after the date of the later meeting, the liquidator shall send to the Registrar a copy of the account, and shall make a return to him of the holding of the meetings and of their dates, and if the copy is not sent or the return is not made in accordance with this subsection the liquidator shall be liable to a default fine:

Provided that, if a quorum is not present at either such meeting, the liquidator shall, in lieu of the return hereinbefore mentioned, make a return that the meeting was duly summoned and that no quorum was present thereat and upon such a return being made the provisions of this subsection as to the making of the return shall, in respect of that meeting, be deemed to have been complied with.

(4)  The Registrar on receiving the account and, in respect of each such meeting, either of the returns hereinbefore mentioned, shall forthwith register them, and on the expiration of three months from the registration thereof the company shall be deemed to be dissolved:

Provided that the Court may, on the application of the liquidator or of any other person who appears to the Court to be interested, make an order deferring the date at which the dissolution of the company is to take effect for such time as the Court thinks fit.

**201**

**COMPANIES ACT 1981**

(5)  It shall be the duty of the person on whose application an order of the Court under this section is made, within seven days after the making of the order, to deliver to the Registrar an office copy of the order for registration, and if the person fails to do so he shall be liable to a default fine.

(6)  If the liquidator fails to call a general meeting of the company or a meeting of the creditors as required by this section, he shall be liable to a fine of two hundred and fifty dollars.

**Sections 225 to 233 apply to every winding up**

224     Sections 225 to 233 shall apply to every winding up whether a member's or a creditor's winding up.

**Distribution of property of company**

225     Subject to this Act as to preferential payment the property of a company shall, on its winding up, be applied in satisfaction of its liabilities pari passu, and, subject to such application, shall, unless the bye-laws otherwise provide, be distributed among the members according to their rights and interests in the company.

**Powers and duties of liquidator in voluntary winding up**

226     (1)  The liquidator may—

(a)  in the case of a member's voluntary winding up, with the sanction of a resolution of the company, and, in the case of a creditor's voluntary winding up, with the sanction of the Court or the committee of inspection or if there is no such committee a meeting of the creditors, exercise any of the powers given by section 175(1)(d), (e) and (f) to a liquidator in a winding up by the Court;

(b)  without sanction, exercise any of the other powers by this Act given to the liquidator in a winding up by the Court;

(c)  exercise the power of the Court under this Act of settling a list of contributories, and the list of contributories shall be prima facie evidence of the liability of the persons named therein to be contributories;

(d)  exercise the power of the Court to make calls;

(e)  summon general meetings of the company for the purpose of obtaining the sanction of the company by resolution or for any other purpose he may think fit.

(2)  The liquidator shall pay the debts of the company and shall adjust the rights of the contributories among themselves.

(3)  When several liquidators are appointed, any power given by this Act may be exercised by such one or more of them as may be determined at the time of their appointment, or, in default of such determination, by any number not less than two.

**202**

**COMPANIES ACT 1981**

**Power of Court to appoint and remove liquidator in voluntary winding up**

227        (1)   If from any cause whatever there is no liquidator acting, the Court may appoint a liquidator.

(2)   The Court may, on cause shown, remove a liquidator and appoint another liquidator.

**Notice by liquidator of his appointment**

228        (1)   The liquidator shall, within twenty-one days after his appointment, publish in an appointed newspaper and deliver to the Registrar for registration a notice of his appointment.

(2)   If the liquidator fails to comply with the requirements of this section he shall be liable to a default fine.

**Arrangement when binding on creditors**

229        (1)   Any arrangement entered into between a company about to be, or in the course of being, wound up and its creditors shall, subject to the right of appeal under this section, be binding on the company if sanctioned by a resolution and on the creditors if acceded to by three-fourths in number and value of the creditors.

(2)   Any creditor or contributory may, within three weeks from the completion of the arrangement, appeal to the Court against it, and the Court may thereupon, as it thinks just, amend, vary or confirm the arrangement.

**Liquidator's power to stay voluntary winding up**

230        (1)   The liquidator of a company may at any time after he has been appointed stay the winding up either altogether or for a limited time if he is satisfied that such a stay is in the best interests of the contributories or the creditors.

(2)   The liquidator shall three weeks prior to staying the winding up of a company under subsection (1) publish in an appointed newspaper his intentions and his reasons for so doing and shall give notice of such intention to the Registrar.

(3)   The Official Receiver or any contributory or creditor may within three weeks of the publication of a notice under subsection (2) apply to the Court under section 231 for an order requiring the liquidator to continue the winding up proceedings.

(4)   When a liquidator stays the winding up of a company altogether he shall, after the period allowed for an application under subsection (3) has expired, take such steps as he considers desirable to enable the company to be as near as practicable as it was before the resolution to wind up the company was made.

**Power to apply to Court to have questions determined or powers exercised**

231        (1)   The liquidator or any contributory or creditor may apply to the Court to determine any question arising in the winding up of a company, or to exercise, as respects the enforcing of calls or any other matter, all or any of the powers which the Court might exercise if the company were being wound up by the Court.

**203**

**COMPANIES ACT 1981**

(2)  The Court, if satisfied that the determination of the question or the required exercise of power will be just and beneficial, may accede wholly or partially to the application on such terms and conditions as it thinks fit or may make such other order on the application as it thinks just.

(3)  A copy of an order made by virtue of this section staying the proceedings in the winding up shall forthwith be forwarded by the company, or otherwise as may be prescribed to the Registrar who shall make a minute of the order in his books relating to the company.

**Costs of voluntary winding up**

232     All costs, charges and expenses properly incurred in the winding up, including the remuneration of the liquidator, shall be payable out of the assets of the company in priority to all other claims.

**Saving for rights of creditors and contributories**

233     The winding up of a company shall not bar the right of any creditor or contributory to have it wound up by the Court, but in the case of an application by a contributory the Court must be satisfied that the rights of the contributories will be prejudiced by a voluntary winding up.

**Debts of all description may be proved**

234     In every winding up, subject in the case of insolvent companies to the rules of bankruptcy as applied by this Act all debts payable on a contingency, and all claims against the company, present or future, certain or contingent, ascertained or sounding only in damages, shall be admissible to proof against the company, a just estimate being made so far as possible, of the value of such debts or claims as may be subject to any contingency or sound only in damages, or for some other reason do not bear a certain value.

**Application of bankruptcy rules in winding up of insolvent companies**

235     In the winding up of an insolvent company the same rules shall prevail and be observed with regard to the respective rights of secured and unsecured creditors and to debts provable and to the valuation of annuities and future and contingent liabilities as are in force for the time being under the law of bankruptcy with respect to the estates of persons adjudged bankrupt, and all persons who in any such case would be entitled to prove for and receive dividends out of the assets of the company may come in under the winding up and make such claims against the company as they respectively are entitled to by virtue of this section.

**Preferential payments**

236     (1)  In a winding up there shall be paid in priority to all other debts—

(a)  all taxes owing to the Government and rates owing to a municipality at the relevant date;

(b)  all wages or salary, whether or not earned wholly or in part by way of commission or whether payable for time or piece work of any employee of